UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-6007-CR-DIMITROULEAS

UNITED STATES OF AMERICA,   :

      Plaintiff,           :

v.                       :

NAPOLEAN RAGLUND,      :

      Defendant.      :
_____/



## NOTICE OF FILING OF SUPPLEMENTAL AUTHORITIES

       The Defendant Napolean Raglund ("Raglund"), hereby files these supplemental authorities (attached) pursuant to his request for a downward departure from his sentencing guideline range because his career offender status over represents his criminal history and likelihood of recidivism:

1.     United States v. Shoupe, 35 F.3d 835 (3rd Cir. 1994).

2.     United States v. Spencer, 25 F.3d 1105 (D.C. Cir. 1994).

3.     United States v. Beckham, 968 F.2d 47 (D.C. Cir. 1992).

4.     United States v. Bowser, 941 F.2d 1019 (10th Cir. 1991).

5.     United States v. Lawrence, 916 F.2d 553 (9th Cir. 1990).

6.     United States v. Collins, 122 F.3d 1297 (10th Cir. 1997).



7.    <u>United States v. Reyes</u>, 8 F.3d 1379 (9th Cir. 1993).

Respectfully submitted,

KATHLEEN M. WILLIAMS
FEDERAL PUBLIC DEFENDER

By: _____
Samuel J. Smargon
Assistant Federal Public Defender
Florida Bar No. 150230
101 N.E. 3rd Avenue
Suite 202
Fort Lauderdale, Florida 33301
(954) 356-7436
(954) 356-7556 (fax)

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was mailed on this

____ day of June, 2000 to Edward Ryan, Esquire, United States Attorney's Office, 299 E. Broward

Blvd., Fort Lauderdale, Florida 33301 and to R. Kelly Cutright, United States Probation Office, 300

N.E. 1st Avenue, Room 315, Miami, Florida 33132.

_____
Samuel J. Smargon

S:\SMARGON\Raglund\downward.2.wpd

2

Citation            Found Document            Rank 1 of 1            Database
35 F.3d 835                                                          CTA
**(Cite as: 35 F.3d 835)**

                        UNITED STATES of America,
                                   v.
                      Kenneth SHOUPE, Appellant.
                             No. 93-7399.
                   United States Court of Appeals,
                             Third Circuit.
                        Argued May 3, 1994.
                      Decided Sept. 19, 1994.

  Sentence in narcotics prosecution was vacated and remanded for resentencing,
929 F.2d 116.  Upon remand and subsequent appeal, sentence was again vacated and
remanded for resentencing, 988 F.2d 440.  Upon remand, defendant was again
sentenced in the United States District Court for the Middle District of
Pennsylvania, Richard P. Conaboy, J., and defendant appealed.  The Court of
Appeals, Scirica, Circuit Judge, held that sentencing court may depart downward
on defendant's base offense level if defendant's career offender status
overrepresents his criminal history and likelihood of recidivism.
  Vacated and remanded.
  Alito, Circuit Judge, issued dissenting opinion.

CRIMINAL LAW ☜1203.32
110k1203.32
Sentencing court may depart downward on defendant's offense level if defendant's
career offender status overrepresents his criminal history and likelihood of
recidivism.  U.S.S.G. § 4A1.3, 18 U.S.C.A.App.
**\*835** D. Toni Byrd (Argued), Office of Federal Public Defender, Williamsport,
PA, for appellant.
Barbara K. Whitaker (Argued) Office of U.S. Atty., Scranton, PA, for appellee.

**\*836** Before:  SCIRICA and ALITO, Circuit Judges and POLLAK, District Judge.
[FN\*]

    FN\* The Honorable Louis H. Pollak, United States District Judge for the
    Eastern District of Pennsylvania, sitting by designation.
                        OPINION OF THE COURT

 SCIRICA, Circuit Judge.
  This criminal appeal presents a narrow legal issue:  whether a sentencing court
may depart downward on a defendant's base offense level if the defendant's
career offender status overrepresents his criminal history and likelihood of
recidivism.  In Kenneth Shoupe's previous appeal we held that under these
circumstances a sentencing court may depart downward in the criminal history
category.  See United States v. Shoupe, 988 F.2d 440, 444- 47 (3d Cir.1993)
(Shoupe II ) (vacating and remanding for resentencing in consideration of
Sentencing Guideline § 4A1.3).  [FN1]  Because career offender status enhances
both the criminal history and base offense level categories, we hold a

               Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

35 F.3d 835
**(Cite as: 35 F.3d 835, *836)**

sentencing court may also depart downward in the base offense level.    Therefore, we will vacate defendant's sentence and remand for resentencing.  ·

FN1. All citations to the Sentencing Guidelines refer to United States Sentencing Commission, Guidelines Manual (Nov.1993) (hereinafter U.S.S.G.).

I.

This is the third time we review Kenneth Shoupe's sentence.    See United States v. Shoupe, 929 F.2d 116 (3d Cir.) (Shoupe I ) (vacating and remanding for resentencing), cert. denied, 502 U.S. 943, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991);    Shoupe II, 988 F.2d 440. [FN2]    On June 8, 1990, Shoupe pled guilty to one count of distributing cocaine in violation of 21 U.S.C. § 841(a)(1) (1988). Conviction on this count carries a base offense level of 12, [FN3] and Shoupe's criminal history level was V because of three prior convictions.    Ordinarily, this combination results in a sentencing range of 21- 27 months, Shoupe I, 929 F.2d at 122 n. 1 (Rosenn, J., dissenting), but Shoupe's previous felony convictions qualified him for an enhanced sentence under the sentencing guidelines' career offender provision, § 4B1.1. [FN4] Therefore, Shoupe's criminal history level increased from V to VI, his base offense level rose from 12 to 32, and his sentencing range increased to 168-210 months.

FN2. For a full recitation of the facts, see Shoupe I, 929 F.2d at 118- 19.

FN3. Shoupe's offense level was reduced by two for accepting responsibility for his crime.

FN4. Under § 4B1.1, a defendant qualifies for career offender status if "(1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense or conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1.    Career offender status automatically raises a defendant's criminal history level to VI, and increases the offense level by basing it on the maximum term of imprisonment allowable for the crime.    Id.

Before Shoupe's initial sentencing, defense counsel asked the court to depart below the guideline range, citing several mitigating factors including defendant's youth and immaturity at the time he committed the first two felonies, the short time span between those crimes, [FN5] and defendant's need to support his dependent child.    See Shoupe I, 929 F.2d at 119.    The district court agreed and, after reducing defendant's offense level to 22, the able and experienced district judge imposed a sentence of 84 months.    Id.

FN5. Shoupe committed his first offense the day after his eighteenth birthday and the second offense eight months later.

We reversed on appeal.    Shoupe I, 929 F.2d 116 (3d Cir.1991).    Noting that the

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

35 F.3d 835
**(Cite as: 35 F.3d 835, \*836)**

guidelines require district judges to impose sentences within the prescribed range "unless the court finds ... an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission," we held the district court erred by departing from the prescribed range because the factors listed by the district court had been adequately considered by the Sentencing Commission.   Id. at 120-21.

In a dissenting opinion, Judge Rosenn argued the majority did not consider §
4A1.3, a policy statement which expressly permits a sentencing court to depart from the guideline **\*837** range where the career offender provision overstates a defendant's criminal history. [FN6]   Though not argued by the parties, Judge Rosenn maintained "the sentencing judge here, in effect, concluded that the career offender provision ... overrepresented the seriousness of Shoupe's criminal history," id. at 122 (Rosenn, J., dissenting), and concluded the departure should be affirmed because § 4A1.3 allows a sentencing court to apply the career offender provision flexibly, id.

> FN6. Section 4A1.3 provides in part:
> If reliable information indicates that the criminal history category does not adequately reflect ... the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range.
> As we noted in Shoupe II, "Although § 4A1.3 is a policy statement, rather than a guideline it is an 'authoritative guide' to district courts, and this court has applied it with the authority of a guideline."   988 F.2d at 442 n. 1.

Not surprisingly, Shoupe sought a downward departure on remand, claiming his career offender status overstated his criminal history and citing the same mitigating factors the district court had considered at his first sentencing. Shoupe II, 988 F.2d at 444.   The district court interpreted our decision in Shoupe I as precluding it from considering those factors in a motion for downward departure.   Therefore, it declined to depart from the prescribed sentencing range and sentenced Shoupe to a term of 168 months, the lowest sentence under the applicable range.   Id.

On Shoupe's second appeal the government argued that the district court properly refused to depart from the guideline range because 18 U.S.C. § 3553(b) requires a court to impose a sentence within the range "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...."   18 U.S.C. § 3553(b) (1988); see also U.S.S.G. § 5K2.0, p.s. (implementing 18 U.S.C. § 3553).   We reversed and remanded, holding a court need not find that the Sentencing Commission failed to consider a factor in order to make a downward departure under § 4A1.3, id. at 447, since "the statutory authority for promulgation of § 4A1.3 lies not in 18 U.S.C. § 3553(b), but in the basic provision of the Sentencing Reform Act that gives the Sentencing Commission the authority ... to take into account, where relevant, the defendant's criminal background," id. at 446.

On remand Shoupe asked the district court to make a downward departure under §

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

4A1.3 and sentence him without applying the career offender provision. The district court declined, believing our decisions in Shoupe I and Shoupe II, taken together, indicated that a downward departure was permissible only in the criminal history category, but not in the offense level. Therefore, the court reduced Shoupe's criminal history level from VI to III and, despite its belief that the reduced sentence "still over represents the offense in this case and the happenings that have occurred here," sentenced him to 120 months imprisonment. Shoupe now appeals for the third time. [FN7]

> FN7. We have jurisdiction under 28 U.S.C. § 1291. We apply plenary review to questions regarding the district court's ability to consider a downward departure. United States v. Benish, 5 F.3d 20, 26 (3d Cir.1993); United States v. Higgins, 967 F.2d 841, 844 (3d Cir.1992).

II.

Despite Shoupe's previous appeals, the issue whether a sentencing court can depart downward in the offense level category under § 4A1.3 has not been decided previously in this case, [FN8] or in this circuit. Other courts of appeals, however, have unanimously held that a sentencing court can depart downward in the offense level where applying the career offender provision, § 4B1.1, misrepresents a defendant's criminal history.

> FN8. From our review of the briefs in Shoupe I and Shoupe II, it is clear that this issue was not presented previously. Because those cases did not face the issue we face here "[their] pronouncements are non- binding." Shoupe II, 988 F.2d at 446 n. 9.

The Court of **Appeals** for the Tenth Circuit ruled on this issue first in United States v. Bowser, 941 F.2d 1019, 1026 (10th Cir.1991). There, after selling crack cocaine to undercover FBI agents, the defendant was convicted on two counts of violating 21 U.S.C. § 841(a)(1). Id. at 1021. The defendant's conviction would normally have resulted in 81-114 months imprisonment, id. at 1023, but because he qualified for career offender status **\*838** the guidelines mandated a sentence of 262-326 months, id. When the sentencing court found that the defendant's "history of criminal conduct was significantly less serious than that of most defendants categorized as career offenders," id., it departed from the guidelines and imposed a sentence within the range that would have applied absent the offense level and criminal history enhancement that resulted from his career offender status, id. at 1025.

The government appealed and the Tenth Circuit affirmed. Realizing that "the jump into the career offender category was done in one step," the court held the departure in both the offense level and criminal history categories was reasonable since the district court was only undoing the one step. Id. at 1026.

In United States v. Reyes, 8 F.3d 1379 (9th Cir.1993), the district court, citing § 4A1.3, disregarded the career offender enhancement and departed downward in both the criminal history and offense level categories. The Court of Appeals for the Ninth Circuit remanded for resentencing "[b]ecause the court failed to articulate its reasons for the degree of its departure." 8 F.3d at

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

1389.  But the court made clear its position that § 4A1.3 permits departures in
both the offense level and criminal history category, stating, "[t]he district
court did not disregard the terms of section 4A1.3 or go against precedent on
departures in viewing a departure from the career offender provisions as
permissible even though it reduced the sentence more than a modification of only
the criminal history category would warrant."  Id. Accord, United States v.
Fletcher, 15 F.3d 553, 556-57 (6th Cir.1994) (decrease in offense level to its
original level is reasonable in departure under § 4A1.3);  United States v.
Senior, 935 F.2d 149, 151 (8th Cir.1991) (reasonable to apply guideline range
which would have applied absent career offender status).
  The Court of Appeals for the District of Columbia Circuit came to the same
conclusion in United States v. Clark, 8 F.3d 839 (D.C.Cir.1993), after the
sentencing court found the career offender provision overrepresented the
defendant's criminal history.  The appeals court held "it was not arbitrary and
capricious to base [the defendant's] sentence on the criminal history category
and offense level that would have been applicable absent the career offender
increases."  8 F.3d at 846.
  In this case, the government concedes § 4A1.3 authorizes downward departures in
the criminal history category, but argues it does not authorize departures in
the offense level.  The government's argument, however, ignores the nexus
between criminal history and career offender status.  Career offender status is
a function of past crimes committed, see supra note 4, and, therefore, is a
function of a defendant's criminal history.  Because of this nexus a finding
that a defendant's criminal history level does not reflect his past criminal
conduct or likelihood of recidivism may also signify the defendant should not
qualify for career offender status.
  The Sentencing Commission recognized the imprecision inherent in criminal
history classifications.  See U.S.S.G. § 4A1.3, p.s., comment. (backg'd.)
("[T]he criminal history score is unlikely to take into account all the
variations in the seriousness of criminal history that may occur.").  It
promulgated § 4A1.3 to give sentencing judges discretion to depart from the
prescribed range where it misrepresents a defendant's criminal history or
likelihood of recidivism.  See § 4A1.3, p.s.  Because career offender status
enhances both a defendant's criminal history category and offense level, id., a
sentencing court may depart in both under the proper circumstances.
  The government also argues that because § 4A1.3 only mentions downward
departures in the criminal history category, it does not permit downward
departures in the offense level.  We disagree.  The language makes clear that an
overstated criminal history triggers departures under § 4A1.3, but does not make
clear that such departures are limited to the criminal history category.
Moreover, the government's argument ignores § 4A1.3's reference to upward
departures in the offense level category.  We believe this express reference to
offense level departures indicates the Sentencing Commission intended § 4A1.3 to
govern more than just departures in the criminal history category.
                                   **\*839** III.
  For the foregoing reasons, we join the other courts of appeals that have
reviewed this issue and hold that, where a defendant's offense level has been
augmented by the career offender provision, a sentencing court may depart

              Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

downward in both the criminal history and offense level categories under §
4A1.3.   The judgment of the district court will be vacated, and we will remand
for further proceedings consistent with this opinion. [FN9]

> FN9. The government also argues that interpreting § 4A1.3 to permit
> downward departures will make surplusage of § 5K2.0, and of 18 U.S.C. §
> 3553(b), which it implements.   This argument, however, is not convincing.
> We are only concerned here with the ability to depart from the prescribed
> offense level where the career offender provision has improperly enhanced
> the offense level.   In any other situation, our limited holding would not
> apply and a court may have to look to § 5K2.0 in order to make a downward
> departure.   That issue, however, is not before us, and we, therefore,
> express no opinion on it.

DISSENTING OPINION

ALITO, Circuit Judge, dissenting.
  I cannot join the court's opinion because I believe that it is inconsistent
with our two prior decisions in this case, United States v. Shoupe, 929 F.2d 116
(3d Cir.1991) ("Shoupe I "), and United States v. Shoupe, 988 F.2d 440 (3d
Cir.1993) ("Shoupe II ").
  When the district court first sentenced the defendant in 1990, it granted a
downward departure based on the following factors:   the defendant's age and
immaturity at the time of the first offenses counted for career-offender
purposes, the time between his prior crimes, his alleged cooperation with the
authorities in connection with those offenses, and his family responsibilities.
The government appealed, and in Shoupe I, we reversed. We noted that under 18
U.S.C. § 3553(b) a sentencing court may not grant a departure " 'unless the
court finds that there exists an aggravating or mitigating circumstance of a
kind, or to a degree, not adequately taken into consideration by the Sentencing
Commission in formulating the guideline that should result in a sentence
different from that described.' "   929 F.2d at 119 (quoting 18 U.S.C. §
3553(b)).   Concluding that all of the factors cited by the district court had
been " 'adequately taken into consideration by the Sentencing Commission in
formulating' the career offender guideline," 929 F.2d at 119-20 (quoting 18
U.S.C. § 3553(b)), we held that the district court's downward departure was
improper, and we remanded for resentencing.
  On remand, the defendant again sought a downward departure based on many of the
same mitigating factors considered in Shoupe I.   The defendant argued that
Shoupe I, while prohibiting a departure pursuant to 18 U.S.C. § 3553(b) and its
implementing guideline (U.S.S.G. § 5K2.0), did not foreclose a departure
pursuant to U.S.S.G. § 4A1.3, which permits a departure if a defendant's
"criminal history category does not adequately reflect the seriousness of the
defendant's past criminal conduct or the likelihood that the defendant will
commit other crimes."   The district court rejected this contention, holding that
Shoupe I precluded such a departure based on the factors that the defendant
cited.
  In Shoupe II, however, our court reversed.   The Shoupe II panel acknowledged
that the defendant could not obtain a departure under 18 U.S.C. § 3553(b) and

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

35 F.3d 835
**(Cite as: 35 F.3d 835, \*839)**

DISSENTING OPINION
U.S.S.G. § 5K2.0 based on the same factors considered in Shoupe I.  But the
Shoupe II panel drew a sharp distinction between, on the one hand, a departure
under 18 U.S.S.G. § 3553(b) and U.S.S.G. 5K2.0 and, on the other hand, a
departure under U.S.S.G. § 4A1.3.  See 988 F.2d at 444-447.  Among other things,
the court noted that in U.S.S.G. § 4A1.3, "the Commission specifically provided
district courts with flexibility to adjust the criminal history category."  988
F.2d at 445 (emphasis added).  The court further observed that a departure under
Section 4A1.3 is "structurally" unlike a departure under 18 U.S.C. § 3553(b) and
U.S.S.G. § 5K2.0.  Id.  When a departure is granted under Section 4A1.3, the
court wrote, the sentencing judge must look to the sentencing range that would
apply if the defendant's criminal history category were adjusted. See id. at n.
7.  By contrast, the court stated, departures under 18 U.S.C. § 3553(b) and
U.S.S.G. § 5K2.0 are relatively "unstructured."  Id.
 On remand, the district court reduced the defendant's criminal history category
from \*840 VI to III and thus reduced his sentence from 168 months to 121 months.
However, the district court concluded that Shoupe I and Shoupe II prohibited a
reduction in the defendant's offense level based on the factors considered in
Shoupe I.
 Reviewing this decision, the majority now concludes that the district court
erred in refusing to reduce the defendant's offense level as well as his
criminal history category.  The majority notes that the career-offender
provision of the guidelines (U.S.S.G. § 4B1.1) increases both a defendant's
offense level and criminal history category.  The majority thus reasons that, if
a defendant who falls within the career-offender guideline is eligible for a
departure under U.S.S.G. § 4A1.3 because his criminal history category
overrepresents the seriousness of his past criminal conduct or likelihood of
recidivism, the defendant should be eligible for a reduction in both the offense
level and a criminal history category.  Assuming that the majority's approach is
correct as a general proposition, I do not think that its use in this case can
be reconciled with Shoupe I and Shoupe II.
 Shoupe I, rightly or wrongly, held that, under 18 U.S.C. § 3553(b) and
U.S.S.G. § 5K2.0, the defendant could not obtain a downward departure based on
the factors cited by the district court.  Shoupe II, rightly or wrongly, held
that Shoupe I did not apply to a departure under U.S.S.G. § 4A1.3. The language
of Section 4A1.3 seems quite clear in restricting such departures to changes in
the criminal history category.  Such departures are triggered when "the criminal
history category does not adequately reflect the seriousness of the defendant's
past criminal conduct or the likelihood that the defendant will commit other
crimes."  U.S.S.G. § 4A1.3 (emphasis added).  This provision adds:
 In considering a departure under this provision, the Commission intends that
 the court use, as a reference, the guideline range for a defendant with a
 higher or lower criminal history category, as applicable.
 Id. (emphasis added).  Thus, I do not see how a Section 4A1.3 departure  (as
distinct from a departure under 18 U.S.C. § 3553(b) and U.S.S.G. § 5K2.0) can
alter a defendant's offense level.
 We are bound by Shoupe I and Shoupe II whether or not we think that they were
correctly decided, and under those decisions, I think that the defendant has

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

35 F.3d 835
**(Cite as: 35 F.3d 835, \*840)**

DISSENTING OPINION
already received the only downward departure that is possible based on the factors in question.    I would therefore affirm the judgment of the district court.
END OF DOCUMENT

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Citation                    Found Document              Rank 1 of 1           Database
25 F.3d 1105                                                                  CTA
63 USLW 2062, 40 Fed. R. Evid. Serv. 1292
**(Cite as: 25 F.3d 1105,  306 U.S.App.D.C. 399)**

UNITED STATES of America, Appellee/Cross-Appellant,
v.
Cordell SPENCER, Appellant/Cross-Appellee.
Nos. 93-3052, 93-3074.
United States Court of Appeals,
District of Columbia Circuit.
Argued April 11, 1994.
Decided June 17, 1994.

Defendant was convicted of possession with intent to distribute cocaine and
possession with intent to distribute heroin after jury trial and was sentenced
as career offender to mandatory minimum of ten years in prison after jury trial
in the United States District Court for the District of Columbia, Harold H.
Greene, 817 F.Supp. 176. Defendant appealed.  The Court of Appeals, Randolph,
Circuit Judge, held that:  (1) allowing prosecutor to impeach defense witness
with pending armed robbery charge against her was not abuse of discretion;   (2)
instruction that jury had to decide whether officers were lying or whether
defense witnesses were lying was not plain error; (3) sentence did not violate
Eighth Amendment;  and (4) if court determined that defendant's criminal history
was so minor that it rendered his an "unusual" career offender case, court could
depart downward on basis that criminal history category overrepresented
defendant's past criminal conduct.
Conviction affirmed;  case remanded.

[1] CRIMINAL LAW ☞703
110k703
Prosecutor's opening statement describing presearch events, reciting defendant's
status as target of search warrant, and officers' expectations that they would
find him at apartment as well as officers' prior encounters with defendant did
not improperly suggest that government had evidence of defendant's drug dealing
beyond evidence to be introduced, where defendant was indeed target of
investigation and government proved what it indicated it would prove.

[2] WITNESSES ☞345(7)
410k345(7)
Allowing prosecutor to impeach defense witness with pending armed robbery charge
against her was not abuse of discretion, where other evidence showed witness'
antipathy toward law enforcement and trial court determined that jury could hear
about possible source of her hostility.  Fed.Rules Evid.Rule 609, 28 U.S.C.A.

[3] WITNESSES ☞345(7)
410k345(7)
Under prior law, attacks on witness' credibility merely on basis that witness
had been arrested or charged was forbidden.  Fed.Rules Evid.Rule 609, 28
U.S.C.A.

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

25 F.3d 1105
**(Cite as: 25 F.3d 1105,   306 U.S.App.D.C. 399)**

[4] WITNESSES ⬤⇒345(7)
410k345(7)
Indictment or arrest of witness is not, in itself, proof of underlying criminal
act.   Fed.Rules Evid.Rule 609, 28 U.S.C.A.

[5] WITNESSES ⬤⇒311
410k311
General attack on credibility of witness is not only permissible method;   more
particular attack occurs when witness is impeached for bias.   Fed.Rules
Evid.Rule 609, 28 U.S.C.A.

[5] WITNESSES ⬤⇒363(1)
410k363(1)
General attack on credibility of witness is not only permissible method;   more
particular attack occurs when witness is impeached for bias.   Fed.Rules
Evid.Rule 609, 28 U.S.C.A.

[6] WITNESSES ⬤⇒374(1)
410k374(1)
Although not specifically mentioned in Federal Rules of Evidence, proof of bias,
i.e., relationship between party and witness which might lead witness to slant,
unconsciously or otherwise, his testimony in favor or against party, is almost
always relevant.   Fed.Rules Evid.Rule 609, 28 U.S.C.A.

[7] CRIMINAL LAW ⬤⇒1035(8.1)
110k1035(8.1)
Trial court's questioning of defense witness in prosecution on drug charges was
not plain error;   judge did not assume role of advocate and most of court's
questions concerned details, such as how long defendant had been under tree,
species of tree and whether defendant stood or sat, and balance of questions
sought to clarify why witness did not remember seeing another witness who said
he was on porch next door for two hours.   Fed.Rules Cr.Proc.Rule 52(b), 18
U.S.C.A.;   Fed.Rules Evid.Rule 614(b), 28 U.S.C.A.

[8] CRIMINAL LAW ⬤⇒778(5)
110k778(5)
Instruction in prosecution on drug charges that in order to decide which theory
of case was correct, jury had to decide whether officers were lying or whether
defense witnesses were lying did not shift burden of proof to defense, where
court immediately followed up with explanation that defendant was not required
to prove his innocence and did not have to prove anything and that government
had burden of proving each element of offense beyond reasonable doubt.

[9] CRIMINAL LAW ⬤⇒1171.3
110k1171.3
Prosecutor's remarks in closing argument regarding "white male" whom
investigating officer encountered when he first arrived at apartment at which
defendant was arrested on drug distribution charges as to what jury thought

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

25 F.3d 1105
**(Cite as: 25 F.3d 1105,   306 U.S.App.D.C. 399)**

officer asked "white male," did not constitute reversible error, although
prosecutor's technique might have created some ambiguity;  there was testimony
that officer had asked "white male" why he was there and prosecutor was entitled
to mention this in closing argument and to ask jury to credit officer's
testimony.

[10] CRIMINAL LAW &1213.8(7)
110k1213.8(7)
Sentence of 30 years in prison as career offender for possession of less then
eight grams of illegal narcotics with intent to distribute did not violate
Eighth Amendment's prohibition against cruel and unusual punishment.
Comprehensive Drug Abuse Prevention and Control Act of 1970, § 401(a)(1),
(b)(1)(B)(iii), 21 U.S.C.A. § 841(a)(1), (b)(1)(B)(iii); 18 U.S.C.A. § 3553(b);
U.S.S.G. §§ 4A1.3, 4B1.1, 18 U.S.C.A.App.; 28 U.S.C.A. § 994(h); U.S.C.A.
Const.Amend. 8.

[11] CONSTITUTIONAL LAW &52
92k52
Congress has unquestioned power to determine sentences for federal crimes;  in
doing so, Congress does not unconstitutionally invade province of federal
courts.

[12] CONSTITUTIONAL LAW &61
92k61
If Congress has validly delegated to Sentencing Commission power to develop
proportionate penalties for federal criminals, it follows that Commission cannot
be invading judicial authority when it carries out this legislative directive.

[13] CONSTITUTIONAL LAW &270(4)
92k270(4)
Implementation of the United States Sentencing Guidelines career offender
provisions, treating all career offenders alike without regard to their
individual circumstances, does not violate due process.  28 U.S.C.A. § 994(h);
U.S.S.G. § 4B1.1, 18 U.S.C.A.App.;  U.S.C.A. Const.Amends. 5, 14.

[13] CRIMINAL LAW &1201.5
110k1201.5
Implementation of the United States Sentencing Guidelines career offender
provisions, treating all career offenders alike without regard to their
individual circumstances, does not violate due process.  28 U.S.C.A. § 994(h);
U.S.S.G. § 4B1.1, 18 U.S.C.A.App.;  U.S.C.A. Const.Amends. 5, 14.

[14] CRIMINAL LAW &1023(11)
110k1023(11)
Although sentencing court's discretionary refusal to depart downward was not
reviewable on appeal, Court of Appeals could rule on defendant's claim that
district court misconstrued scope of its discretion to depart when criminal
history category overrepresents seriousness of defendant's past criminal conduct

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

25 F.3d 1105
**(Cite as: 25 F.3d 1105,    306 U.S.App.D.C. 399)**

and likelihood of recidivism.   U.S.S.G. § 4A1.3, 18 U.S.C.A.App.

[15] CRIMINAL LAW ☜1203.32
110k1203.32
If sentencing court determined that defendant's criminal history was so minor
that it rendered his an "unusual" career offender case, there was no reason why
district court could not invoke Sentencing Guidelines permitting downward
departures when criminal history category assigned pursuant to career offender
guidelines significantly over represents seriousness of defendant's past
criminal conduct and likelihood of recidivism.   U.S.S.G. § 4A1.3, 18
U.S.C.A.App.

[16] CRIMINAL LAW ☜1181.5(8)
110k1181.5(8)
On remand, sentencing court was required to determine whether in light of
District of Columbia Circuit's Price decision, defendant qualified as "career
offender" for purposes of sentencing under career offender provisions for drug
convictions;   Price decision raised question of whether defendant's prior
convictions for attempted distribution of heroin could properly count in career
offender sentencing.   U.S.S.G. §§ 4A1.3, 4B1.2, comment. (n.1), 18 U.S.C.A.App.;
28 U.S.C.A. § 994(h)(1)(B), (h)(2)(B);   18 U.S.C.A. § 371;   Comprehensive Drug
Abuse Prevention and Control Act of 1970, §§ 401(a)(1), (b)(1)(C), 406, 21
U.S.C.A. §§ 841(a)(1), (b)(1)(C), 846.
 **\*1107 \*\*401** Appeal from the United States District Court for the District of
Columbia (92cr00273-02 & 92cr00273).
 David Kagan-Kans, Washington, DC, appointed by the court, argued the cause, and
filed the briefs, for appellant/cross-appellee.
 Thomas J. Tourish, Jr., Asst. U.S. Atty., Washington, DC, argued the cause, for
appellee/cross-appellant.   With him on the briefs, were Eric H. Holder, Jr.,
U.S. Atty., and John R. Fisher and Corbin A. Weiss, Asst. U.S. Attys.,
Washington, DC.

 Before:   MIKVA, Chief Judge, BUCKLEY and RANDOLPH, Circuit Judges.

 Opinion for the court filed by Circuit Judge RANDOLPH.


 RANDOLPH, Circuit Judge:
 The most serious issue presented in this case is whether, as the district court
ruled, the career offender provisions of the Sentencing Guidelines are
unconstitutional as applied to the defendant, Cordell Spencer.   **\*1108 \*\*402**
Spencer was convicted, after a jury trial, of possession with intent to
distribute cocaine base (21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii)), and
possession with intent to distribute a detectable amount of heroin (21 U.S.C. §§
841(a)(1), 841(b)(1)(C)).   Refusing to follow the Sentencing Guidelines, which
placed Spencer's sentence in the 30- year-to-life-imprisonment range, the court
sentenced Spencer to the mandatory minimum of 10 years' imprisonment.
                                        I
 After receiving complaints about drug activity in an apartment at 640 Park Road

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

25 F.3d 1105
**(Cite as: 25 F.3d 1105, *1108,   306 U.S.App.D.C. 399, **402)**

in northwest Washington, D.C., a police officer patrolling the area
investigated.  He saw Spencer inside the apartment talking with another
individual, described as an "unidentified white male."  When Spencer spotted the
officer, he closed the door.  The officer questioned the "white male" about his
presence in the apartment, but the record does not reveal the man's response.
Within a few days, the officer obtained a search warrant.  He went to the
apartment, saw Spencer and Ronald Chapman there, and one hour later returned
with two other officers to execute the warrant.
 As the officers drove through a nearby alley, they noticed Spencer removing his
left hand from the apartment door and carrying a set of keys in his right hand.
Confronted by the officers, Spencer first said the keys were for his car and an
apartment he rented elsewhere;  he then changed his story, saying he found the
keys in the hallway.  According to Spencer, he had just been "passing through"
the building.  One of the keys fit the lock on the apartment subject to the
warrant.
 Inside the apartment the officers found Chapman, an inoperable .25 caliber
pistol, three rounds of ammunition, 51 ziplock bags containing 6.69 grams of
cocaine base, 11 bags containing .87 grams of heroin, many empty ziplock bags, a
pager, a box of baking soda, and a strainer and spoon covered with cocaine and
heroin residue.  The apartment was filthy, and "look[ed] like nobody had lived
in there ... maybe two or three months."  The police recovered no personal
possessions linking Spencer to the apartment.  The lessee of the apartment,
Sincera Boone, apparently lived elsewhere.  At the time of his arrest, Spencer
was carrying a pager and $111 in cash.
 Charles Anderson, a friend of Spencer and a witness for the defense, testified
that he was on the porch of a nearby home (646 Park Road) playing with two
puppies for about two hours before the police arrived.  He asserted that during
those two hours, Spencer was sitting by a tree, where he remained until the
officers grabbed him and threw him against a car.  Anderson heard Spencer
threaten to sue the police.  He saw the officers take several keys from Spencer.
 Harveeta Tucker, another defense witness who knew Spencer, testified that when
the police arrived, she was in the front yard of her home at 648 Park Road. She
swore that Spencer had been near the tree for an hour and that the police
arrested him there after bringing Chapman out of the apartment.  She too heard
Spencer threaten to sue the police.  Although Anderson testified to seeing
Tucker, Tucker did not see Anderson and did not remember any puppies.  She
described a wooden wall with a small opening separating the porches at 646 and
648 Park Road.  On cross-examination Tucker admitted that there was a pending
armed robbery charge against her.  She denied harassing police officers making
arrests in her neighborhood, a statement contradicted in the government's
rebuttal by the investigating officer, who recounted Tucker's throwing bottles
at police officers making other drug arrests in the neighborhood.

II

[1] Spencer's list of alleged trial errors begins with the prosecutor's opening
statement.  The prosecutor described the pre-search events to the jury, reciting
Spencer's status as a "target" of the search warrant; the officers' expectations
that they would find him at the apartment;  and the investigating officer's
"prior encounters" with him.  These remarks did not, as Spencer believes,

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

25 F.3d 1105
**(Cite as: 25 F.3d 1105, \*1108, 306 U.S.App.D.C. 399, \*\*402)**

suggest that the government had evidence of Spencer's drug dealing beyond the evidence **\*1109 \*\*403** to be introduced. Compare United States v. Foster, 982 F.2d 551, 555 (D.C.Cir.1993); United States v. Perholtz, 842 F.2d 343, 360 (D.C.Cir.), cert. denied, 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988). What the prosecutor indicated the government would prove, the government did prove. The investigating officer testified that he had observed Spencer in the apartment twice before searching it. He gave Spencer's description to the other officers on the day of the search. Of course he expected to (and did) find him close to the apartment. In these respects, Spencer was indeed a target of the investigation, which included the search.

[2][3][4][5][6] The next item on Spencer's list is the district court's allowing the prosecutor to impeach defense witness Tucker with the pending armed robbery charge against her. We hold that the court acted within the limits of its discretion. Cases decided before adoption of the Federal Rules of Evidence generally forbid attacks on a witness' credibility merely on the basis that the witness had been arrested or charged. An indictment or an arrest is not, in itself, proof of the underlying criminal act. "Only a conviction," the Supreme Court wrote in Michelson v. United States, 335 U.S. 469, 482, 69 S.Ct. 213, 222, 93 L.Ed. 168 (1948), "therefore, may be inquired about to undermine the trustworthiness of a witness." Rule 609, Fed.R.Evid., as amended in response to Green v. Bock Laundry Machine Co., 490 U.S. 504, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989), now governs the impeachment of defense and prosecution witnesses with prior convictions. This "general attack on the credibility of the witness," Davis v. Alaska, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974), however, is not the only permissible method. A "more particular" attack occurs when the witness is impeached for bias. Id. Although not specifically mentioned in the Rules, proof of bias--that is, "the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party"--is "almost always relevant." United States v. Abel, 469 U.S. 45, 52, 105 S.Ct. 465, 469, 83 L.Ed.2d 450 (1984). It is common for the defense to cross examine prosecution witnesses about charges pending against them; that they might be influenced by "self-interest", by their desire to please the government, is fairly apparent. See John W. Strong et al., McCormick on Evidence § 39, at 133 n. 22 (4th ed. 1992). This court also permitted, before and after adoption of the Rules, the prosecution to impeach defense witnesses for bias by showing charges against them, subject always to the requirement, now embodied in Rule 403, that the probative value of this evidence is not substantially outweighed by danger of unfair prejudice. See United States v. Maynard, 476 F.2d 1170, 1174 (D.C.Cir.1973); United States v. Robinson, 530 F.2d 1076, 1080 (D.C.Cir.1976); cf. United States v. Anderson, 881 F.2d 1128, 1138 (D.C.Cir.1989); see also United States v. Senak, 527 F.2d 129, 147 (7th Cir.1975), cert. denied, 425 U.S. 907, 96 S.Ct. 1500, 47 L.Ed.2d 758 (1976). Here the district court concluded that Tucker's bias was a "legitimate" subject of inquiry. We see no basis for disturbing the ruling. The court carefully reviewed our decisions in Maynard and Robinson and analyzed the government's proffer in light of Tucker's history of harassing the police. It may be that, in general, a pending criminal charge against a defense witness would be as likely to move the witness to color his

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

25 F.3d 1105
**(Cite as: 25 F.3d 1105, *1109, 306 U.S.App.D.C. 399, **403)**

testimony for the prosecution as against it. Cf. Davis v. Alaska, 415 U.S. at
311, 94 S.Ct. at 1107. In this case, however, other evidence showed Tucker's
antipathy toward law enforcement and the court properly determined that the jury
could hear about a possible source of her hostility.

  [7] There is nothing to Spencer's additional claims that the court improperly
questioned Tucker and gave an erroneous jury instruction. Spencer raised
neither objection at trial and he cannot satisfy the "plain error" standard.
FED.R.CRIM.P. 52(b). Trial judges may question witnesses. FED.R.EVID. 614(b).
While it is often said the judge may not assume the role of an advocate, e.g.,
United States v. Norris, 873 F.2d 1519, 1526 (D.C.Cir.), cert. denied, 493 U.S.
835, 110 S.Ct. 113, 107 L.Ed.2d 75 (1989), the judge in this case did no such
thing. Most of the court's questions to Tucker concerned details, such as how
long Spencer had been **1110 **404 under the tree, the species of the tree and
whether Spencer stood or sat. The balance of the court's questions sought to
clarify why Tucker did not remember seeing Charles Anderson, who said he was on
the porch next door for two hours. If anything, the court assisted the defense
by adducing the fact that there was a wall between the two porches with only a
small opening.

  [8][9] As to the jury instructions, the court described the prosecution's
theory of the case and the defense's, and then told the jury that in order to
decide which theory of the case was correct, it must decide whether the officers
were lying or whether Tucker and Anderson were lying. The instruction did not,
as Spencer contends, plainly shift the burden of proof to the defense. A few
moments earlier, the court instructed, "As somebody or both lawyers said,
somebody is lying. It is perfectly obvious." The court immediately followed up
with an explanation of the burden of proof: "The defendant is not required to
prove his innocence. He doesn't have to prove anything. He can sit there and
wait for the government to prove its case." The court also explained that the
government had the burden of proving each element of the offense beyond a
reasonable doubt. Given the conflicting stories about Spencer's whereabouts at
the time of his arrest, the defense's repeated contention that the police were
lying, and Spencer's failure to object, the court's charge did not rise to the
level of plain error. The jury could not have construed the court's remark to
mean that the defendant had the burden of proof, unless it ignored the court's
other instructions. Cf. United States v. Alston, 551 F.2d 315, 318-19
(D.C.Cir.1976). [FN1]

     FN1. Spencer complains about the following remarks of the prosecutor,
     during closing argument, regarding the "white male" the investigating
     officer encountered when he first arrived at the apartment: "What do you
     think he asked the white male? He did not have a search warrant at that
     time. He's investigating drug distribution as part of his duties in the
     Fourth District vice unit. What do you think he asked the white male
     coming out of the apartment? What time is it? Or what are you doing
     there? What are you doing at this apartment? That was the beginning of
     the investigation."
     As the government concedes, one might infer from these remarks that the
     officer asked the white male about drug dealing and, perhaps, that the

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

white male answered that Spencer was selling drugs.  Brief for Appellee and
Cross-Appellant at 22.  But that is not the only possible inference and we
cannot simply assume the jury made it.  See Donnelly v. DeChristoforo, 416
U.S. 637, 646-47, 94 S.Ct. 1868, 1872-73, 40 L.Ed.2d 431 (1974).  There was
testimony that the officer had asked the white male "why he was there."
The prosecutor was entitled to mention this in closing argument, and to ask
the jury to credit the officer's testimony.  The prosecutor's technique may
have created some ambiguity but it did not create a reversible error.

III

[10] Spencer is a four-time loser.  Before this trial, he had been convicted
three times in the District of Columbia Superior Court:  in 1986 for
distributing heroin, in 1987 for attempting to distribute heroin, and in 1991
for attempting to possess cocaine with intent to distribute.  For his 1986 and
1987 crimes, he was sentenced under the "Youth Rehabilitation Act," D.C. CODE §
24-803;  for his 1991 crime, he received 18 months' probation, a sentence he was
serving when he committed the offenses in this case.
  Because Spencer stood convicted of possessing, with intent to distribute,
cocaine base in violation of 21 U.S.C. § 841(a)(1), because the amount was more
than 5 grams and because he had at least one prior conviction under local law
"relating to narcotic drugs," his statutory sentence was "not ... less than 10
years and not more than life imprisonment" (21 U.S.C. § 841(b)(1)(B)(iii)).
  Courts must follow the Sentencing Guidelines to determine where in this
range--10 years to life--a defendant like Spencer should be placed.  18 U.S.C. §
3553(b).  Spencer's presentence report treated him as a "career offender" under
U.S.S.G. § 4B1.1.  See 28 U.S.C. § 994(h).  This had the effect of boosting his
offense level from 26 to 37, increasing his criminal history category from IV to
VI, and raising his sentencing range to 30 years to life.
  Thirty years' imprisonment is, by anyone's lights, a severe sanction.  To the
district court, it was too severe.  Nevertheless, the court rejected defense
counsel's plea that it **\*1111 \*\*405** depart from the Guidelines and give Spencer
less time, as U.S.S.G. § 4A1.3 authorizes.  United States v. Spencer, 817
F.Supp. 176, 179-80 (D.D.C.1993).  (We will return to this subject in a moment.)
Instead of then following the Guidelines, the court sentenced Spencer to the
minimum statutory term of 10 years' imprisonment.  The court ruled that "a
thirty-year sentence for possessing less than eight grams of illegal narcotics
with intent to distribute violates the constitutional protections of due process
under the Fifth Amendment, Article III, and the Eighth Amendment."  817 F.Supp.
at 184.  From this ruling the government cross-appealed.
  As to the Eighth Amendment, our decision in United States v. Garrett, 959 F.2d
1005, 1009 (D.C.Cir.1992), sustained the 30-year Guideline sentence imposed in
that case on a career offender, holding that the length of the sentence was not
cruel and unusual punishment, particularly in view of Hutto v. Davis, 454 U.S.
370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (per curiam), which upheld a 40-year
sentence of imprisonment for distributing marijuana and possessing 9 ounces of
the drug with intent to distribute it.  See also Harmelin v. Michigan, 501 U.S.
957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). The district court distinguished
Garrett on the ground that the criminal there had a more extensive and violent

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

criminal career than Spencer. But the Garrett opinion did not turn on that consideration, indeed did not even mention any specifics regarding the prior offenses except to say that Garrett had "two prior felony drug convictions." 959 F.2d at 1009. The district court's distinction cannot, in any event, survive Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), which sustained, against an Eighth Amendment challenge, a life sentence imposed pursuant to state law on a recidivist whose three offenses consisted of obtaining $120.75 by false pretenses, passing a $28.36 false check, and fraudulently using a credit card to obtain $80 worth of goods and services.

[11][12] The district court thought it critical that a legislature or a judge determined the length of the sentences imposed in Rummel, Hutto, and Harmelin, while here the 30-year period was chosen by the Sentencing Commission, which "obviously is not a legislative body" and which has "interfere[d] with the power of federal courts to exercise their historic sentencing function." 817 F.Supp. at 181. The latter point, on which the court apparently relied for its Article III ruling, is scarcely worth discussing in view of Mistretta v. United States, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). [FN2] As to the court's other point about the Commission, it is true that the Supreme Court's opinions in Rummel, Hutto, and Harmelin stress the subjective nature of comparative sentencing and the consequent deference owed to legislative judgments. See Hutto, 454 U.S. at 373, 102 S.Ct. at 705; Rummel, 445 U.S. at 275-76, 100 S.Ct. at 1139-40. But Spencer's Guideline sentence reflects Congress's judgment as much as the sentences in those state cases reflected the state legislature's. Congress directed the Commission, in 28 U.S.C. § 994(h), to "assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized" for those individuals who fall into the "career offender" category--in Spencer's case, life imprisonment. On the assumption that two of Spencer's prior felonies place him within § 994(h)(2)(B)'s definition of a career offender, of which more hereafter, the Commission did precisely what Congress instructed. Indeed, § 994(h) "left the Sentencing Commission precious little room to maneuver." United States v. Norflett, 922 F.2d 50, 53 (1st Cir.1990); see also United States v. Garza, 999 F.2d 1048, 1051-52 (6th Cir.1993).

>    FN2. Congress has the unquestioned power to determine sentences for federal
>    crimes. No one would maintain that in doing so Congress unconstitutionally
>    invades the province of the federal courts. If Congress has validly
>    delegated to the Sentencing Commission the power to develop proportionate
>    penalties for federal criminals, as Mistretta held (488 U.S. at 371-79, 109
>    S.Ct. at 654-58), it follows that the Commission cannot be invading the
>    judicial authority when it carries out this legislative directive.

[13] The district court's other rationale, on which it seemed to rest its due process ruling, was that the Commission implemented **\*1112 \*\*406** § 994(h) through U.S.S.G. § 4B1.1 in a "wooden" and "blind" manner, treating all "career offenders" alike, without regard to their individual circumstances. 817 F.Supp. at 178 n. 9, 182. Other courts of appeals have rejected similar "due process" challenges to § 4B1.1. See United States v. John, 936 F.2d 764, 766 n. 2 (3d

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

25 F.3d 1105
**(Cite as: 25 F.3d 1105, \*1111, 306 U.S.App.D.C. 399, \*\*406 )**

Cir.1991); United States v. Jones, 907 F.2d 929, 930 (9th Cir.1990); United
States v. Green, 902 F.2d 1311, 1313 (8th Cir.), cert. denied, 498 U.S. 943, 111
S.Ct. 353, 112 L.Ed.2d 316 (1990); United States v. Pinto, 875 F.2d 143, 144-46
(7th Cir.1989). If the district court were right, if defendants had some due
process right to individualized sentencing, all mandatory sentencing provisions
would be unconstitutional, including the provision under which the court
sentenced Spencer to a 10-year mandatory minimum term of imprisonment. Yet
mandatory sentences have been part of the federal criminal law since 1790 and,
wisely or not, by 1991 there were no less than 100 separate federal mandatory
minimum penalty provisions. See UNITED STATES SENTENCING COMMISSION, SPECIAL
REPORT TO CONGRESS: MANDATORY MINIMUM PENALTIES IN THE FEDERAL CRIMINAL JUSTICE
SYSTEM 5-15 (1991).

[14] Furthermore, the Guidelines may be more flexible than the district court
supposed. The policy statement in U.S.S.G. § 4A1.3, which is authoritative
(Williams v. United States, 503 U.S. 193, ----, 112 S.Ct. 1112, 1119, 117
L.Ed.2d 341 (1992)), permits downward departures "when criminal history category
VI, assigned pursuant to the career offender guideline, significantly
overrepresents the seriousness of a defendant's past criminal conduct and the
likelihood of recidivism." [FN3] United States v. Beckham, 968 F.2d 47, 54
(D.C.Cir.1992). The district court recognized as much, but thought that
Spencer's circumstances did not warrant special treatment. Spencer, 817 F.Supp.
at 179. Ordinarily this would be the end of the matter; a sentencing court's
discretionary refusal to depart downward is not reviewable on appeal. Beckham,
968 F.2d at 53; United States v. Hazel, 928 F.2d 420, 424 (D.C.Cir.1991).
However, we may rule on Spencer's claim that the district court misconstrued the
scope of its discretion under U.S.S.G. § 4A1.3. See Beckham, 968 F.2d at 53;
United States v. Ortez, 902 F.2d 61, 63-64 (D.C.Cir.1990).

> FN3. The Commission's policy statement, U.S.S.G. § 4A1.3, says, in relevant
> part:
> There may be cases where the court concludes that a defendant's criminal
> history category significantly over-represents the seriousness of a
> defendant's criminal history or the likelihood that the defendant will
> commit further crimes. An example might include the case of a defendant
> with two minor misdemeanor convictions close to ten years prior to the
> instant offense and no other evidence of prior criminal behavior in the
> intervening period. The court may conclude that the defendant's criminal
> history was significantly less serious than that of most defendants in the
> same criminal history category (Category II), and therefore consider a
> downward departure from the guidelines.

[15] The Third and Fourth Circuits hold that departures under U.S.S.G. § 4A1.3
are not governed by 18 U.S.C. § 3553(b) and U.S.S.G. § 5K2.0 (policy statement),
which limit departures to cases in which there is an "aggravating or mitigating
circumstance of a kind, or to a degree" the Commission has not "adequately taken
into consideration" in formulating the Guidelines. United States v. Shoupe, 988
F.2d 440, 444-47 (3d Cir.1993); United States v. Pinckney, 938 F.2d 519, 521
(4th Cir.1991); but see United States v. Bowser, 941 F.2d 1019, 1023-25 (10th

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

25 F.3d 1105
**(Cite as: 25 F.3d 1105, \*1112, 306 U.S.App.D.C. 399, \*\*406)**

Cir.1991). Shoupe viewed 18 U.S.C. § 3553(b) and U.S.S.G. § 5K2.0 as
analytically distinct from U.S.S.G. § 4A1.3. In making the § 4A1.3
determination whether a defendant's criminal history category significantly
overrepresents (or underrepresents) the seriousness of his past conduct and the
likelihood he will commit crimes in the future, the sentencing court, Shoupe
decided, 988 F.2d at 445, must take into account information, "including factors
which the Commission may have otherwise considered in promulgating other
provisions of the Guidelines." Id. at 447. Under Shoupe, factors such as age
and immaturity at the time of the prior offenses may therefore be considered.
Id.

 Whether 18 U.S.C. § 3553(b) and U.S.S.G. § 5K2.0 are as restrictive as the
Third and Fourth Circuits believed may be open to **\*1113 \*\*407** doubt, as Judge
Breyer persuasively demonstrated in United States v. Rivera, 994 F.2d 942,
946-50 (1st Cir.1993). Shoupe and Pinckney are, moreover, inconsistent with the
Supreme Court's statement in United States v. Williams, 503 U.S. at ----, ----,
112 S.Ct. at 1117, 1118, that a court may depart from the sentencing range
provided in the Guidelines "only" pursuant to 18 U.S.C. § 3553(b), a statement
made in a case in which the district court had departed upward pursuant to §
4A1.3 of the Guidelines. In discussing § 4A1.3 after Williams, we cited 28
U.S.C. § 991(b)(1)(B), which states generally the Commission's purpose of
"maintaining sufficient flexibility to permit individualized sentences when
warranted by mitigating or aggravating factors not taken into account in the
establishment of general sentencing practices." Beckham, 968 F.2d at 54. The
Supreme Court's statement about a sentencing court's authority in Williams does
appear unnecessary to its decision, as the Third Circuit thought, Shoupe, 988
F.2d at 446 n. 9, but that may not be a fair characterization of what we said in
Beckham about the Commission's authority. However, Beckham 's treating § 4A1.3
of the Guidelines as derived from 28 U.S.C. § 991(b)(1)(B), and by inference,
from 28 U.S.C. § 994(f), [FN4] does not necessarily contradict Shoupe and
Pinckney.

    FN4. Under 28 U.S.C. § 994(f), the Commission, in promulgating the
    Guidelines, must promote the purposes set forth in 28 U.S.C. § 991(b)(1).

 Two reasons make us reluctant to choose, in this case, between Shoupe and
Pinckney, on the one hand, and the contrary decision of the Tenth Circuit in
Bowser, on the other hand. First, it is unclear why the district court, having
found that "Spencer's prior offenses, which were also relatively unaggravated,
do not indelibly stamp him as a career offender," Spencer, 817 F.Supp. at 178,
thought that it could not depart downward. Regardless whether Shoupe and
Pinckney, or Bowser controlled, the Commission's commentary to § 4A1.3 itself
"recognizes that the criminal history score is unlikely to take into account all
the variations in the seriousness of criminal history that may occur." Yet the
district court thought it was "prohibited from taking into account the
relatively minor nature of [Spencer's] prior convictions or the extenuating
circumstances." 817 F.Supp. at 183. The court did say that if Spencer were
entitled to a departure a "significant majority of the defendants who come
before this Court would be entitled to departure" (id. at 180). But the court

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

25 F.3d 1105
**(Cite as: 25 F.3d 1105, \*1113,   306 U.S.App.D.C. 399, \*\*407)**

appears to have directed its statement at all defendants, when it should have
compared only career offenders whose sentences are dramatically increased as a
result of their prior offenses.   If the court had determined that Spencer's
criminal history was so minor that it rendered his an "unusual" career offender
case, we see no reason why the court could not invoke § 4A1.3 to depart
downward.   United States v. Rivera, 994 F.2d at 947.   So far as we can tell,
however, the court never made that determination.

[16] Second, it is an open question whether on remand the court will get to the
point of exercising or refusing to exercise its discretion to depart under §
4A1.3.   At oral argument the question arose whether Spencer even qualified as a
"career offender" in view of our recent decision in United States v. Price, 990
F.2d 1367 (D.C.Cir.1993).   Price held that the Commission was not authorized
under 28 U.S.C. § 994(h)(1)(B) to use a conspiracy, in violation of 18 U.S.C. §
371, to trigger sentencing under the career offender provisions, even though the
objects of the conspiracy and the overt act consisted of possessing with intent
to distribute drugs in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C).   990
F.2d at 1368-69.

Section 994(h) provides in relevant part:
    The Commission shall assure that the guidelines specify a sentence to a term
    of imprisonment at or near the maximum term authorized for categories of
    defendants in which the defendant is eighteen years old or older and--
    (1) has been convicted of a felony that is--
    ....
    (B) an offense described in section 401 of the Controlled Substances Act (21
    U.S.C. 841) ...; and
    **\*1114 \*\*408** (2) has previously been convicted of two or more prior felonies,
    each of which is--
    ....
    (B) an offense described in section 401 of the Controlled Substances Act (21
    U.S.C. 841)....

Here the district court said that two of Spencer's three prior convictions were
"attempted distribution of heroin," and "attempted possession with intent to
distribute heroin."   Spencer, 817 F.Supp. at 178.   While the court correctly
noted that under the Sentencing Commission's definition of prior offenses,
attempts count (U.S.S.G. § 4B1.2, application note 1), Price raises the question
whether they may properly count in view of 28 U.S.C. § 994(h)(2)(B).   [FN5]
Spencer's prior convictions for attempts fit the description of a federal
offense, but it is the one contained in 21 U.S.C. § 846, which makes attempts to
commit certain offenses subject to the same punishment as the offense, rather
than 21 U.S.C. § 841, as 28 U.S.C. § 994(h)(2)(B) seems to contemplate.   Compare
Price, 990 F.2d at 1369-70.

    FN5. Price recognized that although the court's concern there was "only
    with § 994(h)(1)(B), ... § 994(h)(2)(B) poses the same problem." 990 F.2d
    at 1369.

The issue whether in light of Price the Guidelines may properly place Spencer
in the career offender category arose, as we have said, only in oral argument.

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

25 F.3d 1105
**(Cite as: 25 F.3d 1105, \*1114,   306 U.S.App.D.C. 399, \*\*408)**

The parties have not yet had a chance to address it in any comprehensive
fashion.  Since the case must be remanded for resentencing in any event, we
should have the benefit of the district court's judgment, after full argument,
before we consider this issue further.
  The judgment of conviction is affirmed and the case is remanded for further
proceedings in accordance with this opinion.
END OF DOCUMENT

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Citation                  Found Document              Rank 1 of 1                Database
968 F.2d 47                                                                      CTA
36 Fed. R. Evid. Serv. 70
**(Cite as: 968 F.2d 47, 296 U.S.App.D.C. 311)**
ₚ

UNITED STATES of America
v.
Robert A. BECKHAM, Appellant.
No. 91-3051.
United States Court of Appeals,
District of Columbia Circuit.
Argued April 13, 1992.
Decided June 19, 1992.

 Defendant was convicted in the United States District Court for the District of
Columbia, Thomas Penfield Jackson, J., of possession with intent to distribute
crack cocaine and aiding and abetting the distribution of crack cocaine and was
sentenced as a career offender, and he appealed.  The Court of Appeals,
Silberman, Circuit Judge, held that:  (1) statement of defendant's companion was
admissible as an adoptive admission;  (2) defendant was not entitled to
instruction on offense of simple possession;  but (3) downward departure is
authorized when criminal history category assigned to career offender guideline
significantly overrepresents seriousness of defendant's past criminal conduct
and likelihood of recidivism.
 Remanded.

[1] CRIMINAL LAW ☞427(1)
110k427(1)
Government need not charge defendant with conspiracy in order to admit hearsay
statements into evidence under the co-conspirator exception;  government need
only prove by preponderance of the evidence that conspiracy existed between
defendant and the declarant and that the statement was made in furtherance of
the conspiracy.

[1] CRIMINAL LAW ☞427(5)
110k427(5)
Government need not charge defendant with conspiracy in order to admit hearsay
statements into evidence under the co-conspirator exception;  government need
only prove by preponderance of the evidence that conspiracy existed between
defendant and the declarant and that the statement was made in furtherance of
the conspiracy.

[2] CRIMINAL LAW ☞427(4)
110k427(4)
Hearsay statement may be considered in finding that conspiracy existed, but the
statement may not be sole basis for that ruling and for admission of the
statement under the co-conspirator exception.

[2] CRIMINAL LAW ☞427(5)
110k427(5)

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

968 F.2d 47
**(Cite as: 968 F.2d 47, 296 U.S.App.D.C. 311)**

Hearsay statement may be considered in finding that conspiracy existed, but the statement may not be sole basis for that ruling and for admission of the statement under the co-conspirator exception.

[3] CRIMINAL LAW ☞427(5)
110k427(5)
Mere physical proximity between defendant and alleged co-conspirator and their friendship did not provide support for inferring that they had the specific intent to further common unlawful objective so as to make statement admissible under the co-conspirator exception.

[4] CRIMINAL LAW ☞427(5)
110k427(5)
Evidence that defendant's companion turned to defendant as an alternative source of supply when undercover officer sought to purchase cocaine did not support finding of conspiracy between defendant and companion so as to permit admission of the companion's statement under co-conspirator exception. Fed.Rules Evid.Rule 801(d)(2)(B), 28 U.S.C.A.

[5] CRIMINAL LAW ☞1134(6)
110k1134(6)
Although contention that adoptive admission exception to the hearsay rule was applicable as well as co-conspirator exception was raised only tangentially before the district court and only by defense counsel, Court of Appeals could consider contention when raised by the government on appeal as part of harmless error inquiry with respect to admission of the statement as the statement of co-conspirator.  Fed.Rules Evid.Rule 801(d)(2)(B, E), 28 U.S.C.A.

[6] CRIMINAL LAW ☞407(1)
110k407(1)
Companion's statement could be used against defendant as an adoptive statement as long as defendant manifested an adoption or belief in its truth;  defendant must have understood and unambiguously assented to the companion's statement, but his understanding and assent could be established through conduct as well as words.  Fed.Rules Evid.Rule 801(d)(2)(B), 28 U.S.C.A.

[7] CRIMINAL LAW ☞407(1)
110k407(1)
When defendant got up from his chair, walked over to a stash of crack that was packaged for distribution, and began to open it immediately after defendant's companion told police officer that the officer could get another rock of crack from "my buddy," defendant indicated his endorsement of his companion's statement and it was admissible under the adoptive admission exception to the hearsay rule.  Fed.Rules Evid.Rule 801(d)(2)(B, E), 28 U.S.C.A.

[8] CRIMINAL LAW ☞795(1)
110k795(1)
District judge is obliged to give lesser included offense instruction when jury

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

968 F.2d 47
**(Cite as: 968 F.2d 47,  296 U.S.App.D.C. 311)**

could rationally find the defendant guilty of the lesser offense but acquit him
of the greater.

[9] CRIMINAL LAW ⬤⟿795(2.70)
110k795(2.70)
Defendant charged with possession of crack cocaine with intent to distribute was
not entitled to instruction on simple possession where police officer's
testimony indicated that defendant reached for package of cocaine and opened it
when police officer asked to purchase some cocaine and defendant testified that
the package of cocaine fell out of a glove which he had just picked up out of
curiosity.  Comprehensive Drug Abuse Prevention and Control Act of 1970, §
404(a), 21 U.S.C.A. § 844(a).

[10] CRIMINAL LAW ⬤⟿1147
110k1147
Refusal to depart downward where there is authority to do so is within the
unreviewable discretion of the district court, but Court of Appeals will remand
case for resentencing when the district court indicates erroneously that its
discretion was constrained in a way that it actually was not.

[10] CRIMINAL LAW ⬤⟿1181.5(8)
110k1181.5(8)
Refusal to depart downward where there is authority to do so is within the
unreviewable discretion of the district court, but Court of Appeals will remand
case for resentencing when the district court indicates erroneously that its
discretion was constrained in a way that it actually was not.

[11] CRIMINAL LAW ⬤⟿1239
110k1239
While policy statement is not a guideline, it is an authoritative guide to
making departures under the Sentencing Guidelines.  18 U.S.C.A. § 3553(a)(5),
(b);  U.S.S.G. § 4A1.3, p.s., 18 U.S.C.A.App.

[12] CRIMINAL LAW ⬤⟿1178
110k1178
Although defendant's disproportionality argument was not raised on the trial
court, where the government failed to object to it or comment on it, it waived
any waiver argument which it might have had.

[13] CRIMINAL LAW ⬤⟿1302
110k1302
Disproportionality does not, in itself, provide appropriate basis for downward
departure from the Guidelines sentence;  unless disproportionality between crime
and punishment is so extreme that it violates the Eighth Amendment, sentences
established for various crimes under the Guidelines cannot be set aside merely
because of perceived severity.  U.S.C.A. Const.Amend. 8; U.S.S.G. § 4A1.3, p.s.,
18 U.S.C.A.App.

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

968 F.2d 47
**(Cite as: 968 F.2d 47, 296 U.S.App.D.C. 311)**

[14] CRIMINAL LAW ☜1203.32
110k1203.32
Sentencing Guidelines authorize downward departure when criminal history
category VI which is assigned pursuant to career offender guideline
significantly overrepresents the seriousness of defendant's past criminal
conduct and the likelihood of recidivism. U.S.S.G. §§ 4A1.3, p.s., 4B1.1, 18
U.S.C.A.App.
**\*49 \*\*313** Appeal from the United States District Court for the District of
Columbia (90cr0399-02).
M. Elizabeth Kent, Washington, D.C. (appointed by this Court) for appellant.
Kenneth F. Whitted, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty.,
John R. Fisher and Thomas C. Black, Asst. U.S. Attys., Washington, D.C., were on
the brief, for appellee.

Before: SILBERMAN, BUCKLEY, and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:
Robert A. Beckham was convicted of possession with intent to distribute crack
cocaine and of aiding and abetting the distribution of crack. He appeals his
convictions on two grounds: he argues that hearsay testimony was improperly
introduced at his trial and that he was entitled to a jury instruction on the
lesser-included offense of simple possession. Beckham also claims that the
district court erred in sentencing him, because the court mistakenly believed
that it lacked authority under the Sentencing Guidelines to make a downward
departure from the indicated guideline range. We affirm Beckham's conviction
but agree that the district court misunderstood its authority to depart
downward. We therefore remand the case to the district court for resentencing.

I.

Several undercover police officers on patrol late one evening in August, 1990,
noticed what appeared to be several persons engaged in drug transactions in the
backyard of a house located at 5036 F Street, S.E., in Washington, D.C. Crossing
the street to get a better look, one of the officers, Officer Dunston, saw two
people in the yard: Robert Beckham was in a chair in the walkway leading up to
the rear door of the house, and Monica Monroe sat on a bench approximately two
feet away. [FN1] As Officer Dunston approached the yard, Monroe inquired, "Are
you looking?" Officer Dunston said that he was, and Monroe asked if he wanted
"a fifty," which the officer took to mean a fifty dollar rock of crack.

   FN1. At trial, Officer Dunston did not state that he had observed Beckham
   or Monroe in the yard prior to crossing the street.

Officer Dunston replied yes, walked into the yard, and stood directly in front
of Monroe, who reached into her pants pocket and produced a clear ziplock bag
containing a single rock of crack. Beckham remained seated two feet away.
Officer Dunston inspected the rock and asked Monroe if he could purchase another
fifty. Monroe replied, "I only had one, but you can get another from my buddy."

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

968 F.2d 47
**(Cite as: 968 F.2d 47, \*49, 296 U.S.App.D.C. 311, \*\*313)**

At that moment, Beckham got up from his chair, walked past Dunston and Monroe to
the far end of the bench on which Monroe was seated, and removed a large plastic
bag, which contained numerous smaller ziplock bags, from underneath the bench.
As Beckham began to open the bag, Officer Dunston identified himself as a police
officer and arrested both Monroe and Beckham. The large plastic bag was found to
contain slightly more than 13 grams of 89% pure crack, packaged in 34 smaller,
$50 bags.  A government drug expert testified that this packaging and amount was
consistent with drug distribution and inconsistent with personal consumption.
  The defense had an entirely different version of events.  According to the
appellant, this was "the case of the mysterious glove."  Appellant's Br. at 20.
Beckham had come to 5036 F Street the night of his arrest to visit his friend
Monica Monroe and her sister, Marie Ward, who lived there.  He brought over a
six-pack of beer, which he placed in Ward's refrigerator.  He began the evening
by drinking a beer in the backyard with Monroe.  As he sat in the yard chatting
with her and several other friends--drugs were never exchanged or even
mentioned--he noticed Officer Dunston **\*50 \*\*314** approach the yard, sweating and
tired.  According to Beckham, Monroe asked Officer Dunston several times if he
was all right, but Dunston never responded.  Instead, Dunston walked into the
backyard and began talking in low tones with Monroe.  Beckham claimed that he
never saw Monroe and Dunston exchange anything and that he did not hear what was
said.
  Beckham testified that while Monroe and Dunston were conversing, he finished
his first beer and got up from his chair to get another one from the
refrigerator.  As he walked to the back door of the house, he noticed an object
lying between the walkway and the bench.  He knelt down to examine it and
discovered that it was a dirty, tannish, suede man's glove.  He had never seen
it before.  When he picked it up, intending to ask whether anyone in the house
might have lost it, he felt something bulky in its palm.  Intrigued, he turned
it upside down, and a plastic bag, about the size of a golf ball, fell into his
hand.  He held the plastic bag for several seconds, trying to figure out what
was inside of it, but before he could, he noticed a movement over his left
shoulder.  This turned out to be Officer Dunston with his gun drawn.  Beckham
dropped the bag and the glove and put his hands in the air.  Although several
other defense witnesses testified that they had noticed the glove lying in the
yard or had seen it in the hands of the arresting officers, the officers denied
having ever seen a glove, and the glove did not appear at trial.
  The jury, obviously disbelieving the story of the mysterious glove, convicted
Beckham of possession with intent to distribute and of aiding and abetting
Monroe.  See 21 U.S.C. § 841(a)(1);  18 U.S.C. § 2.  Beckham received a sentence
of 30 years in prison and eight years of supervised release, largely because he
was classified as a career offender under § 4B1.1 of the Sentencing Guidelines
based on two prior felony convictions.  Beckham was only 18 years old at the
time he committed one of the two offenses upon which his career offender
designation was predicated.  That armed robbery occurred 15 years ago, and for
most of the intervening time, Beckham has apparently not been convicted of other
crimes.  The only other offense supporting the career offender designation,
attempted possession with intent to distribute cocaine, occurred 13 years after
the robbery conviction, in 1988.  For the past decade, Beckham has been steadily

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

968 F.2d 47
**(Cite as: 968 F.2d 47, \*50, 296 U.S.App.D.C. 311, \*\*314)**

employed doing auto body work.  Appellant requested a downward departure from
the guidelines range, but the district judge, although he felt that the 30 year
sentence was "extraordinarily harsh," denied the request.  The judge said that
he had no discretion to make a downward departure.

II.

 Beckham first challenges his conviction on the ground that it was obtained
through use of impermissible hearsay, in violation of the Confrontation Clause
of the Constitution.  See U.S CONST. amend VI.  Beckham argues that the district
court erred in denying a motion in limine and permitting the prosecution to
introduce through Officer Dunston Monica Monroe's statement, "I only had one,
but you can get another from my buddy."  It is asserted that this statement was
the most important evidence of Beckham's intent to distribute. Monroe failed to
appear for trial and was therefore unavailable to testify and to be cross-
examined.  If he had cross-examined Monroe, Beckham tells us, ·she would have
said, as she apparently did later at her own trial, that her statement had been
"you can get another from anybody," not from "my buddy." The government's case
would have been correspondingly weaker.
 [1][2][3] The district court admitted Monroe's statement against Beckham under
the hearsay exception for statements of a co-conspirator.  See FED.R.EVID.
801(d)(2)(E).  But the only evidence relied on by the district court in making
the necessary predicate finding that Beckham and Monroe were engaged in a
conspiracy, see Bourjaily v. United States, 483 U.S. 171, 175, 107 S.Ct. 2775,
2778, 97 L.Ed.2d 144 (1987)--and the only evidence of conspiracy that existed--
was the hearsay statement itself, Beckham's proximity to Monroe in the **\*51 \*\*315**
yard, and their apparent acquaintance. [FN2] The hearsay statement may be
considered in finding that a conspiracy existed, see id. at 181, but the
statement may not be the sole basis for such a ruling.  Under our precedent,
there must be independent evidence of a conspiracy as well.  See United States
v. Washington, 952 F.2d 1402, 1407 (D.C.Cir.1991);  cf. Bourjaily, 483 U.S. at
181, 107 S.Ct. at 2781 (reserving question whether independent evidence is
necessary).  But the independent evidence here--mere physical proximity and
friendship--does not provide support for inferring that Monroe and Beckham "had
the specific intent to further [a] common unlawful objective." United States v.
Tarantino, 846 F.2d 1384, 1392 (D.C.Cir.) (per curiam), cert. denied, 488 U.S.
867, 109 S.Ct. 174, 102 L.Ed.2d 143 (1988).

     FN2. Beckham was never charged with the crime of conspiracy;  the issue
     arose only as part of the evidentiary dispute.  The government need not
     charge the defendant with conspiracy in order to admit hearsay statements
     into evidence under the co-conspirator exception.  See United States v.
     Perholtz, 842 F.2d 343, 356 (D.C.Cir.1988), cert. denied, 488 U.S. 821, 109
     S.Ct. 65, 102 L.Ed.2d 42 (1989) (per curiam).  It need only prove by a
     preponderance of the evidence that a conspiracy existed between the
     defendant and the declarant and that the statement was made in furtherance
     of that conspiracy.  See Bourjaily, 483 U.S. at 175, 107 S.Ct. at 2778.

 [4] Even if we were to take Monroe's statement into account, the evidence tends
to show at most that Monroe turned to Beckham as an alternative source of

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

968 F.2d 47
**(Cite as: 968 F.2d 47, \*51, 296 U.S.App.D.C. 311, \*\*315)**

supply;  it provides scant basis for inferring that Monroe and Beckham were
joint venturers in a criminal enterprise or had any sort of prior agreement--
the essence of a conspiracy.  See Iannelli v. United States, 420 U.S. 770, 777 &
n. 10, 95 S.Ct. 1284, 1289 & n. 10, 43 L.Ed.2d 616 (1975).  In United States v.
Morris, 836 F.2d 1371 (D.C.Cir.1988), we rejected an argument that a
conspiratorial agreement could be shown based solely on a drug dealer's
occasional purchases from a supplier.  See id. at 1374.  Monroe and Beckham's
interaction prior to and during the charged drug sale suggests even less than a
formal buyer-seller relationship.  They may well have aided and abetted one
another's drug sales and may therefore be liable for each other's distribution
or possession with intent to distribute crimes, but aiding and abetting is
different from committing the independent crime of conspiracy. See Iannelli, 420
U.S. at 777 n. 10, 95 S.Ct. at 1289 n. 10.  The record simply discloses no
evidence--and certainly no evidence independent from the hearsay statement
itself--that would satisfy Rule 801(d)(2)(E)'s threshold requirement that
Beckham and Monroe be co-conspirators.

  [5][6] Nonetheless, we do not reverse Beckham's conviction, because we agree
with the government that Monroe's statement was properly admitted under a
different exception to the hearsay rule, the exception for adoptive admissions
set forth in FED.R.EVID. 801(d)(2)(B). [FN3]  This exception is firmly rooted in
American jurisprudence.  See Berrisford v. Wood, 826 F.2d 747, 751 (8th
Cir.1987), cert. denied, 484 U.S. 1016, 108 S.Ct. 722, 98 L.Ed.2d 671 (1988);
United States v. Monks, 774 F.2d 945, 952 (9th Cir.1985);  see also United
States v. Lemonakis, 485 F.2d 941, 949 (D.C.Cir.1973) (recognizing that adoptive
admissions constitute "a long- recognized hearsay exception"), cert. denied, 415
U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974);  4 WIGMORE ON EVIDENCE, §§
1069-1075 (Chadbourn rev. 1972) (citing English, Canadian, and state court cases
going back to the early years of the Republic).  No independent inquiry under
the Confrontation Clause is therefore required.  See White v. Illinois, 502 U.S.
346, ----, 112 S.Ct. 736, 743, 116 L.Ed.2d 848 (1992).  Under this exception,
**\*52 \*\*316** Monroe's statement may be used against Beckham as long as he
"manifested an adoption or belief in its truth."  FED.R.EVID. 801(d)(2)(B).
Beckham must have "understood and unambiguously assented to [Monroe's]
statement[ ]," Naples v. United States, 344 F.2d 508, 511 (D.C.Cir.1964),
overruled in part on other grounds,  Fuller v. United States, 407 F.2d 1199,
1221-22, 1230 n. 42 (D.C.Cir.1968) (en banc), cert. denied, 393 U.S. 1120, 89
S.Ct. 999, 22 L.Ed.2d 125 (1969), but his understanding and assent may be
established through conduct as well as through words.  See Marshall v. Young,
833 F.2d 709, 716 n. 3 (7th Cir.1987).

     FN3. Although the adoptive admission exception was raised only tangentially
     before the district court--and then only by defense counsel-- we are
     entitled to consider it when raised by the government on appeal as part of
     the harmless error inquiry.  FED.R.CRIM.P. 52(b) directs that "[a]ny error
     ... which does not affect substantial rights shall be disregarded."  If
     evidence erroneously allowed in under one rule would nonetheless have been
     admissible under another, no substantial right of the defendant has been
     affected.  See, e.g., United States v. Wiggins, 530 F.2d 1018, 1022

                Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

(D.C.Cir.1976) (per curiam).  Such an error cannot be used to reverse an otherwise valid conviction.

[7] When Monroe told Officer Dunston that he could get another rock of crack from "my buddy," Beckham immediately got up from his chair, walked over to a stash of crack that was packaged for distribution, and began to open it. By that action, Beckham indicated his endorsement of Monroe's statement.  See, e.g., United States v. Rollins, 862 F.2d 1282, 1296-97 (7th Cir.1988) (defendant's completion of a drug transaction constituted adoption of the statements of the person who proposed it), cert. denied, 490 U.S. 1074, 109 S.Ct. 2084, 104 L.Ed.2d 648 (1989).  Of course, appellant denied this account of the facts.  But where the facts bearing on admissibility conflict, the court need only find that it is more probable than not that the facts favoring admissibility exist in order to allow the evidence in.  See Bourjaily, 483 U.S. at 175-76, 107 S.Ct. at 2778-79.  The weight and credibility of the evidence is then left for the jury to evaluate.  The district court, in the course of ruling that a preponderance of the evidence supported a determination of conspiracy, necessarily credited the government's version of events--that Beckham responded directly to Monroe's statement, which indicated Beckham's intent to distribute the drugs he possessed.  Accordingly, Monroe's statement was admissible under the adoptive admissions exception to the hearsay rule.

*    *    *    *    *    *

[8] Beckham's second claim is that the district court erred in refusing to instruct the jury on the lesser-included offense of simple possession.  The district judge is obliged to give a lesser-included offense instruction when "a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater."  Schmuck v. United States, 489 U.S. 705, 716 n. 8, 109 S.Ct. 1443, 1450 n. 8, 103 L.Ed.2d 734 (1989).  We have said that a lesser-included offense instruction is required "if there is any evidence fairly tending to bear upon the lesser included offense, 'however weak' that evidence may be."  United States v. Thornton, 746 F.2d 39, 47 (D.C.Cir.1984) (quoting Belton v. United States, 382 F.2d 150, 155 (D.C.Cir.1967).  Even when it is "the prosecution's evidence [that] provides a 'rational basis' for the jury's finding the defendant guilty of a lesser offense," the instruction must be given.  United States v. Payne, 805 F.2d 1062, 1067 (D.C.Cir.1986) (per curiam) (quoting Thornton, 746 F.2d at 48).

[9] Here, however, there was no evidence from which a jury could rationally have concluded that Beckham possessed crack without intending to distribute it.  No aspect of the government or defense cases--not even a combination of aspects of each--supports a simple possession theory.  Beckham argues that the jury could have believed him guilty of simple possession if it believed his glove story:  he picked up the dirty glove out of curiosity, felt something bulky inside of it, turned it upside down, and stuck out his hand as the plastic bag fell out;  upon inspecting the bag, he realized that it contained crack but failed to drop it in the couple of seconds before Officer Dunston arrested him. As a matter of law, however, these facts, if true, would not support a conviction.  Inadvertent or accidental possession does not satisfy the statutory requirement that possession be knowing or intentional.  See 21 U.S.C. § 844(a).

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

 Alternatively, Beckham contends that the jury might rationally have concluded
that he "just happened to pick up the plastic bag of crack near the bench at an
inopportune moment" for some reason totally unrelated to Officer Dunston's
purchase **53 **317 from Monica Monroe (but presumably not by accident).   Even if
that were so--if there were no direct evidence of an actual drug transaction--
Beckham was guilty of more than simple possession.   The bag Beckham picked up
contained 34 individually wrapped rocks of crack of a uniform size typical of
street distribution.   The street value of the more than 13 grams involved was
$1,700.   That amount of crack so packaged indicates an intent to distribute and
not to possess for personal consumption.   Cf. United States v. Gibbs, 904 F.2d
52, 58-59 (D.C.Cir.1990) (reversing denial of lesser-included simple possession
instruction where there was virtually no evidence that the stash was
incompatible with personal use).   According to the completely unrebutted
testimony of the government's drug expert, no mere user would ever possess drugs
in the quantity and form that this crack was in, for the simple reason that his
loss would be too great if the drugs he purchased turned out to be counterfeit.
In order for the jury to have found Beckham guilty only of simple possession, it
would have had to discredit completely this testimony without any evidentiary
basis for doing so.   The jury would also have been required to believe Officer
Dunston's general account of the arrest while disbelieving his testimony about
Monroe's statement--again, without any evidence before it suggesting that the
officer's testimony was more reliable in one respect than another.   This
combination of testimonial inferences is too attenuated and improbable to
require a lesser-included offense instruction. Cf. Payne, 805 F.2d at 1067.
Failure to give such an instruction would, in any event, have been harmless
error, because the jury could not have found Beckham guilty as it did of aiding
and abetting Monroe without crediting the portion of Officer Dunston's testimony
that made intent to distribute a foregone conclusion.   We therefore affirm
Beckham's conviction.

                                     III.
 Beckham asserts that he is entitled to resentencing, because the district
court, by holding that it had no discretion to depart downward in Beckham's
case, misunderstood its authority under the Sentencing Guidelines.   For
Beckham's crime, the base offense level was 26, and his criminal history
category was V.   This would ordinarily have yielded a sentencing range of 110 to
137 months in prison.   His sentence was tripled to 360 months (or 30 years) to
life, however, because he was classified as a career offender, see U.S.S.G. §
4B1.1, which increased his offense level to 37 and his criminal history category
to VI.   His classification was based upon a 1988 conviction for attempted
possession with intent to distribute cocaine and on a 1975 armed robbery Beckham
had committed at the age of 18.
 [10][11][12] The district judge said at sentencing that he felt the sentence
was "extraordinarily harsh" and "excessive" in light of Beckham's criminal
record, his family involvement, and his employment history.   Beckham urged
several possible grounds for departure, including his youth, his family
responsibilities, his contrition, and the "grossly disproportionate" nature of
the penalty.   But the district court thought that none of these provided the
necessary authority.   "I do not see that I have any discretion in the matter.

                  Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

968 F.2d 47
**(Cite as: 968 F.2d 47, \*53, 296 U.S.App.D.C. 311, \*\*317)**

Congress and the Sentencing Commission have taken that away from me."
Although a refusal to depart downward where there is authority to do so is
within the unreviewable discretion of the district court, see United States v.
Hazel, 928 F.2d 420, 424 (D.C.Cir.1991), we will remand a case for resentencing
when the district court indicates erroneously that "his discretion was
constrained in a way that it actually was not."  Id. at 425;  see also United
States v. Ortez, 902 F.2d 61, 63-64 (D.C.Cir.1990).  Before the district court,
Beckham complained about the harshness of his sentence in general terms, but he
disclaimed knowledge of any specific authority in the Guidelines for departing
downward based on a mismatch between his sentence and the seriousness of his
misdeeds.  On appeal he makes a more refined argument based on the specific
Guidelines provision that authorizes downward departure "where the court
concludes **\*54 \*\*318** that a defendant's criminal history category significantly
over-represents the seriousness of a defendant's criminal history."  U.S.S.G. §
4A1.3. [FN4]  He points out that although he "just barely qualifie[s]" as a
career offender under § 4B1.1, the staleness of one of the two prior felony
convictions that served as the predicate for applying that section--his only
violent felony occurred 15 years prior to the present offense--makes the
mandatory criminal history category of VI for the typical career offender
disproportionate to the seriousness of his criminal history. [FN5]

   FN4. Although § 4A1.3 is technically a "policy statement" rather than a
   "guideline," it is "an authoritative guide" to making departures under the
   Guidelines.  Williams v. United States, 503 U.S. 193, 112 S.Ct. 1112, 1119,
   117 L.Ed.2d 341 (1992);  see also 18 U.S.C. §§ 3553(a)(5), 3553(b)
   (directing courts to take policy statements into account in sentencing).

   FN5. Although this refinement of the disproportionality argument was not
   raised below, the government failed to object to it, or even to comment
   upon it, in its brief, thus waiving any waiver argument it may have had.
   See United States v. McNeil, 911 F.2d 768, 772 (D.C.Cir.1990) (per curiam).

[13] We agree with the government that disproportionality does not, in itself,
provide an appropriate basis for a downward departure.  Unless the
disproportionality between crime and punishment is so extreme that it violates
the Eighth Amendment, cf. Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680,
115 L.Ed.2d 836 (1991)--a contention Beckham disclaims--the sentences
established for various crimes under the Guidelines cannot be set aside based
merely on their perceived severity.  See, e.g., United States v. Gonzales-
Lopez, 911 F.2d 542, 551 (11th Cir.1990), cert. denied, 500 U.S. 933, 111 S.Ct.
2056, 114 L.Ed.2d 461 (1991);  United States v. Studley, 907 F.2d 254, 260 (1st
Cir.1990).  To permit departures for that reason would be to eviscerate the
Guidelines, reestablishing the very judicial discretion in sentencing that the
Guidelines were designed to confine.  See Mistretta v. United States, 488 U.S.
361, 396, 109 S.Ct. 647, 667, 102 L.Ed.2d 714 (1989).
[14] We also agree, however, with the unanimous judgment of the other circuit
courts to have considered the issue that § 4A1.3 authorizes a downward departure
when criminal history category VI, assigned pursuant to the career offender

968 F.2d 47
**(Cite as: 968 F.2d 47, \*54,  296 U.S.App.D.C. 311, \*\*318)**

guideline, significantly overrepresents the seriousness of a defendant's past
criminal conduct and the likelihood of recidivism.  See United States v. Bowser,
941 F.2d 1019, 1023-24 (10th Cir.1991);  United States v. Pinckney, 938 F.2d
519, 521 (4th Cir.1991);  United States v. Lawrence, 916 F.2d 553, 554-55 (9th
Cir.1990);  United States v. Brown, 903 F.2d 540, 545 (8th Cir.1990);  cf.
United States v. Baskin, 886 F.2d 383, 389 (D.C.Cir.1989) (recognizing the
possibility of downward departure for a career offender and citing § 4A1.3),
cert. denied, 494 U.S. 1089, 110 S.Ct. 1831, 108 L.Ed.2d 960 (1990).  Congress
defined career offenders in the Sentencing Commission's authorizing statute and
directed the Commission to ensure that they be sentenced "at or near the maximum
term authorized."  28 U.S.C. § 994(h).  The Commission carried out this
directive in part by providing that "[a] career offender's criminal history
category in every case shall be category VI."  U.S.S.G. § 4B1.1.  But Congress
gave the Sentencing Commission authority to "maintain[ ] sufficient flexibility
to permit individualized sentences when warranted by mitigating or aggravating
factors not taken into account in the establishment of general sentencing
practices." 28 U.S.C. § 991(b)(1)(B).  The Commission used this authority in
adopting § 4A1.3, which it said was designed to "recognize[ ] that the criminal
history score is unlikely to take into account all the variations in the
seriousness of criminal history that may occur."  U.S.S.G. § 4A1.3, commentary.
In authorizing a departure from the guideline range when "the criminal history
category does not adequately reflect the seriousness of the defendant's past
criminal conduct," the Commission did not exclude category VI or career
offenders;  indeed, the last paragraph of § 4A1.3 explicitly recognizes that
departures from category VI occasionally may be warranted. Section **\*55 \*\*319**
4A1.3 also explicitly suggests that departure might be warranted where the
convictions supporting a criminal history score are old-- "close to ten years
prior to the instant offense"--and where a lengthy period of law-abiding
behavior has intervened.  U.S.S.G. § 4A1.3.  Of course, departure under § 4A1.3
is only justified in the rare and unusual case in which a defendant's criminal
history category significantly overrepresents the seriousness of his past
conduct and future threat to society.  See, e.g., Bowser, 941 F.2d at 1027;
United States v. Adkins, 937 F.2d 947, 952 (4th Cir.1991).  But because the
district court was unaware that § 4A1.3 might provide authority for a downward
departure in a case like Beckham's, we remand the case for resentencing.
 It is so ordered.
END OF DOCUMENT

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Citation              Found Document          Rank 1 of 1          Database
941 F.2d 1019                                                       CTA
33 Fed. R. Evid. Serv. 1312
**(Cite as: 941 F.2d 1019)**
ℳ

        UNITED STATES of America, Plaintiff-Appellee-Cross-Appellant,
                                  v.
           Carland A. BOWSER, Defendant-Appellant-Cross-Appellee.
                         Nos. 90-3234, 90-3256.
                      United States Court of Appeals,
                              Tenth Circuit.
                              July 19, 1991.

 Defendant was convicted of two counts of distribution of crack cocaine and
received downward departure from applicable career offender enhancement by the
United States District Court for the District of Kansas, G. Thomas Van Bebber,
J.  On cross appeals, the Court of Appeals held that:  (1) admission of
testimony concerning statements by confidential informant was not plain error;
(2) refusal of demand to disclose identity of confidential informant did not
violate defendant's right to confrontation;  and (3) downward departure from
enhancement of career offender categorization was not error.
 Affirmed.
 Baldock, Circuit Judge concurred in part, dissented in part, and filed opinion.

[1] CRIMINAL LAW ☜1153(1)
110k1153(1)
Court of Appeals reviews questions concerning admission of evidence under abuse
of discretion standard.

[2] CRIMINAL LAW ☜1036.1(3.1)
110k1036.1(3.1)
Formerly 110k1036.1(3)
Contention that testimony by undercover narcotics agent, that confidential
informant told him that defendant carried gun during drug transactions and that
defendant would like to kill undercover agent, was irrelevant and prejudicial
was reviewed for plain error where defendant did not object to admission of
testimony at trial.  Fed.Rules Cr.Proc.Rule 52(b), 18 U.S.C.A.

[3] CRIMINAL LAW ☜1036.1(1)
110k1036.1(1)
"Plain error," for purposes of review of evidence admitted without objection at
trial, is that error which, when viewed against entire record, seriously affects
fairness, integrity, or public reputation of judicial proceedings. Fed.Rules
Cr.Proc.Rule 52(b), 18 U.S.C.A.
See publication Words and Phrases for other judicial constructions and
definitions.

[4] CRIMINAL LAW ☜419(3)
110k419(3)
Testimony by undercover narcotics agent, that confidential informant told him

                Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

941 F.2d 1019
**(Cite as: 941 F.2d 1019)**

that defendant carried gun during drug transaction and would like to kill agent,
was not hearsay where testimony was introduced merely to explain officer's
aggressive conduct toward defendant during drug arrest.    Fed.Rules Evid.Rule
801(c), 28 U.S.C.A.

[5] **WITNESSES** ☜216(4)
410k216(4)
Formerly 410k216.1
Determination of whether identity of confidential informant must be disclosed on
cross-examination requires case-by-case balancing of public interest in
protecting flow of information from informants to police against individual's
right to prepare his defense with relevant, helpful information essential to
fair determination of cause.

[6] **CRIMINAL LAW** ☜662.5
110k662.5
Defendant's right to confrontation requires that identity of confidential
informant be disclosed only when informant's testimony might be relevant to
charges against defendant, or when informant is witness to or participates in
charged conduct.    U.S.C.A. Const.Amend. 6.

[7] **CRIMINAL LAW** ☜627.10(5)
110k627.10(5)
Drug defendant's right to confrontation was not violated by denial of his demand
for identity of confidential informant where informant did not testify at trial,
was not witness to sales of crack cocaine, and defendant made no showing that
direct confrontation would assist him to establish his defense at trial.
U.S.C.A. Const.Amend. 6.

[8] **CRIMINAL LAW** ☜1203.32
110k1203.32
Sentencing Guidelines permit district court to depart downward from career
offender status.    U.S.S.G. § 4A1.3, 18 U.S.C.A.App.;    18 U.S.C.A. § 3553(b).

[9] **CRIMINAL LAW** ☜1203.32
110k1203.32
Over-representation of seriousness of drug defendant's criminal history
justified downward departure from enhancement of career offender status
categorization where defendant was 20 years old when previous offenses occurred,
criminal acts were committed within two months of each other, defendant received
concurrent sentences for convictions, defendant was sentenced in accordance with
original offense level and criminal history category without career offender
enhancement.    U.S.S.G. §§ 4A1.2(a)(2), 4A1.3, 4B1.1, 5H1.1, p.s., 5K2.0, p.s.,
18 U.S.C.App.;    18 U.S.C.A. §§ 3553(b), 3742(e)(3).

[10] **CRIMINAL LAW** ☜1203.32
110k1203.32
For purposes of determining whether career offender category is appropriate, age

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

941 F.2d 1019
**(Cite as: 941 F.2d 1019)**

is insufficient as mitigating factor, but taken in context of other
circumstances of defendant's criminal history, age could be germane. U.S.S.G. §
5H1.1, p.s., 18 U.S.C.App.

[11] CRIMINAL LAW ☜1203.32
110k1203.32
Close proximity of drug defendant's previous two robbery convictions did not, by
itself, justify downward departure from career offender category enhancement,
but consideration of proximity of acts for previous convictions as part of
composite rationale for downward departure was not error.    U.S.S.G. Ch. 3, Pt.
D, intro. comment., 18 U.S.C.A.App.

[12] CRIMINAL LAW ☜1147
110k1147
District court's decisions about degree of departure from Sentencing Guidelines
receive deferential standard of review by Court of Appeals.   18 U.S.C.A. §
3742(e)(3).
 **\*1020** Michael G. Katz, Federal Public Defender, and Jill M. Wichlens, Asst.
Federal Public Defender, Denver, Colo., for defendant-appellant-cross-appellee.
 Lee Thompson, U.S. Atty., and Robert S. Streepy, Asst. U.S. Atty., Kansas City,
Kan., for plaintiff-appellee-cross-appellant.

 Before LOGAN, MOORE and BALDOCK, Circuit Judges.

 **\*1021** PER CURIAM.
 Defendant Carland A. Bowser was convicted of two counts of distribution of a
Schedule II narcotic, crack cocaine, pursuant to 21 U.S.C. 841(a)(1). [FN1]   On
appeal, defendant challenges the admission of certain evidence and the court's
prohibition of his attempted cross-examination concerning the identity of a
confidential informant.   On cross-appeal, the government challenges the district
court's downward departure from the applicable sentencing guideline. [FN2]   We
affirm.

     FN1. 21 U.S.C. § 841(a)(1) provides:  "Except as authorized by this
     subchapter, it shall be unlawful for any person knowingly or
     intentionally--to manufacture, distribute, or dispense, or possess with
     intent to manufacture, distribute or dispense, a controlled substance[.]"

     FN2. Appellant Bowser moved to submit this case on the briefs;  the
     government notified the court that it did not recommend oral argument on
     either the appeal or the cross-appeal.   After examining the briefs and
     appellate record, the court determined that oral argument would not
     materially assist the determination of this appeal.   See Fed.R.App.P.
     34(a);   10th Cir.R. 34.1.9.   The case was therefore ordered submitted
     without oral argument.

 On January 10, 1990, defendant made a hand-to-hand sale of 2.7 grams of crack
cocaine to an undercover agent of the federal Bureau of Alcohol, Tobacco, and

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

941 F.2d 1019
**(Cite as: 941 F.2d 1019, \*1021)**

Firearms.  The next day, he made a second hand-to-hand sale of 6.6 grams of
crack cocaine to the same agent.  Both sales were witnessed by another
undercover agent.
 During the second sale, the agent was "wired" with a sound transmitter, and the
entire transaction was tape recorded.  After the second sale, defendant
attempted to evade arrest by running into a nearby department store, where his
flight with police pursuit and his capture and arrest were videotaped by the
store's in-house security system. [FN3]

   FN3. The government's evidence at trial included the testimony of the two
   AFT undercover agents involved in the hand-to-hand sales, the audio tape of
   the second transaction, the video tape of the defendant's capture and
   arrest, and foundation, corroboration and chain of custody witnesses.

 Following his conviction, defendant unsuccessfully moved for a new trial, a
request he renews here on appeal.  Defendant first argues that the admission of
certain testimony by one of the undercover agents was irrelevant and prejudicial
in contravention of Fed.R.Evid. 402 and 403.  The agent testified that a
confidential informant told him defendant carried a gun during drug transactions
and defendant would like to kill the undercover agent. R.Vol. III at 29-30.
 [1][2][3] We review questions concerning the admission of evidence under an
abuse of discretion standard.  United States v. Cooper, 733 F.2d 1360, 1366
(10th Cir.), cert. denied sub nom. Threat v. United States, 467 U.S. 1255, 104
S.Ct. 3543, 82 L.Ed.2d 847 (1984) (admission of evidence);  see also United
States v. Silverstein, 737 F.2d 864, 866 (10th Cir.1984) ("Balancing the
probative value of evidence against its prejudicial effect is within the sound
discretion of the trial court.").  Because defendant did not object to admission
of this testimony at trial, we review for plain error. Fed.R.Crim.P. 52(b)
("Plain errors or defects affecting substantial rights may be noticed although
they were not brought to the attention of the court.").  Plain errors are those
errors that when viewed against the entire record " 'seriously affect the
fairness, integrity or public reputation of judicial proceedings.' "  United
States v. Young, 470 U.S. 1, 15-16, 105 S.Ct. 1038, 1046-47, 84 L.Ed.2d 1 (1984)
(citation omitted);  accord United States v. Hooks, 780 F.2d 1526, 1532 (10th
Cir.), cert. denied, 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986).
 [4] We hold that the evidence was not hearsay because it was not introduced for
the purpose of proving defendant carried a gun or intended to kill the agent.
Fed.R.Evid. 801(c).  The statements were introduced merely to explain the
officer's aggressive conduct towards the defendant.  In that context the
statements were relevant.
 Second, defendant claims a violation of his Sixth Amendment right to
confrontation **\*1022** when the district court sustained the government's objection
to defense counsel's demand that a witness identify a confidential informant.
At trial, an undercover agent testified that the agents made contact with
defendant through information provided by a confidential informant.  Defense
counsel attempted to cross-examine the agent about the identity of the
informant, but the court sustained the government's objection, citing Roviaro v.
United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).  Defendant

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

941 F.2d 1019
**(Cite as: 941 F.2d 1019, \*1022)**

claims this ruling to have been an abuse of discretion, if not an abridgement of
his Sixth Amendment right of confrontation.
  The right of cross-examination is fundamental.  However, any reversal of a
  conviction on the basis of undue limitation upon cross-examination must
  demonstrate a denial of a due process right of confrontation as guaranteed in
  the Sixth Amendment, or an abuse of discretion by the trial court in limiting
  cross-examination.   The exercise of discretion by the trial court will not be
  upset unless it is determined to be clearly prejudicial.
  United States v. Walton, 552 F.2d 1354, 1364 (10th Cir.) (citations omitted),
cert. denied, 431 U.S. 959, 97 S.Ct. 2685, 53 L.Ed.2d 277 (1977). We hold that
the trial court was correct in this matter, although for different reasons than
those articulated from the bench. [FN4]

    FN4. The trial court denied defense counsel's request for the informant's
    identity in this colloquy: [DEFENSE COUNSEL]:  That statement he made, Your
    Honor, is extremely prejudicial.
    THE COURT:  Well, it is but you didn't object to it.  And it was probably
    objectionable because it was hearsay and I think the fact that you let him
    answer it and then now want to know who the confidential informant was that
    gave him that information is--I think you've sort of created a strong
    [straw] man to knock down to find that out and I'm going to sustain the
    Government's objections, I'm not going to require him to reveal the
    identity of the confidential informant.
    R.Vol. III at 37.

  [5][6][7] Determination of whether the identity of a confidential informant
must be disclosed on cross-examination requires a case-by-case balancing of the
public interest in protecting the flow of information from informants to the
police against the individual's right to prepare his defense with relevant,
helpful information essential to the fair determination of a cause. Roviaro, 353
U.S. at 62, 77 S.Ct. at 628.  Revelation of the identity of an informant is
compelled by the Sixth Amendment only when the informant's testimony might be
relevant to the charges against defendant, or when the informant was a witness
to or participant in the charged conduct.  United States v. Freeman, 816 F.2d
558, 562 (10th Cir.1987);  United States v. Halbert, 668 F.2d 489, 496 (10th
Cir.), cert. denied, 456 U.S. 934, 102 S.Ct. 1989, 72 L.Ed.2d 453 (1982).   The
informant in the present case did not testify at trial, nor was he or she a
witness to the two sales of crack cocaine.  In addition, defendant made no
showing that direct confrontation with the informant would assist defendant in
his attempt to establish his defense at trial, that of duress, or that his case
was prejudiced by the government's refusal to identify this informant.   We
conclude that defendant suffered no constitutional violation when the court
denied his demand for the identity of the undercover agent's source of
confidential information and decline to remand for new trial.
  Turning to the cross-appeal, the government urges that the district court erred
in its downward departure from the sentencing guidelines.  The drug sales of
which defendant was convicted were not his first criminal offense.  In 1984,
when he was twenty years old and a student on athletic scholarship at a junior

college, defendant was charged in Sedgwick County, Kansas, with conspiracy to commit armed robbery, aggravated robbery, and kidnapping. Within two months, during the time he was released on bond pending trial on those charges, he was arrested for aggravated robbery in Montgomery County, Kansas. He pled guilty to all charges and was sentenced by each court to prison terms of five to twenty years. The court in Montgomery County originally released defendant to probation, but later ordered that his second \*1023 sentence be served concurrent with the Sedgwick County sentence. He had no other criminal record of either arrests or convictions as a juvenile or as an adult.

Under the sentencing guidelines, defendant's sentence for his current offenses would have been nearly tripled by the enhancement as a career offender:

[T]he presentence report assigned three points for each prior conviction, pursuant to guideline § 4A1.1(a). The report then added two points because Mr. Bowser committed the instant offense while on parole from his state sentence, see U.S.S.G. § 4A1.1(d), and one more point because he committed the instant offense less than two years after release from imprisonment on the state sentence. See U.S.S.G. § 4A1.1(e). This resulted in nine total points, for a criminal history category of IV. Coupled with an offense level of 26 based on the quantity of cocaine base involved, this yielded a guideline range of 92 to 115 months--7.6 to 9.5 years.

... Because Mr. Bowser's two prior convictions qualified as crimes of violence within the meaning of guideline § 4B1.1, he was classified as a career offender. This classification raised his criminal history category from IV to VI and his offense level from 26 to 34, yielding a new guideline range of 262 to 327 months--21.8 to 27.2 years.

Appellant's opening brief at 12-13 (citations omitted).

Pursuant to United States Sentencing Commission, Guidelines Manual, § 4A1.3 (Nov. 1989), [FN5] the district court found that although defendant technically fit within the definition of a career offender, his history of criminal conduct was significantly less serious than that of most defendants categorized as career offenders. The court stated: "I'm going to find that the two prior felony convictions both occurred ... when he was 20 years of age and within two months of each other. I think to consider him a career offender under those circumstances would be unjust.... He also received concurrent sentences for those offenses." R.Vol. IV at 7. The court sentenced defendant to the penalty under the guidelines for his drug sales with his criminal history but without the enhancement of the career offender categorization.

FN5. U.S.S.G. § 4A1.3 provides in pertinent part:
There may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes....
In considering a departure under this provision, the Commission intends that the court use, as a reference, the guideline range for a defendant with a ... lower criminal history category[.]

[8] The Sentencing Reform Act allows a sentencing court to depart from the

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

941 F.2d 1019
**(Cite as: 941 F.2d 1019, \*1023)**

guidelines if "the court finds that there exists [a] ... mitigating circumstance
of a kind, or to a degree, not adequately taken into consideration by the
Sentencing Commission." 18 U.S.C. § 3553(b). As a threshold issue, we agree
with the Eighth and Ninth Circuits that the Sentencing Guidelines permit the
district court to depart downward from career offender status. See United
States v. Lawrence, 916 F.2d 553, 554-55 (9th Cir.1990); United States v.
Smith, 909 F.2d 1164, 1169 (8th Cir.1990), cert. denied, 498 U.S. 1032, 111
S.Ct. 691, 112 L.Ed.2d 682 (1991); United States v. Brown, 903 F.2d 540, 545
(8th Cir.1990); see also United States v. Maddalena, 893 F.2d 815, 817-18 (6th
Cir.1989) (permitting downward departure from career offender status); United
States v. Garrett, 712 F.Supp. 1327, 1334-35 (N.D.Ill.1989) (same), aff'd, 903
F.2d 1105 (7th Cir.), cert. denied, 498 U.S. 905, 111 S.Ct. 272, 112 L.Ed.2d 227
(1990).
 In United States v. Maldonado-Campos, 920 F.2d 714 (10th Cir.1990), this court
set forth a three-part test for evaluation of downward departures from the
sentencing guidelines:
 Downward departures based upon criminal history are made pursuant to 18 U.S.C.
 § 3553(b) and are reviewed under the same three-part test for evaluating **\*1024**
 upward departures.... We first determine de novo whether the circumstances
 admit of a factor not adequately taken into account by the Sentencing
 Commission which would justify departure. Next, we review the district
 court's factual determinations supporting departure under the clearly
 erroneous standard. Finally, under 18 U.S.C. § 3742(e)(3) we determine
 whether the degree of departure was reasonable.
 Id. at 719-20 (footnotes and citations omitted); cf. United States v. White,
893 F.2d 276, 277-79 (10th Cir.1990) (setting forth the three-part test for
upward departures).
 [9] Applying these factors to the present case, the sentencing guidelines
explicitly acknowledge that over-representation of the seriousness of a
defendant's criminal history is an appropriate consideration for downward
departure. See U.S.S.G. § 4A1.3 (policy statement). [FN6] Thus, the district
court's rationale here is a permissible basis for departure from strict
adherence to the guidelines. See Maldonado-Campos, 920 F.2d at 719
(acknowledging downward departure for over-representation of the seriousness of
a defendant's criminal history as a departure "guided" by the guidelines
themselves).

    FN6. The guidelines' introduction underscores the flexibility which the
    Sentencing Commission intended in appropriate circumstances:
    When a court finds an atypical case, one to which a particular guideline
    linguistically applies but where conduct significantly differs from the
    norm, the court may consider whether a departure is warranted.... With
    [the specific exceptions set forth in the guidelines], however, the
    Commission does not intend to limit the kinds of factors (whether or not
    mentioned anywhere else in the guidelines) that could constitute grounds
    for departure in an unusual case.
    U.S.S.G., Ch. 1, pt. A, intro. comment 4(b).

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

 The district court stated three reasons for its conclusion that when the
guidelines' formulas were applied to defendant's individual circumstances his
criminal history was significantly over-represented.  The court stated that
defendant's two previous convictions (a) were committed when he was merely
twenty years old, (b) were committed within two months of each other, and (c)
were punished by concurrent sentences in the Kansas courts.  The district court
is only permitted to consider these factors in departure analysis if it finds
the mitigating circumstances, in kind or degree, were not adequately considered
by the Sentencing Commission in formulating the guidelines.  18 U.S.C. §
3553(b);  U.S.S.G. § 5K2.0 (policy statement).  Thus, we consider each factor
utilized here by the district court, mindful that a single mitigating
circumstance is sufficient to justify its determination that downward departure
was appropriate.  Smith, 909 F.2d at 1169.  The issue, however, is whether the
reasons employed by the trial court, taken together as the trial judge did,
justify downward departure.
 [10] First, the guidelines advise that "[a]ge is not ordinarily relevant in
determining whether a sentence should be outside the guidelines." U.S.S.G. §
5H1.1.  However, courts' interpretation of this guidance has varied as widely as
the rigidity with which the courts view the guidelines themselves.  Compare
United States v. Shoupe, 929 F.2d 116, 120 (3d Cir.1991) ("Although this policy
statement does not completely prohibit departures based upon age, it proscribes
such departures except in extraordinary circumstances.") with Smith, 909 F.2d at
1169 ("While age is not 'ordinarily relevant,' U.S.S.G. § 5H1.1, it gathers
meaning when assessing the circumstances of a criminal's career.   [The
defendant's criminal] career began and ended (for guideline purposes) near the
eighteen-year threshold.")  It is our interpretation that, without more, age is
insufficient as a mitigating factor, but taken in the context of the other
circumstances of a defendant's criminal history, it could be germane to whether
the career offender category is appropriately applied to an individual
defendant.
 [11] Our analysis is similar when applied to the district court's use of the
close proximity in time between the acts from which defendant's first two
convictions arose.  The guidelines themselves do not specifically address the
issue, and it is our *1025 conclusion that this factor would have been
unsuitable as an isolated rationale for downward departure.  Accord United
States v. Williams, 891 F.2d 962, 966 (1st Cir.1989) (short time span between
previous robberies, on different days and in different places, rejected as
weighting factor in sentencing);  cf. United States v. Harrison, 918 F.2d 30, 31
(5th Cir.1990) (rejecting defendant's request for mitigation stemming from the
fact that all five of her previous drug-related convictions had occurred in a
two-year period);  U.S.S.G. Ch. 3, pt. D (multiple counts), intro. comment.
(guidelines for robbery "are oriented more toward single episodes of criminal
behavior" rather than infractions considered to be repetitive, such as theft,
fraud and drug offenses).  However, the district court did not consider the
short period of time between defendant's two previous robbery convictions in
isolation.  Rather, the court viewed the short time span in the context of
defendant's age and the state court's treatment of the two convictions.  Because
the relationship of the factors the court considered in determining the

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

941 F.2d 1019
**(Cite as: 941 F.2d 1019, \*1025)**

appropriate criminal history for defendant was carefully considered and
explained by the district court, we conclude that use of this factor as part of
the composite rationale for downward departure in defendant's criminal history
was not error.
  Third, the district court noted that defendant had a history of two convictions
but had been sentenced to concurrent sentences for these convictions.    The
guidelines are not clear how this circumstance should be considered.    U.S.S.G. §
4A1.2(a)(2), applic. n. 3, advises that cases consolidated for sentencing can
result in an under-representation of a defendant's criminal history.    It
concludes with the statement:    "In such circumstances the court should consider
whether departure is warranted.    See § 4A1.3."    This application note does not
specifically address the question of whether separate convictions with
concurrent sentences imposed because of proximity in time between the crimes
could misrepresent the seriousness of the defendant's criminal history.    We can
find assistance, however, in the guidelines' own cited policy statement on the
adequacy of criminal history category, § 4A1.3, which implies that the
Commission was aware that consolidated sentencing, here extrapolated into
concurrent sentences by different state courts, is generally appropriate for
judicial adjustment to fit individual circumstances.
  We conclude that this unique combination of factors in defendant's criminal
history was not considered sufficiently by the Sentencing Commission to justify
rigid application of the career offender criminal history categorization.    See
Williams, 891 F.2d at 964 (" 'there must be something "special" about a given
offender, or the accoutrements of the crime committed, which distinguishes the
case from the mine-run for that offense.' ") (citation omitted).    We hold that
the district court did not err in considering these three factors in combination
to determine whether downward departure was appropriate.    In reaching this
conclusion, we emphasize that it is all three factors in conjunction which
justify the trial court's judgment.    We cannot parse the factors, holding each
one separately for consideration, without unfairly abusing the trial court's
judgment.
  Continuing to the second prong of the Maldonado-Campos analysis, there is no
dispute about the accuracy of the district court's specific and individualized
factual determinations supporting departure.    The government concedes that
defendant's criminal history was composed solely of two incidents, less than two
months apart, which defendant perpetrated at twenty years of age and for which
he was sentenced to concurrent state prison terms. Brief of [cross-]appellant at
9.    The district court explicitly concluded that by departing downward to the
original offense level and criminal history category, computed prior to
defendant's classification as a career offender, the sentence of ninety-six
months would "more accurately reflect the defendant's true criminal history and
achieve the sentencing objectives of punishment, general deterrence and
incapacitation."    R.Vol. **\*1026** IV at 10. [FN7]    The district court's factual
determination was not clearly erroneous.

    FN7. The district court did not discuss the possibility or probability of
    recidivism as required by Maldonado-Campos, 920 F.2d at 720.    However,
    because Maldonado-Campos was decided after the district court sentenced

941 F.2d 1019
**(Cite as: 941 F.2d 1019, \*1026)**

defendant, the district court's lack of explicit consideration of this
factor is not fatal to its determination that departure was appropriate.

[12] Finally, under Maldonado-Campos we must determine whether the degree of
downward departure was reasonable.  The government argues that the sentence
imposed on defendant was unreasonable under the defendant's individual history,
citing 18 U.S.C. § 3742(e)(3).  [FN8]   This circuit has consistently supported a
deferential standard of review of district court decisions about degree of
departure.  For example, "in determining the reasonableness of the degree of
departure ... we should afford the trial judge due deference and not 'lightly
overturn determinations of the appropriate degree of departure.' " United States
v. Russell, 905 F.2d 1450, 1456 (10th Cir.), cert. denied, 498 U.S. 904, 111
S.Ct. 267, 112 L.Ed.2d 224 (1990) (quoting White, 893 F.2d at 279);  see also
United States v. Banashefski, 928 F.2d 349, 350 (10th Cir.1991) (review
application of the sentencing guidelines to facts under "due deference"
standard);   United States v. Jackson, 921 F.2d 985, 991 (10th Cir.1990) ("A
district court has considerable discretion in appraising a defendant's criminal
history.");   United States v. Johnson, 911 F.2d 403, 406 (10th Cir.1990), cert.
denied, 498 U.S. 1103, 111 S.Ct. 1004, 112 L.Ed.2d 1087 (1991) (due deference
given to district court application of guidelines to the facts).

> FN8. The government arrived at this conclusion solely through the numerical
> evaluation that since defendant had spent four years of his adult life out
> of prison and had been convicted on six counts of felony charges, he had
> committed an average of 1.5 felonies per non-incarcerated year of his adult
> life, rendering defendant's placement in the career offender category
> reasonable and removal from that category unreasonable. Logically, this
> reasoning ignores the four years defendant spent in state prison, where he
> conceivably could have committed and been convicted of other felonies.
> More fundamentally, the proposition that there is some numerical average of
> felonies over time which make career offender status irrevocable belies the
> clear directive of the Sentencing Commission itself, which recognized that
> in the end, the sentencing judge is in the best position to weigh the
> individual situation and history of each convicted criminal to determine
> whether departure from the guidelines is appropriate.  U.S.S.G. § 4A1.3
> (policy statement).

The sentencing guidelines specify that, "[i]n considering a departure under
[U.S.S.G. § 4A1.3], the Commission intends that the court use, as a reference,
the guideline range for a defendant with a ... lower criminal history
category[.]"  U.S.S.G. § 4A1.3 (policy statement).  In the instant case, the
district court followed this directive.  The jump into the career offender
category was made in one step under U.S.S.G. § 4B1.1.  The district court
reversed that single step when it reasonably determined, based on factual
determinations that satisfy the guidelines and are not clearly erroneous, that
placing defendant in the career offender criminal history category significantly
over-represented the seriousness of his criminal history.  The district court
was in the best position to make a decision about the proper sentence for this

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

defendant.  The district court judge acted after studying the information
provided by the probation officer's presentence report, after viewing the
defendant in the courtroom, and after a two-day jury trial.  In addition, we
note that the district court did not depart below offense level 26 and criminal
history category IV, computed for defendant's crime and criminal history without
the career offender enhancement.  According the district court the deference due
it, we will not disturb this sentencing decision.
  The judgment of the United States District Court for the District of Kansas is
AFFIRMED.
CONCURRING/DISSENTING OPINION

  BALDOCK, Circuit Judge, concurring in part and dissenting in part.
  I concur in that part of the judgment affirming the defendant's conviction.  I
write separately, however, because I cannot agree with that part of the judgment
**\*1027** affirming the sentence with its downward departure from career offender
status.
  The presentence report indicates that defendant has two prior convictions for
crimes of violence.  Defendant was convicted in Montgomery County, Kansas of
conspiracy to commit armed robbery, aggravated robbery and kidnapping in
connection with the February 5, 1984, robbery of a convenience store. Defendant
also was convicted in Sedgwick County, Kansas of aggravated robbery in
connection with the April 1, 1984, robbery of another convenience store.
Defendant used a handgun in both robberies.  Finally, defendant was convicted of
distribution of crack cocaine, a controlled substance offense, in connection
with the sale of crack cocaine to undercover agents on January 10-11, 1990.
Defendant was paroled from his state sentences on January 19, 1989.  While on
parole, defendant became a mid-level distributor of crack cocaine.  II R. ¶¶ 13,
32;  III R. 85-88.  Defendant qualifies as a career offender under U.S.S.G. §
4B1.1 because he committed the instant controlled substance offense while at
least eighteen years of age and because he has two prior felony convictions
involving crimes of violence.
  U.S.S.G. § 4A1.3, p.s. (1990) allows a district court to depart downward when a
criminal history category overrepresents seriousness.  Departure is a
possibility when "the defendant's conduct is exaggerated by the criminal history
score."  United States v. Brown, 903 F.2d 540, 545 (8th Cir.1990) (emphasis
supplied).  In United States v. Maldonado-Campos, 920 F.2d 714, 719, 719 n. 2
(10th Cir.1990), we determined that a downward departure based upon § 4A1.3 is
tied to 18 U.S.C. § 3553(b), [FN1] which allows departure only in the presence
of "an aggravating or mitigating circumstance of a kind, or to a degree, not
adequately taken into consideration by the Sentencing Commission in formulating
the guidelines."  Given the Sentencing Commission's comprehensive treatment of
the factors involved in sentencing and the Congressional goals of uniformity and
proportionality in sentencing, we have determined that "departures should rarely
occur." United States v. Jackson, 921 F.2d 985, 989 (10th Cir.1990) (en banc).
Downward departures from career offender status based on overstated seriousness
of past criminal history should occur only in truly unusual cases.  United
States v. Adkins, 937 F.2d 947 (4th Cir.1991).  The district court departed
downward solely on the authority of § 4A1.3 because defendant's prior violent

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

941 F.2d 1019
**(Cite as: 941 F.2d 1019, \*1027)**

CONCURRING/DISSENTING OPINION
crimes occurred when he was twenty years old and within a two-month period.    IV
R. 9.    The district court also relied upon the fact that defendant received
concurrent sentences for these crimes.    None of these factors, alone or in
combination, justify departure because all were adequately considered in
formulating the Sentencing Guidelines.    This is not "an atypical case, one to
which a particular guideline [here § 4B1.1] linguistically applies but where
conduct significantly differs from the norm."    See U.S.S.G. ch. 1, pt. A intro.,
§ 4(b), p.s. (emphasis added).    See also United States v. Williams, 891 F.2d
962, 967 (1st Cir.1989) (truly unusual circumstances resulting in meaningful
atypicality needed for departure).    In deciding whether the Sentencing
Commission adequately considered the mitigating circumstances relied upon by the
district court in granting a downward departure under § 4A1.3, our review is de
novo.    Maldonado-Campos, 920 F.2d at 719-20.

    FN1. 18 U.S.C. 3553(b) provides in pertinent part:
    Application of guidelines in imposing sentence.--The court shall impose a
    sentence of the kind, and within the range, referred to in subsection
    (a)(4) unless the court finds that there exists an aggravating or
    mitigating circumstance of a kind, or to a degree, not adequately taken
    into consideration by the Sentencing Commission in formulating the
    guidelines that should result in a sentence different from that described.
    In determining whether a circumstance was adequately taken into
    consideration, the court shall consider only the sentencing guidelines,
    policy statements and official commentary of the Sentencing Commission.    In
    the absence of an applicable sentencing guideline, the court shall impose
    an appropriate sentence, having due regard for the purposes set forth in
    subsection (a)(2).
    ....

**\*1028** Merely because the defendant was twenty years old when he committed the
two separate armed robberies does not justify departure.    Age has been
considered in formulating the Guidelines.    See 28 U.S.C. § 994(d)(1) (Commission
instructed to consider relevance of age).    The Sentencing Commission has
provided a framework to evaluate offenses committed prior to age eighteen, see,
e.g., U.S.S.G. §§ 4A1.2(d) (criminal history computation), 4B1.1 (career
offender provision), but otherwise has counseled that "[a]ge is not ordinarily
relevant in determining whether a sentence should be outside the guidelines."
U.S.S.G. § 5H1.1, p.s. (emphasis supplied).    The only example given by the
Commission of when age might justify a downward departure involves post-offense
considerations:    "Age may be a reason to go below the guidelines when the
offender is elderly and infirm and where a[n alternate] form of punishment
(e.g., home confinement) might be equally efficient and less costly than
incarceration."    Id. (emphasis in original).    See also United States v. Doe, 921
F.2d 340, 347 (1st Cir.1990) (discussion of example);    United States v. Carey,
895 F.2d 318, 324 (7th Cir.1990) (same).    A district court may consider age in
the context of deciding where to sentence within the guideline range.    See
United States v. Mondello, 927 F.2d 1463, 1470 (9th Cir.1991); United States v.

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

941 F.2d 1019
**(Cite as: 941 F.2d 1019, \*1028)**

CONCURRING/DISSENTING OPINION
Lara-Velasquez, 919 F.2d 946, 955 n. 11 (5th Cir.1990); United States v. Garcia,
919 F.2d 1478, 1481 (10th Cir.1990).  But only extraordinary circumstances
warrant a departure based in whole or in part upon age.  See United States v.
Lopez, 938 F.2d 1293 (D.C.Cir.1991);  United States v. Shoupe, 929 F.2d 116, 120
(3rd Cir.1991);  Mondello, 927 F.2d at 1470;  United States v. Daiagi, 892 F.2d
31, 32 (4th Cir.1989).  See also United States v. Pena, 930 F.2d 1486, 1495
(10th Cir.1991) (under U.S.S.G. § 5H1.6 family ties and responsibilities were
relevant, given extraordinary circumstances including aberrational nature of
defendant's conduct).  Departures based in whole or in part upon age are
appropriate only when "substantial atypicality" distinguishes a particular case
from the typical case described by each guideline.  United States v. Norflett,
922 F.2d 50, 54 (1st Cir.1990).  Merely because the defendant was twenty when he
committed two armed robberies is not extraordinary;  violent crime among the
young is all too common.  See Shoupe, 929 F.2d at 120;  United States v.
Summers, 893 F.2d 63, 69 (4th Cir.1990) (nothing extraordinary about being a
twenty-three- year-old adult;  departure based upon age was unreasonable).
Likewise, downward departure due to defendant's age is inconsistent with
deterrence and protection of the public, see 18 U.S.C. § 3553(a)(2)(A)-(C), and
the Sentencing Commission's view of the relevance of criminal history.
 According to the Commission: A defendant's past criminal history is directly
relevant to [the] purposes [of sentencing set forth in 18 U.S.C. § 3553(a)(2) ].
A defendant with a record of prior criminal behavior is more culpable than a
first offender and thus deserving of greater punishment.  General deterrence of
criminal conduct dictates that a clear message be sent to society that repeated
criminal behavior will aggravate the need for punishment with each recurrence.
To protect the public from further crimes of the particular defendant, the
likelihood of recidivism and future criminal behavior must be considered.
 U.S.S.G. ch. 4, pt. A, intro. comment. (emphasis supplied).  In this case, the
district court failed to consider recidivism in its downward departure decision
pursuant to § 4A1.3.  This court excuses the omission because it predated our
decision in Maldonado-Campos, 920 F.2d at 720; however, the requirement that
recidivism be considered in a downward departure is a statutory directive, 18
U.S.C. § 3553(b), 3553(a)(2)(C), and is discussed in the guidelines, U.S.S.G.
ch. 4, pt. A, intro. comment.; § 4A1.3 p.s. & comment. (backg'd) (noting that
criminal history score for younger defendants may be inadequate given previous
lenient treatment and such defendants "may pose a greater risk of serious
recidivism").  See also United States v. Lawrence, 916 F.2d 553, 554 (9th
Cir.1990) (district **\*1029** court considered recidivism in departing downward from
career offender provision).  Consideration of recidivism seems especially
appropriate in this case given that defendant's second armed robbery was
committed within two months of his first and the instant drug offenses were
committed within one year of defendant's release on parole.  This case does not
involve a sustained break in criminal activity other than when defendant was
incarcerated.  See Shoupe, 929 F.2d at 122 (Rosenn, J., dissenting) (considering
a ten year break in criminal activity as a factor warranting downward departure
from career offender provision).
 Departure is not justified on the basis that defendant's prior armed robberies

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

941 F.2d 1019
**(Cite as: 941 F.2d 1019, \*1029)**

CONCURRING/DISSENTING OPINION
occurred within two months of one another.  Nor is it justified on the basis
that the Montgomery County, Kansas court decided that defendant's sentence
should run concurrently with the earlier imposed Sedgwick County, Kansas
sentence.   The Commission has implemented the Congressional directive that
career offenders be sentenced "to a term of imprisonment at or near the maximum
term authorized."  18 U.S.C. § 994(h).   The guidelines provide ample authority
on how to handle defendant's previous two convictions, contrary to this court's
statements that the guidelines do not specifically address these issues.   See
Ct.Op. at 1024-25.
 The career offender provision provides that whether felony convictions are
merged or counted separately is determined with respect to U.S.S.G. ch. 4 pt. A.
See U.S.S.G. § 4B1.2(3) & comment. (n. 4).   Separate counting is appropriate
when the cases are unrelated.  U.S.S.G. § 4A1.2(a)(2).   Cases are merged only if
they "(1) occurred on a single occasion, (2) were part of a common scheme or
plan, or (3) were consolidated for trial or sentencing." U.S.S.G. § 4A1.2,
comment. (n. 3).    This methodology precludes merger of the defendant's criminal
convictions for armed robberies which occurred within two months of one another.
It also precludes merger of the defendant's criminal convictions merely because
one state district court decided that defendant's sentence should run
concurrently with that imposed by another state district court.   In no way were
the defendant's armed robbery convictions "consolidated for trial or
sentencing," U.S.S.G. § 4A1.2, comment. (n. 3);  thus, the court's reliance on
this provision concerning misrepresentation of seriousness is anomalous [FN2]
and misplaced.   The explicit recognition of a rule determining whether offenses
should be merged represents implicit rejection of a rule which would allow
merger based on a short time span between different offenses or based upon the
interaction of different sentences imposed by different courts.  See Shoupe, 929
F.2d at 120 (rejecting departure from career offender status because armed
robbery and subsequent burglary were merely nine months apart).  As noted by the
Fifth Circuit, "career offender status was meant to apply not only to those
defendants with long criminal histories but also to those who repeatedly commit
drug-related or violent crimes, irrespective of the time-frame."  United States
v. Harrison, 918 F.2d 30, 31 (5th Cir.1990) (rejecting departure from career
offender status because five controlled substance violations occurred within two
years).

    FN2. Plainly, this case does not involve consolidated sentencing. Defendant
    was sentenced by different courts on different dates for different
    offenses.  Even if it did, however, the court's observation that
    "consolidated sentencing ... is generally appropriate for judicial
    adjustment to fit individual circumstances," Ct.Op. at 1025, would be of
    little benefit to the defendant, for the guidelines make it clear that such
    consolidated sentencing may well "result in a criminal history score that
    underrepresents the seriousness of defendant's criminal history and the
    danger that he presents to the public."  U.S.S.G. § 4A1.2, comment. (n. 3).
    In such cases, the district court is advised to consider upward, not
    downward, departure pursuant to § 4A1.3.  Id.

                    Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

941 F.2d 1019
**(Cite as: 941 F.2d 1019, \*1029)**

CONCURRING/DISSENTING OPINION
I cannot agree with this court's conclusion that the "unique combination of
factors in defendant's criminal history was not considered sufficiently by the
Sentencing Commission to justify rigid application of the career offender
criminal history categorization." Ct.Op. at 1025.    The court recognizes that,
taken alone, each of the factors would be an improper ground for **\*1030**
departure.    None warrants departure because all were "adequately taken into
consideration by the Sentencing Commission in formulating the guidelines."   See
18 U.S.C. § 3553(b).    Given that none of the factors warrants departure, the
"three factors in combination," Ct.Op. at 1025, likewise do not, and a downward
departure for an overrepresentation of seriousness is inappropriate. [FN3]   See
18 U.S.C. § 3553(b).

> FN3. In United States v. Smith, 909 F.2d 1164, 1169-70 (8th Cir.1990),
> cert. denied, 498 U.S. 1032, 111 S.Ct. 691, 112 L.Ed.2d 682 (1991),
> defendant was convicted in connection with his cocaine distribution
> activities.    Id. at 1165.    The Eighth Circuit determined that the district
> court correctly departed downward from the career offender provision
> because the defendant's previous criminal career "was neither extensive nor
> long."    Id. at 1169.    The prior convictions involved burglary resulting in
> a loss of $1,000 and sales of LSD for $400 to an undercover agent.    The
> offenses occurred within two-month period while defendant was nineteen and
> he received probation.    Id.    Whatever the merits of the Eighth Circuit's
> resolution, our case is distinguishable.    It is difficult to classify
> defendant's repeated armed robberies of convenience stores (one of which
> involved kidnapping), with the attendant danger to human life, as
> "relatively minor" insofar as a criminal career is concerned.    But see
> United States v. Senior, 935 F.2d 149, 150-51 (8th Cir.1991) (affirming
> downward departure from career offender status based upon overstated
> seriousness of past criminal history which included three robberies and two
> controlled substance offenses).

The idea that "[w]e cannot parse the factors, holding each one separately for
consideration, without unfairly abusing the trial court's judgment," Ct.Op. at
1025, is not only inconsistent with this court's analysis (which ultimately
finds each factor wanting, thus necessitating combination), but also with the
numerous cases which have cast aside factors which do not permit departure. See,
e.g., Shoupe, 929 F.2d at 119-20 (each factor independently analyzed; departure
unwarranted because all factors adequately considered);   United States v.
Studley, 907 F.2d 254, 257-58, 260 (1st Cir.1990) (each factor relied upon by
district court must be examined for atypicality;   each factor adequately
considered and departure unwarranted);   Williams, 891 F.2d at 966 ("Draining the
impermissible ingredients from the stew leaves precious little in the departure
pot.");   United States v. Aguilar-Pena, 887 F.2d 347, 351 (1st Cir.1989) (each
factor examined for atypicality;   each factor adequately considered and
departure unwarranted);   United States v. Nuno- Para, 877 F.2d 1409, 1414 (9th
Cir.1989) (each of two factors examined;   each factor adequately considered).
If every factor relied upon by the district court was adequately considered by

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

941 F.2d 1019
**(Cite as: 941 F.2d 1019, \*1030)**

CONCURRING/DISSENTING OPINION
the Sentencing Commission, the factors in combination cannot change that fact.
We have cautioned that " '[a] court should not mold typical criminal conduct or
defendant characteristics into atypicality merely to achieve a departure from
the guidelines,' " because such an approach threatens uniformity.    Maldonado-
Campos, 920 F.2d at 720 n. 3 (quoting Studley, 907 F.2d at 257).    Today's
opinion is an invitation to circumvent the guidelines by combining factors
adequately considered by the guidelines, claiming that the combination of
factors is unique, and then departing.    As stated by the First Circuit:
  Regardless of how well founded, a belief by the sentencing judge that the
  punishment set by the Commission is too severe or that the guidelines are too
  inflexible may not be judicial grounds for departure under the sentencing
  system mandated by Congress.    The crux of the matter is whether the guidelines
  have taken the principal sentencing factors into account.    When they have, the
  sentencing court is not then at liberty to depart, regardless of whether the
  judge's independent consideration of those factors reasonably differs from the
  Commission's.
  Studley, 907 F.2d at 260.
  For the above reasons, I respectfully dissent.
END OF DOCUMENT

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Citation                    Found Document              Rank 1 of 1              Database
916 F.2d 553                                                                     CTA
**(Cite as: 916 F.2d 553)**
₽

UNITED STATES of America, Plaintiff-Appellant,
v.
Melvin Raymond LAWRENCE, Defendant-Appellee.
No. 89-30284.
United States Court of Appeals,
Ninth Circuit.
Argued and Submitted Sept. 11, 1990.
Decided Oct. 10, 1990.

Defendant was convicted in the United States District Court, Eastern District
of Washington, Robert J. McNichols, J., on guilty plea to possession of over 100
marijuana plants with intent to distribute, and defendant was sentenced to 30
months imprisonment and three years supervised release.  Government appealed,
challenging sentence.   The Court of Appeals, William A. Norris, Circuit Judge,
held that:   (1) sentencing court may make downward departure from sentencing
guidelines even when sentencing defendant as career offender, if defendant's
criminal history category significantly overrepresents seriousness of his
history or likelihood that he will commit further crime, and (2) resentencing
was required insofar as district court may have relied on opinion which had been
withdrawn and replaced.
Sentence vacated;   remanded for resentencing.

[1] CRIMINAL LAW ☞1203.32
110k1203.32
Sentencing court may make downward departure from sentencing guidelines even
when sentencing defendant as career offender, if defendant's criminal history
category significantly overrepresents seriousness of his history or likelihood
that he will commit further crime;   career offender provision of guidelines need
not be read in isolation from other policy statements or commentary in
guidelines.  U.S.S.G. § 1B1.1, 4A1.3, p.s., 4B1.1, 18 U.S.C.A.App.;  28 U.S.C.A.
§ 994(h).

[2] CRIMINAL LAW ☞986.2(1)
110k986.2(1)
Contrary to Government's contention that sentencing court erred in failing to
consider evidence of over 4,000 marijuana plants in drug defendant's house,
presentence report which included that fact established that it was before
sentencing court.
**\*553** Stephanie J. Johnson, Asst. U.S. Atty., Spokane, Wash., for plaintiff-
appellant.
Kari J. Grytdal, Rascoff & Associates, Spokane, Wash., for defendant-appellee.
Appeal from the United States District Court for the Eastern District of
Washington.

Before WRIGHT, SCHROEDER and NORRIS, Circuit Judges.

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

916 F.2d 553
**(Cite as: 916 F.2d 553, \*553)**

WILLIAM A. NORRIS, Circuit Judge:
 Appellee, at the age of 52, pled guilty to possession of over 100 marijuana
plants with intent to distribute.  The plants were found in his car. According
to the presentence report, he also had over 4,000 marijuana plants at his home.
 Appellee has two prior state convictions:  In 1980, he pled guilty to one count
of possession of a controlled substance with intent to deliver, and to one count
of possession of a controlled substance.  He received five years probation.
[FN1]   In 1982, he pled guilty to two counts of possession of marijuana with
intent to manufacture or **\*554** deliver, and received six months in county jail
and five years probation. [FN2]

   FN1. Appellee contends that this conviction was for possession only,
   without any intent to distribute.  However, the first paragraph of the
   certified copy of the judgment reads that he was charged with:  "Possession
   of a Cont. Sub. With Intent to Mfg. or Deliver, Count I and III, Possession
   of a Cont. Sub., Count II."  The judgment then records that appellee pled
   to "Possession of a Controlled Substance Count I and Count II as charged in
   the Amended Information."  The description of the plea was typewritten in a
   small space in a printed document.  Therefore, the recitation of the
   elements of the crime was abbreviated in the plea description, since the
   fuller description of Count I, recited in the first paragraph of the
   judgment, reflects that Count I charged Possession of a Controlled
   Substance with Intent to Manufacture or Deliver.  Appendix A of Appellant's
   Reply Brief.

   FN2. The district court refers to this offense in its order as possession
   of marijuana and possession of LSD.  Excerpts of Record ("E.R.") 40 at 2.
   However, the certified copies of the judgment and sentence for this offense
   make clear that the count for LSD possession was dismissed, and appellee
   pled guilty to two counts of possession of marijuana with intent to
   manufacture or deliver.  Appendix B of Appellant's Reply Brief.
   Thus, we need not decide whether a simple possession offense qualifies as a
   controlled substance offense for purposes of the career criminal
   enhancement, because appellee was clearly convicted of offenses involving
   delivery or manufacture.

 The government sought to have appellee sentenced as a career offender under
U.S.S.G. § 4B1.1 to a term of 12.6 to 15.6 years.  The district judge departed
downward from the guidelines, based in part on testimony from a psychiatrist
that the likelihood of recidivism was low, and that the appellee was not violent
or antisocial.  Appellee received a sentence of 30 months imprisonment and three
years supervised release.  This would be the sentence for an offense level
involving 100 marijuana plants and a criminal history level calculated without
using the career offender enhancement.
 The government appeals.

I

 A district court's interpretation of the sentencing guidelines is reviewed de
novo.  United States v. Restrepo, 903 F.2d 648, 651 (9th Cir.1990), reh'g

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

916 F.2d 553
**(Cite as: 916 F.2d 553, \*554)**

granted en banc, Order 912 F.2d 1568 Sept. 5, 1990.

II

[1] In applying the guidelines, the district judge followed the procedure
outlined in U.S.S.G. § 1B1.1, first determining the offense level and criminal
history category, and finally looking to "any other policy statements or
commentary in the guidelines that might warrant consideration in imposing
sentence." Id. at § 1B1.1(i). Although the district court determined that
appellee was a career criminal under the terms of § 4B1.1, the court departed
downward from the guideline sentence. The court relied on language in a policy
statement in a different section of the guidelines, which allows for such
departures when the "defendant's criminal history category significantly over-
represents the seriousness of a defendant's criminal history or the likelihood
that the defendant will commit further crimes." E.R. 40 at 2-3, (quoting
U.S.S.G. § 4A1.3, policy statement). We agree that the district court was
entitled to rely on "any ... policy statement[ ] or commentary in the guidelines
that might warrant consideration in imposing sentence." U.S.S.G. § 1B1.1.
The government, however, argues that the career offender provisions of
U.S.S.G. § 4B1.1 must be applied rigidly, without regard to the provisions of
other sections of the guidelines. The government gives two reasons for treating
this section differently. First, the government argues that the career offender
section must be read in light of 28 U.S.C. § 994(h), which states that:
[t]he Commission shall assure that the guidelines specify a sentence to a term
of imprisonment at or near the maximum term authorized for categories of
defendants in which the defendant is eighteen years old or older and ... has
been previously convicted of two or more prior felonies, each of which is (A)
a crime of violence; or (B) an offense described in [various federal drug
offenses]. (Emphasis added.)
This direction to the Sentencing Commission was the basis for the career
offender provisions of U.S.S.G. § 4B1.1. [FN3] Because Congress's language is
mandatory, the government argues that the district court did not have authority
to depart downward from the career offender provisions on the basis of the
Commission's policy statement in another section of the guidelines.

FN3. The Sentencing Commission's background notes for U.S.S.G. § 4B1.1
state:
28 U.S.C. § 994(h) mandates that the Commission assure that certain
"career" offenders, as defined in the statute, receive a sentence of
imprisonment "at or near the maximum term authorized." Section 4B1.1
implements this mandate.

\*555 The government's reading takes this portion of 28 U.S.C. § 994 out of
context. The statute as a whole gives many directions to the Commission to
follow in formulating the guidelines, including 28 U.S.C. § 994(t) that "[t]he
Commission ... shall describe what should be considered extraordinary and
compelling reasons for sentence reduction" (emphasis added). The language in
all the sections of this statute is mandatory, but is directed to the Commission
in formulating the guidelines, not to the courts. By allowing the guidelines to
take effect, Congress has sanctioned the approach of the Commission, which, as

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

916 F.2d 553
**(Cite as: 916 F.2d 553, \*555)**

expressed by the Commission's "Application Instructions" of § 1B1.1, requires
that the guidelines be read as a whole.  The text of 28 U.S.C. § 994 therefore
gives no reason for reading § 4B1.1 (career offender) in isolation from § 4A1.3,
nor does its legislative history. [FN4]

> FN4. The "career criminal" portion of the the statute was sponsored by
> Senator Kennedy, whose comments are recorded in 128 Cong.Rec. 26,517-18
> (1982):
> It is well documented that a relatively small number of repeat offenders
> are responsible for the bulk of the violent crime on our streets.... Career
> criminals must be put on notice that their chronic violence will be
> punished by maximum prison sentences for their offenses, without parole.
> Id. at 26518.  These comments do not address the issue here, and cut both
> ways.  Although they express Congress's concern that recidivists receive
> maximum sentences, they also point out that violent crime is the primary
> concern.  These comments may therefore support the district court's
> conclusion that appellee's dangerousness was not like that of most "career
> criminals."

 The government's second argument for its interpretation of § 4B1.1 relies upon
language in United States v. Sanchez-Lopez, 879 F.2d 541 (9th Cir.1989), which
held that the guideline career criminal enhancement was not an impermissible
double enhancement, even though the statutory maximum term had already been
enhanced by the same prior convictions.  Our court remarked:   "If the district
court had not applied the career offender provision, Congress' intent for
repeated drug offenders to have near the maximum sentence would have been
thwarted."  Id. at 559.  Sanchez-Lopez, however, does not address the question
whether a sentencing judge may downwardly depart when the career offender
category over-represents a defendant's criminal history under § 4A1.3.
 The Eighth Circuit has rejected the argument that no downward departures from
the career criminal category are permissible, reasoning that "the overall policy
provisions of the guidelines make clear that the Sentencing Commission did not
intend to so completely restrict sentencing judges in this area." United States
v. Brown, 903 F.2d 540, 545 (8th Cir.1990).  See also, United States v. Garrett,
712 F.Supp. 1327, 1334-35 (N.D.Ill.1989) (departing downwards from career
criminal provision), aff'd on other grounds, 903 F.2d 1105 (7th Cir.1990);
United States v. Nichols, 740 F.Supp. 1332 (N.D.Ill.1990) (same, rejecting
argument that § 4A1.3 does not apply to § 4B1.1);  but see United States v.
Saunders, 743 F.Supp. 444 (E.D.Va.1990) (mandatory language of § 4B1.1 "coupled
with the absence of any reference to § 4A1.3 or departures strongly suggests
that the Sentencing Commission intended no criminal history downward departures
for career offenders").
 Therefore, we affirm the district court's downward departure from the
guidelines. [FN5]

> FN5. The government does not challenge on appeal the departure as applied
> in this case.

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

916 F.2d 553
**(Cite as: 916 F.2d 553, \*555)**

III

 [2] The government also argues that the district court erred in failing to
consider the evidence of the over 4,000 plants in appellee's house.  Appellee
contends that the government failed to argue this fact at sentencing.  However,
the facts were before the district court, as they were included in the
Presentence Report.
 We agree with the government that this case must be remanded for resentencing,
insofar as the district court may have relied on United States v. Restrepo, 883
F.2d 781 (9th Cir.1989), which held that evidence of uncharged criminal conduct,
or evidence of criminal conduct in dismissed counts, **\*556** could not be included
in determining a defendant's offense level.   That opinion has been withdrawn and
replaced by United States v. Restrepo, 903 F.2d 648 (9th Cir.1990), reh'g
granted en banc, Order, Sept. 5, 1990, which holds that evidence of other
criminal conduct may be considered in determining the offense level, if it is
part of the same course of conduct as the offense of conviction.
 The sentence is VACATED and the case REMANDED for resentencing.
END OF DOCUMENT

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Citation                    Found Document              Rank 1 of 1              Database
122 F.3d 1297                                                                    CTA
97 CJ C.A.R. 1502
**(Cite as: 122 F.3d 1297)**
ₚ

                    UNITED STATES of America, Plaintiff-Appellant,
                                        v.
                        James COLLINS, Defendant-Appellee.
                                 No. 96-5039.
                        United States Court of Appeals,
                                Tenth Circuit.
                                Aug. 5, 1997.

 Defendant pleaded guilty in the United States District Court for the Northern
District of Oklahoma, Terry C. Kern, J., to knowingly and intentionally
distributing cocaine, and government appealed downward sentencing departure. The
Court of Appeals, Tacha, Circuit Judge, held that: (1) appellate courts must
review departures from sentencing guidelines under unitary abuse of discretion
standard; (2) defendant's age, defendant's infirmity, and circumstances
surrounding one predicate conviction were permissible factors on which to base
departure from career offender status on grounds that defendant's criminal
history category did not adequately reflect likelihood of future criminal acts;
(3) such factors warranted downward departure; and (4) degree of departure was
reasonable.
 Affirmed.

[1] CRIMINAL LAW ⚖1263
110k1263
In deciding whether facts of particular case warrant departure under sentencing
guidelines, sentencing courts must look to all factors that potentially make
case atypical.  U.S.S.G. § 5K2.0, p.s., 18 U.S.C.A.

[2] CRIMINAL LAW ⚖1147
110k1147
Appellate courts must review departures from sentencing guidelines under unitary
abuse of discretion standard which includes review to determine that discretion
of district court was not guided by erroneous legal conclusions. U.S.S.G. §
1B1.1 et seq., 18 U.S.C.A.

[3] CRIMINAL LAW ⚖1134(3)
110k1134(3)
Although district court's decision to depart from sentencing guidelines usually
involves essentially factual inquiry, in some cases determination that defendant
falls outside applicable guideline heartland will not be based primarily on
court's judgment about facts of case, but will involve court's determination as
to what constitutes guideline's heartland, and in this situation, appellate
review would not be deferential because question of what constitutes guideline's
heartland is essentially legal in nature. U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

[4] CRIMINAL LAW ⚖1134(3)

                Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

122 F.3d 1297
**(Cite as: 122 F.3d 1297)**

110k1134(3)
In determining whether district court abused its discretion in departing from
sentencing guidelines, appellate courts must evaluate whether factual
circumstances supporting departure are permissible departure factors, whether
departure factors relied upon by district court remove defendant from applicable
guideline heartland thus warranting departure, whether record sufficiently
supports factual basis underlying departure, and whether degree of departure is
reasonable.   U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

[4] CRIMINAL LAW ⟐1158(1)
110k1158(1)
In determining whether district court abused its discretion in departing from
sentencing guidelines, appellate courts must evaluate whether factual
circumstances supporting departure are permissible departure factors, whether
departure factors relied upon by district court remove defendant from applicable
guideline heartland thus warranting departure, whether record sufficiently
supports factual basis underlying departure, and whether degree of departure is
reasonable.   U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

[5] CRIMINAL LAW ⟐1177
110k1177
If appellate court determines that district court based departure on both valid
and invalid factors, appellate court should remand case unless it determines
district court would have imposed same sentence absent reliance on invalid
factors.   U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

[5] CRIMINAL LAW ⟐1181.5(8)
110k1181.5(8)
If appellate court determines that district court based departure on both valid
and invalid factors, appellate court should remand case unless it determines
district court would have imposed same sentence absent reliance on invalid
factors.   U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

[6] CRIMINAL LAW ⟐1245(1)
110k1245(1)
District court may depart from applicable criminal history category when
defendant's criminal past or likely criminal future removes defendant from
heartland of that criminal history category.   U.S.S.G. § 4A1.3, p.s., 18
U.S.C.A.

[6] CRIMINAL LAW ⟐1246
110k1246
District court may depart from applicable criminal history category when
defendant's criminal past or likely criminal future removes defendant from
heartland of that criminal history category.   U.S.S.G. § 4A1.3, p.s., 18
U.S.C.A.

[7] CRIMINAL LAW ⟐1203.32

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

122 F.3d 1297
**(Cite as: 122 F.3d 1297)**

110k1203.32
For defendant who technically qualifies as career offender but whose criminal history and likelihood of recidivism significantly differ from heartland of career offenders, sentencing court may consider departure from career offender category.  U.S.S.G. § 4A1.3, p.s., 18 U.S.C.A.

[8] CRIMINAL LAW ☜1203.26(1)
110k1203.26(1)
In reviewing departure based on finding that defendant's criminal history category does not adequately reflect his past conduct or likelihood of future crimes, appellate court must address whether district court has relied on permissible departure factor and whether factual circumstances identified by district court remove defendant from career offender heartland, and court should then ensure that record adequately supports factual basis for departure and that degree of departure is reasonable.  U.S.S.G. § 4A1.3, p.s., 18 U.S.C.A.

[9] CRIMINAL LAW ☜1203.26(1)
110k1203.26(1)
Despite technically legal nature of determining whether factual circumstances remove defendant from career offender heartland, appellate courts should not ignore district court's special competence about ordinariness or unusualness of particular case; thus, district court's resolution of this inquiry should not be disturbed unless court abused its discretion by making clear error of judgment or exceeding bounds of permissible choice in the circumstances. U.S.S.G. § 4A1.3, p.s., 18 U.S.C.A.

[10] CRIMINAL LAW ☜1245(1)
110k1245(1)
District court may rely on offender characteristics, such as age and infirmity, to support criminal history category departure on grounds that criminal history category does not adequately reflect seriousness of past conduct or likelihood of future criminal acts, where those characteristics bear upon defendant's criminal history or likelihood for recidivism, although those characteristics may be considered only in combination with other circumstances of defendant's criminal history.  U.S.S.G. §§ 4A1.3, p.s., 5K2.0, p.s., 18 U.S.C.A.

[11] CRIMINAL LAW ☜1245(1)
110k1245(1)
Circumstances making up defendant's criminal history cannot be used as basis for offense-level departure and circumstances surrounding instant offense cannot be used as basis for criminal history category departure under sentencing guidelines.   U.S.S.G. § 4A1.3, p.s., 18 U.S.C.A.

[11] CRIMINAL LAW ☜1287(11)
110k1287(11)
Circumstances making up defendant's criminal history cannot be used as basis for offense-level departure and circumstances surrounding instant offense cannot be used as basis for criminal history category departure under sentencing

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

122 F.3d 1297
**(Cite as: 122 F.3d 1297)**

guidelines.    U.S.S.G. § 4A1.3, p.s., 18 U.S.C.A.

[12] CRIMINAL LAW ☜1203.32
110k1203.32
Defendant's age, defendant's infirmity, and circumstances surrounding one
predicate conviction were permissible factors on which to base departure from
career offender status under sentencing guidelines on grounds that defendant's
criminal history category did not adequately reflect likelihood of future
criminal acts; although age and infirmity were disfavored as factors supporting
departure, they were present to exceptional degree, and cited predicate
conviction occurred close to ten years prior to instant offense, involved
conduct committed beyond ten-year time limit, and resulted in relatively lenient
sentence.    U.S.S.G. § 4A1.3, p.s., 18 U.S.C.A.

[13] CRIMINAL LAW ☜1203.32
110k1203.32
District court did not abuse its discretion in departing downward from
defendant's career offender status on basis that defendant's age, infirmity, and
circumstances surrounding one predicate conviction removed defendant from
heartland of career offender guideline.    U.S.S.G. § 4A1.3, p.s., 18 U.S.C.A.

[14] CRIMINAL LAW ☜1134(3)
110k1134(3)
In determining whether degree of departure from designated criminal history
category was reasonable, Court of Appeals considers district court's reasons for
imposing particular sentence together with factors such as seriousness of
offense, need for just punishment, deterrence, protection of public,
correctional treatment, sentencing pattern of guidelines, policy statements
contained in guidelines, and need to avoid unwarranted sentencing disparities.
U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

[15] CRIMINAL LAW ☜1260
110k1260
District court may use any reasonable methodology hitched to sentencing
guidelines to justify reasonableness of sentencing departure, which includes
using extrapolation from or analogy to guidelines.

[16] CRIMINAL LAW ☜1203.32
110k1203.32
*Degree of departure on grounds that defendant's criminal history category did
not adequately reflect likelihood of future crimes was reasonable where district
court sentenced defendant, who was technically career offender, as if career
offender guideline was inapplicable.*    U.S.S.G. § 4A1.3, p.s., 18 U.S.C.A.
 **\*1299** Daniel Goodman, U.S. Department of Justice, Washington, DC (Stephen C.
Lewis, U.S. Attorney and Allen J. Litchfield, Assistant U.S. Attorney, Northern
District of Oklahoma, Tulsa, OK, with him on the briefs), for Plaintiff-
Appellant.
 Jeffrey D. Fischer (Lewis S. Fine with him on the brief), Tulsa, OK, for

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

122 F.3d 1297
**(Cite as: 122 F.3d 1297, \*1299)**

Defendant-Appellee.

Before SEYMOUR, ANDERSON, and TACHA, Circuit Judges.

TACHA, Circuit Judge.
Defendant James Collins pleaded guilty to one count of knowingly and intentionally distributing cocaine in violation of 21 U.S.C. § 841(a)(1) and was sentenced to 42 months imprisonment. On appeal, the government challenges the district court's downward departure from the career offender guideline range. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We affirm.

BACKGROUND

On September 19, 1995, at age 64, James Collins pleaded guilty to one count of knowingly and intentionally distributing 279.7 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). The Presentence Investigation Report (PSR) concluded that Collins's base offense level was 20, U.S.S.G. § 2D1.1(c)(10) (at least 200 but less than 300 grams of cocaine), and recommended a three-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1. The PSR calculated that Collins had a criminal history category of IV. **\*1300** U.S.S.G. § 4A1.1. Under the Guidelines, an adjusted offense level of 17 and a criminal-history category of IV would have resulted in a range of 37- 46 months.
The PSR also concluded, however, that Collins qualified as a career offender under U.S.S.G. § 4B1.1. He was over 18; the instant offense was a controlled substance offense; and Collins had two prior felony convictions for controlled substance offenses. In 1984, at age 53, Collins was arrested in Okmulgee County, Oklahoma, for possession of marijuana with intent to distribute. In 1986, fifteen months later, he pleaded guilty to that offense and received a five-year sentence with the balance suspended after nine months served. In 1991, at age 59, he was arrested in Phoenix, Arizona, for conspiring to sell and transport cocaine. He pleaded guilty and received six months imprisonment and seven years probation. [FN1] As a career offender, Collins's adjusted offense level was 29 and his criminal-history category was VI, which resulted in a range of 151-188 months.

> FN1. In addition to his two prior convictions for controlled substance offenses, Collins pleaded guilty in 1964 to possession of an illegal still, pleaded guilty in 1976 to possession of marijuana, and pleaded nolo contendere in 1990 to assault and battery.

Prior to sentencing, Collins filed a motion for a downward departure on the basis that his career offender status "significantly over-represents the seriousness of [his] criminal history or the likelihood that the defendant will commit further crimes." U.S.S.G. § 4A1.3, p.s. Collins set forth three grounds supporting a downward departure: (1) his age, (2) his ill health, and (3) a predicate conviction close to ten years prior to the instant offense resulting in a relatively lenient sentence. The government opposed the departure, arguing that Collins's status as a career offender properly reflected the seriousness of his criminal history and that his age and health problems were not so

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

122 F.3d 1297
**(Cite as: 122 F.3d 1297, \*1300)**

extraordinary as to warrant a downward departure.
 At the sentencing hearing, the district court granted Collins's motion for
downward departure, explaining its reasoning as follows:
 The Court finds that Mr. Collins'[s] age in addition to his various
 infirmities including heart disease, high blood pressure, ulcers, arthritis,
 and prostatitis warrant a downward departure from the career offender
 category.  Further it's significant that the application of the career
 offender category effectively would change his sentence from a little more
 than three years ... to possibly life imprisonment....
 The departure is based on two prongs under [U.S.S.G. §§ ] 4A1.3 and 5H1.1. Due
 to defendant's age and infirmity the Court believes [a departure is] warranted
 because ... the categorization significantly over represents the likelihood
 that the defendant will commit future crimes.  And secondly, because the
 resulting increase likely from three years ... to over 12 and a half years ...
 will likely have an effect of a degree not adequately taken into consideration
 by the sentencing commission.
App't.App. at 71-72.  The court also noted that Collins's 1986 conviction was
almost ten years old, adding that if "there had been a timely preliminary
hearing and progress in the case, this matter may have resulted in a conviction
prior to February 3, 1985, and thus would not have constituted a predicate
offense under [U.S.S.G. § 4B1.1]." Id. at 72.  In addition, the court found that
Collins's previous narcotics convictions were "minor offenses" for which his
sentences were "relatively lenient." Id.
 In the Judgment entered on January 17, 1996, the district court clarified its
reasons for granting Collins a downward departure:
 The Court adopts the factual findings and guideline application in the
 presentence report, except:  The court finds that the defendant is not a
 career offender pursuant to U.S.S.G. § 4B1.1, as recommended in the
 presentence report....  The Court departs from the career offender category
 because it significantly over-represents the seriousness of defendant's
 criminal history and the likelihood that the defendant will commit further
 crimes. U.S.S.G. §§ 4A1.3, 5K2.0. This finding is based on the following
 factual findings:  the defendant is elderly and infirm, id.  § 5H1.1, and one
 of the predicate offenses for the career offender categorization occurred**\*1301**
 close to ten years prior to the instant offense, id.  § 4A1.3. [FN2]

   FN2. Although the district court stated that it "finds that the defendant
   is not a career offender," the parties agree that Collins qualified as a
   career offender under U.S.S.G. § 4B1.1. The district court correctly stated
   that it was departing downward from the otherwise applicable career
   offender category.

 App't App. at 18.  After departing from the career offender guideline range
(151-188 months), the court imposed a sentence within the range that would have
applied without the career offender enhancement (37-46 months).
 On appeal, the government contends that the district court erred in departing
downward from the career offender guideline because:  (1) all of the factors
upon which the district court relied were adequately taken into account by the

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

122 F.3d 1297
**(Cite as: 122 F.3d 1297, \*1301 )**

Sentencing Commission, (2) the record does not support the district court's
finding that Collins's career offender status overstates his criminal history
and the likelihood that he will engage in further criminal activity, and (3) the
departure of 109 months is unreasonable.

                              DISCUSSION

I. Departure Analysis After Koon
Because the Supreme Court's recent decision in Koon v. United States, --- U.S.
----, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), has altered our multi-step
approach in reviewing departures, we begin by setting forth the general
framework under which a district court may consider a departure and the role of
appellate courts in reviewing a decision to depart.  We then briefly discuss the
respective roles of the district and appellate courts in the particular context
of departures under U.S.S.G. § 4A1.3 from the career offender category.
Finally, we apply this post-Koon departure analysis to the case at hand.
A. Overview of Koon
1. The District Court's Decision to Depart
Under the Sentencing Guidelines, after a district court determines a
defendant's offense level, criminal history category, and the applicable
guideline range, the district court should consider whether a case is a
candidate for a departure.  U.S.S.G. § 1B1.1(i).  The Sentencing Guidelines
permit a sentencing court to depart from the Guidelines if "the court finds
'that there exists an aggravating or mitigating circumstance of a kind, or to a
degree, not adequately taken into consideration by the Sentencing Commission in
formulating the guidelines.' "  U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)).
In Koon, the Supreme Court noted that this language necessarily implies a
distinction between a "heartland case" and an "unusual case."  Koon, at ----, 116
S.Ct. at 2044.  The Court explained:
The Commission intends the sentencing courts to treat each guideline as
 carving out a "heartland," a set of typical cases embodying the conduct that
 each guideline describes.  When a court finds an atypical case, one to which a
 particular guideline linguistically applies but where conduct significantly
 differs from the norm, the court may consider whether a departure is
 warranted.
Id. (quoting U.S.S.G. ch. 1 pt. A, intro. comment. 4(b)).
[1] In deciding whether the facts of a particular case warrant a departure,
sentencing courts must look to all the factors that potentially make a case
atypical.  Except for a limited number of "forbidden" factors, [FN3] the
guidelines do not "limit the kinds of factors, whether or not mentioned anywhere
else in the guidelines, that could constitute grounds for departure in an
unusual case."  Id. (quoting U.S.S.G. ch. 1 pt. A, intro. comment. 4(b)).
"Sentencing courts are not left adrift, however," id. at ----, 116 S.Ct. at
2045, because the Guidelines list factors that are encouraged as bases for
departure and those that are discouraged.  The Court in Koon instructed
sentencing courts on the proper evaluation of potential departure factors:

    FN3. The forbidden factors are race, sex, national origin, creed, religion,
    and socioeconomic status, § 5H1.10;  lack of guidance as a youth, § 5H1.12;
    drug or alcohol dependence, § 5H1.4;  and economic duress, § 5K2.12.

          Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

122 F.3d 1297
**(Cite as: 122 F.3d 1297, \*1301)**

**\*1302** If the special factor is a forbidden factor, the sentencing court cannot
use it as a basis for departure.  If the special factor is an encouraged
factor, the court is authorized to depart if the applicable Guideline does not
already take it into account.  If the special factor is a discouraged factor,
or an encouraged factor already taken into account by the applicable
Guideline, the court should depart only if the factor is present to an
exceptional degree or in some other way makes the case different from the
ordinary case where the factor is present.  If a factor is unmentioned in the
Guidelines, the court must, after considering the "structure and theory of
both relevant individual guidelines and the Guidelines taken as a whole,"
decide whether it is sufficient to take the case out of the Guideline's
heartland.  The court must bear in mind the Commission's expectation that
departures based on grounds not mentioned in the Guidelines will be "highly
infrequent."

Id. (citations omitted).

After Koon, it is now apparent that a district court may consider a departure
when "certain aspects of the case [are] found unusual enough for it to fall
outside the heartland of cases in the Guideline."  Id. at ----, 116 S.Ct. at
2046.  District courts are authorized to depart in this situation because "the
Commission itself admits that it has not adequately considered 'unusual' cases."
United States v. Rivera, 994 F.2d 942, 947 (1st Cir.1993);  see also Koon, at
----, 116 S.Ct. at 2044 ("[W]e learn that the Commission did not adequately take
into account cases that are, for one reason or another, 'unusual.' ").

But when is a case so "unusual" that it is a candidate for a departure?   The
Supreme Court in Koon made clear that this question is largely for the district
court to answer.  The Court explained that "[t]o resolve this question, the
district court must make a refined assessment of the many facts bearing on the
outcome, informed by its vantage point and day-to-day experience in criminal
sentencing."  Id. at ---- - ----, 116 S.Ct. at 2046-47.  Thus, Koon informs us
that the district courts perform the most important function in sentencing, at
least in the context of departures, because they have the responsibility of
determining in the first instance whether the factual circumstances of a case
remove it from the applicable guideline heartland, making the case a candidate
for a departure.

2. Review on Appeal

What then is the role of an appellate court in reviewing a district court's
decision to depart from the Guidelines?  The Tenth Circuit approach established
prior to Koon in United States v. White, 893 F.2d 276 (10th Cir.1990), is framed
somewhat differently than the approach announced in Koon. White requires an
appellate court to engage in a three-step review of upward departures:  (1) de
novo review of whether the circumstances cited by the district court encompass a
factor not adequately taken into consideration by the Sentencing Commission in
formulating the Guidelines;  (2) clearly erroneous review of the factual
determinations underlying the decision to depart;  and (3) reasonableness review
of the degree of departure.  Id. at 277-78;  see also United States v.
Maldonado-Campos, 920 F.2d 714, 719-20 (10th Cir.1990) (same three-step approach
applies to downward departures).

[2] After Koon, appellate courts must now review departures under a unitary

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

122 F.3d 1297
**(Cite as: 122 F.3d 1297, \*1302)**

abuse-of-discretion standard which "includes review to determine that the
discretion [of the district court] was not guided by erroneous legal
conclusions." Koon, at ---- - ----, 116 S.Ct. at 2047-48. Koon made explicit
that in promulgating the Guidelines, Congress did not intend "to vest in
appellate courts wide-ranging authority over district court sentencing
decisions." Id. at ----, 116 S.Ct. at 2046. Rather, Congress meant to
"establish[ ] limited appellate review" where "district courts retain much of
their traditional sentencing discretion." Id.
  In determining what aspects of the sentencing decision should be left largely
to the discretion of the district court, the Supreme Court made this seminal
statement:  "The deference that is due depends on the nature of the question
presented." Id. When the question presented is essentially factual, appellate
review should be at its most deferential. The Court stated that in most cases
departure decisions will fall into this category. **\*1303** The Court explained that
"[a] district court's decision to depart from the guidelines ... will in most
cases be due substantial deference, for it embodies the traditional exercise of
discretion by a sentencing court." Id. at ----, 116 S.Ct. at 2046;  see also
Rivera, 994 F.2d at 951 ("In many ... instances, the district court's [departure
decision] ... will not involve a 'quintessentially legal' interpretation of the
words of a guideline, but rather will amount to a judgment about whether the
given circumstances, as seen from the district court's unique vantage point, are
usual or unusual, ordinary or not ordinary, and to what extent.").
  [3] When the issue is essentially legal, however, appellate review should be
plenary.  For example, the Court stated that "whether a factor is a permissible
basis for departure under any circumstances is a question of law, and the court
of appeals need not defer to the district court's resolution of the point."
Koon, at ----, 116 S.Ct. at 2047. [FN4]

    **FN4.** Although a district court's decision to depart usually involves an
    essentially factual inquiry, in some cases the determination that a
    defendant falls outside an applicable guideline heartland will not be based
    primarily on the court's judgment about the facts of the case, but will
    involve the court's determination as to what constitutes a guideline's
    heartland.  In this situation appellate review would not be deferential
    because the question of what constitutes a guideline's heartland is
    essentially legal in nature.  See Rivera, 994 F.2d at 951 (discussing, for
    example, the "quintessentially legal" question of what constitutes the
    heartland of the child pornography guideline).

  In sum, after Koon, appellate review of departures is guided by the nature of
the question presented.  One component of the decision to depart is essentially
legal:  whether the factual circumstances supporting departure are permissible
departure factors.  See Rivera, 994 F.2d at 951.  Impermissible factors include
forbidden factors, discouraged factors that are not present to some exceptional
degree, and encouraged factors already taken into account by the applicable
guideline that are not present to some exceptional degree.  A second component
is essentially factual:  whether the factual circumstances from the vantage
point of the district court make this the atypical case.  See id. at 951-52.

          Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

122 F.3d 1297
**(Cite as: 122 F.3d 1297, \*1303)**

[4][5] Thus, in determining whether the district court abused its discretion in departing from the Guidelines, appellate courts after Koon must evaluate: (1) whether the factual circumstances supporting a departure are permissible departure factors; (2) whether the departure factors relied upon by the district court remove the defendant from the applicable Guideline heartland thus warranting a departure, (3) whether the record sufficiently supports the factual basis underlying the departure, and (4) whether the degree of departure is reasonable. In performing this review, Koon tells us that an appellate court need not defer to the district court's resolution of the first question, whether a factor is a permissible departure factor under any circumstances, but must give "substantial deference" to the district court's resolution of the second question, whether "a particular [defendant] is within the heartland given all the facts of the case." Id. [FN5] Because Koon did not address the second and third steps of our prior multi-step approach-- record support for the factual circumstances underlying the departure and reasonable review of the degree of departure--they remain as before. We emphasize, however, that all four steps of the departure review are subject to a unitary abuse of discretion standard.

   FN5. If an appellate court determines that a district court based a
   departure on both valid and invalid factors, the court should remand the
   case unless it determines the district court "would have imposed the same
   sentence absent reliance on the invalid factors." Koon, at ---- - ----,
   116 S.Ct. at 2053-54 (citing Williams v. United States, 503 U.S. 193, 203,
   112 S.Ct. 1112, 1120-21, 117 L.Ed.2d 341 (1992)).

 B. Career Offender Category Departures under § 4A1.3
 1. The Decision to Depart
 As discussed above, a district court is authorized to depart from the Guidelines only if the court finds a mitigating or aggravating factor not adequately taken into account by the Commission. See U.S.S.G. § 5K2.0; 18 U.S.C. § 3553(b). One such circumstance appears in U.S.S.G. § 4A1.3. See Maldonado-Campos, 920 F.2d at 719, n. 2 (holding that departures under section 4A1.3 are a **\*1304** subset of departures under section 5K2.0). Section 4A1.3 permits a departure when "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3, p.s.
 [6] In deciding whether to depart under section 4A1.3, the district court must specifically address the adequacy of a defendant's criminal history category as it reflects both the defendant's past criminal conduct and likely criminal future. The purpose of section 4A1.3 is to allow a district court to deviate from the otherwise applicable guideline range where a defendant's criminal history, likelihood of recidivism, or both differ significantly from the typical offender for whom the applicable criminal history category was formulated. In other words, a district court may depart when a defendant's criminal past or likely criminal future removes the defendant from the heartland of the applicable criminal history category.
 [7] This "heartland" analysis extends to defendants sentenced as career

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

122 F.3d 1297
**(Cite as: 122 F.3d 1297, \*1304)**

offenders.  The automatic placement of a career offender in criminal history
category VI under U.S.S.G. § 4B1.1 reflects the Commission's assessment that the
offender possesses the most serious criminal history and the highest possible
likelihood of recidivism.  Thus, for a defendant who technically qualifies as a
career offender but whose criminal history and likelihood of recidivism
significantly differ from the heartland of career offenders, the sentencing
court may consider a departure from the career offender category. United States
v. Bowser, 941 F.2d 1019, 1025 (10th Cir.1991);  see also United States v.
Lindia, 82 F.3d 1154, 1165 (1st Cir.1996);  United States v. Spencer, 25 F.3d
1105, 1113 (D.C.Cir.1994);  United States v. Rogers, 972 F.2d 489, 493-94 (2d
Cir.1992);  United States v. Lawrence, 916 F.2d 553, 554-55 (9th Cir.1990);
United States v. Brown, 903 F.2d 540, 545 (8th Cir.1990).
  In departing downward under section 4A1.3 from the career offender guideline,
the district court must justify its finding that a defendant's career offender
status significantly overstates the seriousness of the defendant's criminal
history or likelihood for recidivism.  As with all departure decisions, the
district court should consider all of the factual circumstances that bear upon a
defendant's criminal history and likelihood for recidivism, but the district
court may not rely on any impermissible departure factors.  For each potential
departure factor, the court must ask whether it is a permissible factor.  After
the district court has determined which factors are permissible departure
factors, the court then must determine whether these factors, alone or in
combination, cause the defendant's career offender status to over-represent the
seriousness of his criminal history or likelihood for recidivism.  Only then may
the district court depart under section 4A1.3 from the otherwise applicable
guideline range for a career offender.
  2. Review on **Appeal**
  [8] In reviewing a departure under section 4A1.3, an appellate court must first
address whether the district court has relied on a permissible departure factor.
The Sentencing Guidelines explicitly encourage a departure when the district
court concludes that a defendant's criminal history category over-represents the
seriousness of the defendant's criminal history or likelihood of recidivism.
The Commission's commentary to section 4A1.3 makes clear that "the criminal
history score is unlikely to take into account all the variations in the
seriousness of criminal history that may occur." U.S.S.G. § 4A1.3, comment.
(backg'd.).  Because section 4A1.3 provides an encouraged basis for departure
not already taken into account by the Commission, over-representation of a
defendant's criminal history or likelihood for recidivism always will be an
approved ground for departure.
  That does not end the inquiry into whether the district court has relied on any
impermissible departure factors, however, because the district court must
identify the factual bases supporting its finding of over-representation. These
supporting facts themselves must constitute permissible grounds for departure.
Bowser, 941 F.2d at 1023-25.  For example, a district court may not conclude
that a defendant is less likely to commit further **\*1305** crimes because of her
particular socio-economic status, a forbidden factor under the Guidelines.
Therefore, an appellate court must address whether the factual circumstances
identified by the district court in support of its finding of over-

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

representation are permissible departure factors.  If any are impermissible,
they may not be used.
 [9] Once the appellate court has determined that the district court has relied
upon permissible departure factors, the court should proceed to the second
inquiry:  whether the factual circumstances identified by the district court
remove the defendant from the career offender heartland.  Despite the
"technically legal nature of [this] question," Rivera, 994 F.2d at 951,
appellate courts should not "ignore the district court's special competence ...
about the 'ordinariness' or 'unusualness' of a particular case."  Koon, at ----,
116 S.Ct. at 2047 (quoting Rivera, 994 F.2d at 951).  Thus, the district court's
resolution of the second inquiry should not be disturbed unless the court abused
its discretion--that is, unless it "made a clear error of judgment or exceeded
the bounds of permissible choice in the circumstances."  Boughton v. Cotter
Corp., 65 F.3d 823, 832 (10th Cir.1995) (quoting McEwen v. City of Norman, 926
F.2d 1539, 1553 (10th Cir.1991)).  Finally, appellate courts should ensure that
the record adequately supports the factual basis for the departure and that the
degree of departure is reasonable.  See White, 893 F.2d at 277-78
 II. APPLYING THE DEPARTURE ANALYSIS
 We now apply this departure analysis to the case before us.  The district court
in the present case departed downward from the applicable guideline range for a
career offender.  In departing downward, the district court gave three reasons
supporting its conclusion that Collins's career offender status overstates his
criminal past and likely criminal future, thus removing him from the heartland
of the career offender guideline.  The district court stated that Collins's age,
infirmity, and the circumstances surrounding his 1986 predicate conviction,
taken together, justified the court's finding of over-representation under
section 4A1.3. [FN6]  In reviewing the district court's decision to depart, we
must first ask whether the court relied on permissible departure factors.  If
all of the factors relied upon by the district court are permissible factors, we
then ask whether the combination of factors removes this defendant from the
career offender heartland.  Once again, we perform this second step giving
"substantial deference" to the district court's conclusion that the facts of the
case make this defendant atypical. Koon, at ----, 116 S.Ct. at 2046.

     FN6. We note that the district court could have considered a downward
     departure separately under U.S.S.G. §§ 5H1.1 (age and infirmity) or 5H1.4
     (physical condition).  In this case, the district court did not depart
     downward under these separate guideline sections, and in fact stated that
     it was not departing under § 5H1.4 alone because it did not find that
     Collins suffered from an "extraordinary physical impairment" as required by
     that guideline.  Accordingly, we emphasize that we discuss age and
     infirmity only as factors supporting the court's decision to grant a
     departure under § 4A1.3.

 A. Permissibility of Departure Factors
 [10] In considering whether the district court relied on any impermissible
departure factors, we address as a general matter whether a district court may
rely on offender characteristics, such as age and infirmity, to support a

122 F.3d 1297
**(Cite as: 122 F.3d 1297, \*1305)**

criminal history category departure under section 4A1.3. In section 5K2.0, the
Guidelines discuss the use of offender characteristics in the context of
departures:
  An offender characteristic or other circumstance that is not ordinarily
  relevant in determining whether a sentence should be outside the applicable
  guideline range may be relevant to this determination if such characteristic
  or circumstance is present to an unusual degree and distinguishes the case
  from the "heartland" cases covered by the guidelines in a way that is
  important to the statutory purposes of sentencing.
  U.S.S.G. § 5K2.0, p.s. We have previously concluded that despite the placement
of section 4A1.3 in chapter 4 of the Guidelines, departures under section 4A1.3
are not "beyond the purview" of section 5K2.0. Maldonado-Campos, 920 F.2d at 719
n. 2; see also Bowser, 941 F.2d at 1023-25. But see United States v. Shoupe,
988 F.2d 440, 444-47 (3d **\*1306** Cir.1993); United States v. Pinckney, 938 F.2d
519, 521 (4th Cir.1991). Cf. United States v. Spencer, 25 F.3d 1105, 1112-13
(D.C.Cir.1994) (declining to choose between Shoupe and Pinckney, on the one
hand, and the contrary decisions of the Tenth Circuit, on the other). In other
words, the overstatement of a defendant's criminal history or likelihood of
recidivism is a "mitigating factor not adequately taken into account by the
Sentencing Commission" within the meaning of section 5K2.0. Because departures
under section 4A1.3 are made pursuant to section 5K2.0, and because the above-
quoted paragraph from section 5K2.0 explicitly sanctions the use of offender
characteristics in the context of departures, we conclude that a sentencing
court may utilize offender characteristics that bear upon a defendant's criminal
history or likelihood for recidivism in considering a departure under section
4A1.3.
  In the past, we sanctioned the limited use of offender characteristics to
support a criminal history departure under section 4A1.3. In United States v.
Bowser, 941 F.2d at 1024, we looked to U.S.S.G. § 5H1.1, [FN7] which generally
rejects age as a ground for departure, and concluded that age alone is
insufficient to support a departure under section 4A1.3. We nevertheless stated
that "taken in the context of the other circumstances of a defendant's criminal
history, [age] could be germane to whether the career offender category is
appropriately applied to an individual defendant." Id. We continue to adhere to
this approach today and conclude that in considering a departure under section
4A1.3, a district court may rely on offender characteristics such as age and
infirmity that are logically relevant to a defendant's criminal history or
likelihood for recidivism, but only in combination with other circumstances of a
defendant's criminal history. We see nothing in the Guidelines that precludes a
district court's use of offender characteristics as part of the factual basis
for a criminal history departure under section 4A1.3. See Shoupe, 988 F.2d at
447 (defendant's age at time of prior convictions and time between convictions
are proper factors to consider in determining whether to depart under § 4A1.3
from the career offender category); United States v. Brown, 985 F.2d 478, 482
(9th Cir.1993) (age at time of prior convictions and nature of those convictions
are proper factors to consider in determining whether career offender status
significantly over-represents seriousness of defendant's criminal history);
United States v. Smith, 909 F.2d 1164, 1169 (8th Cir.1990) (length and scope of

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

122 F.3d 1297
**(Cite as: 122 F.3d 1297, \*1306)**

defendant's criminal career, including age of defendant at time of prior
offenses and time between prior offenses, is relevant to decision whether to
depart from criminal history category);  United States v. Brown, 903 F.2d 540,
544 (8th Cir.1990) (although age is not a factor warranting a general departure
under § 5K2.0, it may be considered in determining whether, under § 4A1.3,
criminal history category overstated severity of defendant's criminal history).

> FN7. U.S.S.G. § 5H1.1 provides:
> Age (including youth) is not ordinarily relevant in determining whether a
> sentence should be outside the applicable guideline range.  Age may be a
> reason to impose a sentence below the applicable guideline range when the
> defendant is elderly and infirm and where a form of punishment such as home
> confinement might be equally efficient as and less costly than
> incarceration.

[11] Having said this, we emphasize the continuing validity of our statement
that "[i]n reviewing a district court's decision to depart from the otherwise
applicable guideline range, we must be careful not to blur the distinction
between offense level departures and criminal history departures."  United
States v. Okane, 52 F.3d 828, 832 (10th Cir.1995).  This does not mean, however,
that offender characteristics, such as age and infirmity, cannot be used as a
matter of law to support a finding under section 4A1.3 that an offender has a
more or less serious criminal history (as in Bowser ) or is more or less likely
to commit further crimes (as is the case here).  Rather, it means, as Okane made
clear, that circumstances making up a defendant's criminal history cannot be
used as a basis for an offense-level departure and circumstances surrounding the
instant offense cannot be used as a basis for a criminal history category
departure.  Thus, in Okane, the district court erred by granting an upward
offense-level departure based on the defendant's admission of thirteen uncharged
bank robberies.  Id. at 833.  In reversing the **\*1307** district court, we stated
that "[w]hile uncharged conduct is certainly a valid basis for an upward
departure, ... the district court erred by increasing Mr. Okane's offense level,
as opposed to his criminal history category."  Id.  Nothing in today's opinion
disrupts this conclusion.
[12] Having determined that offender characteristics, in general, may make up
part of the mix of factors supporting a departure under section 4A1.3, we next
address whether the particular factors identified by the district court in this
case are permissible departure factors.  After reviewing the Sentencing
Guidelines, policy statements, and official commentary of the Sentencing
Commission, Koon, at ----, 116 S.Ct. at 2044, we conclude that none of the
factors relied upon by the district court as part of its composite rationale is
an impermissible departure factor.
 The Guidelines explicitly state that age and physical condition, the first two
factors identified by the district court, are "not ordinarily relevant" in
considering whether a defendant is a candidate for departure.  U.S.S.G. §§
5H1.1, 5H1.4. Because these factors are not ordinarily relevant, they are
"discouraged" factors.  Therefore, as stated in Koon, the district court could
have relied on these factors only if they were "present to an exceptional degree

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

or in some other way [made] the case different from the ordinary case where the
factor[s are] present."   Id. at ----, 116 S.Ct. at 2045.
 After reviewing the record, we conclude that the district court did not abuse
its discretion in finding that Collins's age and infirmity were present to an
exceptional degree.   The Pre-Sentence Report indicates that Collins was 64 years
old on the date of sentencing.   Medical records provided by Collins's attending
physician and a urological report undertaken at the request of the United States
Marshal's Office prior to sentencing indicate that Collins suffers from heart
disease, high blood pressure, ulcers, arthritis and prostatitis.   The medical
records further show that Collins faces the prospect of intrusive surgery to
address his prostatitis.   Although the terms "elderly" and "infirm" are
difficult to define, and more difficult to measure in degree, we cannot say that
the district court abused its discretion in concluding that the factors of age
and infirmity are present in this case to an exceptional degree.   We therefore
conclude that the district court properly relied upon Collins's age and
infirmity in departing downward from the Guidelines.
 Similarly, we conclude that the district court properly relied upon the
circumstances surrounding Collins's 1986 conviction.   In determining that
Collins was outside the heartland of the career offender category, the district
court found that one of Collins's predicate convictions occurred close to ten
years prior to the instant offense, involved conduct committed beyond the ten-
year time limit, and resulted in a relatively lenient sentence.   Although not
categorized as forbidden, discouraged, or encouraged, the circumstances cited by
the district court are not unmentioned in the Guidelines.   In particular, the
Guidelines recognize that a prior conviction close to the ten-year time limit
may be relevant in determining whether a departure is appropriate under section
4A1.3.   Section 4A1.3 contains the example of "a defendant with two minor
misdemeanor convictions close to ten years prior to the instant offense and no
other evidence of prior criminal behavior in the intervening period."   U.S.S.G.
§ 4A1.3, p.s.   Rather than setting forth the minimum requirements for a criminal
history category departure, this example is meant to guide the district courts
in the kinds of factors that are relevant in deciding whether a particular
defendant lies outside the heartland of the applicable criminal history or
career offender category.
 Thus, a district court properly could conclude that a defendant with a
predicate conviction close to ten years prior to the instant offense is not as
likely to recidivate as a career offender whose predicate convictions occurred
closer to the instant offense.   See United States v. Fletcher, 15 F.3d 553, 557
(6th Cir.1994) ("[A] district court may take the age of prior convictions into
account when considering a defendant's likelihood of ... recidivism.").   A
district court also could conclude that a defendant who received a "relatively
lenient" sentence for a predicate conviction has a less serious criminal history
than a career offender whose predicate convictions **\*1308** resulted in lengthy
periods of incarceration.   See United States v. Spencer, 25 F.3d 1105, 1113
(D.C.Cir.1994) (stating that "the relatively minor nature" of a defendant's
prior convictions may be considered in deciding whether to depart under section
4A1.3).   Finally, a district court could conclude that delay in the prosecution
of a defendant who committed the conduct underlying a predicate conviction more

than ten years prior to the instant offense, under some circumstances, may
warrant a departure.  See United States v. Martinez, 77 F.3d 332, 336-37 (9th
Cir.1996) (recognizing that delay in the prosecution of an offense resulting in
unfair sentencing consequences could constitute a permissible ground for
departure).  We see nothing in the structure and theory of the Guidelines that
would restrict the district court from considering these kinds of factual
circumstances which bear upon the seriousness of a defendant's criminal history
or likelihood of recidivism.  Therefore, we conclude that the circumstances
surrounding Collins's 1986 predicate conviction are permissible factors for
departure.

B. Downward Departure
 [13] Because the district court did not rely on any impermissible departure
factors, we now move to the second inquiry in our departure analysis:  whether
the combination of factors identified by the district court warrants a downward
departure from the career offender guideline.  The government's primary argument
on appeal is that these factual circumstances are not sufficient to remove
Collins from the heartland of career offenders. After reviewing the record, we
conclude that the district court did not abuse its discretion in departing
downward on the basis that Collins's age, infirmity, and the circumstances
surrounding his 1986 predicate conviction remove him from the heartland of the
career offender guideline. [FN8]

    FN8. The government does not dispute the district court's finding that
    Collins is elderly and infirm, nor does it dispute the existence of the
    circumstances surrounding his 1986 conviction.  Therefore, the third step
    of our analysis--record support for the factual circumstances underlying
    the departure--is satisfied.

 As discussed earlier, Collins was sixty-four at the time of sentencing.  When
Collins is released from his current term of imprisonment, he will be nearly
seventy years old.  The record shows that Collins suffers from a long list of
infirmities.  In light of Collins's old age and ill health, the district court
was well within its discretion in concluding that Collins is less likely to
recidivate than the ordinary defendant categorized as a career offender.
 The district court was also within its discretion in concluding that the use of
Collins's 1986 marijuana possession conviction, while technically rendering
Collins a career offender, in fact resulted in the overstatement of the
seriousness of his criminal history and likelihood for recidivism.  Collins
committed the offense underlying the 1986 conviction roughly 15 months before
sentencing and prior to the ten-year time limit specified in the career offender
guideline.  As the district court noted, a quicker prosecution of the case would
have resulted in the imposition of a sentence outside the ten-year period,
thereby precluding the career offender sentence enhancement altogether.
Further, the district court found that the conviction resulted in a relatively
lenient sentence.  Relying on these factors and despite Collins's intervening
cocaine trafficking conviction in 1991, the district court concluded that
Collins was unlike the typical career offender.  The district court's ultimate
determination that Collins's age, infirmity, and the circumstances surrounding

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

122 F.3d 1297
**(Cite as: 122 F.3d 1297, \*1308)**

his 1986 conviction remove him from the career offender heartland is "just the
sort of determination that must be accorded deference by the appellate courts."
Koon, at ----, 116 S.Ct. at 2053. Accordingly, we conclude that the district
court did not abuse its discretion in concluding that the various departure
factors it relied upon warranted a departure.
  C. Reasonableness of Degree of Departure
  [14][15] Finally, we consider whether the degree of departure was reasonable.
In making this determination, we consider the district court's reasons for
imposing the particular sentence together with factors such as: "the seriousness
of the offense, the need for just punishment, deterrence, protection of **\*1309**
the public, correctional treatment, the sentencing pattern of the Guidelines,
the policy statements contained in the Guidelines, and the need to avoid
unwarranted sentencing disparities." United States v. White, 893 F.2d 276, 278
(10th Cir.1990) (citing 18 U.S.C. § 3742(e)(3) and 18 U.S.C. § 3553(a)).   We
have held that in departing from the applicable guideline range, a district
court "must specifically articulate reasons for the degree of departure."
United States v. Yates, 22 F.3d 981, 990 (10th Cir.1994) (quoting United States
v. Flinn, 987 F.2d 1497, 1502 (1993)).   The district court "may use any
'reasonable methodology hitched to the Sentencing Guidelines to justify the
reasonableness of the departure,' " which includes using extrapolation from or
analogy to the Guidelines.   United States v. Jackson, 921 F.2d 985, 989-90 (10th
Cir.1990) (quoting United States v. Harris, 907 F.2d 121, 124 (10th Cir.1990)).
But see United States v. Sablan, 114 F.3d 913, 918-19 (9th Cir.1997) (en banc)
(holding that prior circuit caselaw requiring district courts to gauge the
extent of a departure by drawing analogies to the Guidelines was overruled by
Koon ).
  [16] Here, the district court was explicit in its method of departure;   it
applied a sentence within the range that would have applied without the career
offender enhancement.   The court did so because it found that under the facts of
this case, the career offender enhancement significantly overstated Collins's
criminal past and likely criminal future and that a sentence within the range
applicable without the career offender enhancement adequately reflected
Collins's situation.   We have previously held that a one-step departure out of
the career offender category and application of a sentence within the otherwise
applicable range is a reasonable means of departure.   See Bowser, 941 F.2d at
1026.   For this reason, we hold that the degree of departure in this case was
reasonable.
  The judgment of the district court is AFFIRMED.
END OF DOCUMENT

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Citation              Found Document              Rank 1 of 1              Database
8 F.3d 1379                                                                CTA
62 USLW 2355
**(Cite as: 8 F.3d 1379)**
₽

                UNITED STATES of America, Plaintiff-Appellant, Cross-Appellee,
                                          v.
                    Armando REYES, Defendant-Appellee, Cross-Appellant.
                              Nos. 92-30030, 92-30059.
                            United States Court of Appeals,
                                    Ninth Circuit.
                          Argued and Submitted Oct. 7, 1992.
                              Decided Nov. 3, 1993.
 Defendant was convicted and sentenced for distributing marijuana, distributing
cocaine, and illegal reentry by the United States District Court for the
District of Oregon, Owen M. Panner, Chief Judge.  The government appealed the
district court's downward departure from the Sentencing Guidelines.  The Court
of Appeals, Fletcher, Circuit Judge, held that:  (1) district court was
authorized to depart from Sentencing Guidelines;  (2) district court failed to
articulate reasons for degree of its departure from Sentencing Guidelines; and
(3) defendant failed to make showing necessary to require government to
articulate its reasons for demanding jury trial.
 Remanded.
 Brunetti, Circuit Judge, filed dissenting opinion.

[1] CRIMINAL LAW ☞1139
110k1139
On review of downward departure from Sentencing Guidelines, panel must review de
novo whether district court was authorized to depart downward from career
offender section of guidelines;  review for clear error factual finding
supporting existence of circumstances justifying downward departure;  and review
for abuse of discretion reasonableness of extent of departure.  18 U.S.C.A. §
3742(e)(3), (f)(2).

[1] CRIMINAL LAW ☞1147
110k1147
On review of downward departure from Sentencing Guidelines, panel must review de
novo whether district court was authorized to depart downward from career
offender section of guidelines;  review for clear error factual finding
supporting existence of circumstances justifying downward departure;  and review
for abuse of discretion reasonableness of extent of departure.  18 U.S.C.A. §
3742(e)(3), (f)(2).

[1] CRIMINAL LAW ☞1158(1)
110k1158(1)
On review of downward departure from Sentencing Guidelines, panel must review de
novo whether district court was authorized to depart downward from career
offender section of guidelines;  review for clear error factual finding
supporting existence of circumstances justifying downward departure;  and review

                Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

8 F.3d 1379
**(Cite as: 8 F.3d 1379)**

for abuse of discretion reasonableness of extent of departure.  18 U.S.C.A. §
3742(e)(3), (f)(2).

[2] CRIMINAL LAW ☞1139
110k1139
Whether district court should have allowed defendant charged with distributing
marijuana and cocaine and illegal reentry to waive trial by jury over objection
of government was question of law subject to de novo review.  21 U.S.C.A. §
841(a)(1);  Immigration and Nationality Act, § 276, 8 U.S.C.A. § 1326.

[3] CRIMINAL LAW ☞1203.32
110k1203.32
Downward departure from career offender Sentencing Guidelines is permissible.
U.S.S.G. § 4B1.1, 18 U.S.C.A.App.

[4] CRIMINAL LAW ☞1134(2)
110k1134(2)
Appellate court reviewing district court's downward departure from Sentencing
Guidelines based upon mitigating circumstance of kind or degree sentencing
commission did not adequately take into account when formulating guidelines must
consider reasons for departure actually articulated by sentencing court, but
sentencing judge need not recite specific language of statute governing downward
departure from Sentencing Guidelines.  18 U.S.C.A. § 3553(b); U.S.S.G. §§ 4A1.3,
p.s., 5K2.0, p.s., 18 U.S.C.A.App.

[4] CRIMINAL LAW ☞1321(2)
110k1321(2)
Appellate court reviewing district court's downward departure from Sentencing
Guidelines based upon mitigating circumstance of kind or degree sentencing
commission did not adequately take into account when formulating guidelines must
consider reasons for departure actually articulated by sentencing court, but
sentencing judge need not recite specific language of statute governing downward
departure from Sentencing Guidelines.  18 U.S.C.A. § 3553(b); U.S.S.G. §§ 4A1.3,
p.s., 5K2.0, p.s., 18 U.S.C.A.App.

[5] CRIMINAL LAW ☞1239
110k1239
Sentencing judge may rely on any policy statement or commentary in Sentencing
Guidelines that might warrant consideration in imposing sentence. U.S.S.G. §
1B1.1 et seq., 18 U.S.C.A.App.

[6] CRIMINAL LAW ☞1302
110k1302
District court was authorized to depart downward from Sentencing Guidelines in
sentencing defendant for distributing marijuana and cocaine and illegal reentry,
where penalizing him with maximum term permitted for trafficking ordinarily
reserved for drug quantities far in excess of amounts for which he had been
convicted grossly overrepresented seriousness of his criminal history, and

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

8 F.3d 1379
**(Cite as: 8 F.3d 1379)**

sentencing ranges resulted in exceptional discrepancies not adequately
considered in formulating guidelines.

[7] CRIMINAL LAW ☞1321(1)
110k1321(1)
District court must give adequate reasons for its departure from Sentencing
Guidelines and for extent of departure, but same reason may justify both
decisions and in explaining extent of departure, court may draw analogies to
other parts of Guidelines or other offenses.  U.S.S.G. § 1B1.1 et seq., 18
U.S.C.A.App.

[7] CRIMINAL LAW ☞1321(2)
110k1321(2)
District court must give adequate reasons for its departure from Sentencing
Guidelines and for extent of departure, but same reason may justify both
decisions and in explaining extent of departure, court may draw analogies to
other parts of Guidelines or other offenses.  U.S.S.G. § 1B1.1 et seq., 18
U.S.C.A.App.

[8] CRIMINAL LAW ☞1239
110k1239
Sentencing guideline which provided that downward departure from guidelines
could be considered if court concluded that defendant's criminal history was
significantly less serious than that of most defendants in same criminal history
category did not preclude court from considering analogies other than criminal
history categories or departures from base offense levels. U.S.S.G. § 4A1.3,
p.s., 18 U.S.C.A.App.

[9] CRIMINAL LAW ☞1203.32
110k1203.32
District court departing from career offender provisions of Sentencing
Guidelines had discretion to reduce sentence by more than modification of only
criminal history category would warrant, but it improperly failed to articulate
reasons for extent of departure.  U.S.S.G. § 4A1.3, p.s., 18 U.S.C.A.App.

[10] CRIMINAL LAW ☞1028
110k1028
Ordinarily, issue raised for first time on appeal is not considered by Court of
Appeals.

[11] CRIMINAL LAW ☞1028
110k1028
Court of Appeals may permit narrow and discretionary exceptions to general rule
against considering issues for first time on appeal when review is necessary to
prevent miscarriage of justice or to preserve integrity of judicial process;
when change in law raises new issue while appeal is pending;  and when issue is
purely one of law.

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

8 F.3d 1379
**(Cite as: 8 F.3d 1379)**

[12] CRIMINAL LAW ⬤➡1031(1)
110k1031(1)
Defendant's argument that court improperly allowed government to refuse to
consent to his waiver of jury trial would be considered by Court of Appeals,
even though not raised below, as it challenged integrity of judicial process and
raised primarily question of law.

[13] JURY ⬤➡29(2)
230k29(2)
Defendant does not have Sixth Amendment right to waiver of jury trial.
Fed.Rules Cr.Proc.Rule 23(a), 18 U.S.C.A.;  U.S.C.A. Const.Amend. 6.

[14] JURY ⬤➡29(2)
230k29(2)
Defendant failed to establish that government improperly refused to consent to
his waiver of jury trial, where "passion prejudice and public feeling" defendant
feared would jeopardize his right to impartial trial were specifically addressed
and guarded against by trial judge during voir dire.
**\*1381** Charles F. Gorder, Jr., Asst. U.S. Atty., Portland, OR, for plaintiff-
appellant-cross-appellee.
 Rita J. Radositiz, Asst. Federal Public Defender, Eugene, OR, for defendant-
appellee-cross-appellant.
 Appeal from the United States District Court for the District of Oregon.

 Before:  HUG, FLETCHER and BRUNETTI, Circuit Judges.

 FLETCHER, Circuit Judge:
 The Government appeals the district court's downward departure from the
Sentencing Guidelines in sentencing career offender Reyes.  It argues that the
district court ignored the career offender guideline provisions, U.S.S.G. §
4B1.1, by departing from a sentencing range of 210-262 months and setting a
sentence of thirty-three months.  Reyes cross-appeals the district court's
failure to allow a waiver of jury trial under Fed.R.Civ.P. 23.  Defendant argues
that the court should have required the Government to articulate a non- racial
motive for its refusal to consent to waiver.  The district court had
jurisdiction pursuant to 18 U.S.C. § 3231.  The jurisdiction of this court rests
on 18 U.S.C. § 3742(b) (Sentencing Guidelines) and 28 U.S.C. § 1291 (Final
Judgments).

                                    FACTS
 Armando Reyes, a twenty-nine-year-old citizen of Mexico, illegally crossed the
border to the United States at the age of fourteen.  He has been deported to
Mexico four times, the last as the result of a felony drug conviction.  (PSR 3).
In October 1990, within two months following his most recent deportation, he was
arrested by the Portland Police Bureau for selling 2.8 grams of marijuana in the
Old Town section of Portland.  At that time another 2.7 grams of marijuana was
found in his possession.  Over a month later, in November 1990, Reyes sold .14
grams of cocaine to an undercover officer.  Prior to arrest he swallowed the
remaining drugs in his possession.

                Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

8 F.3d 1379
**(Cite as: 8 F.3d 1379, *1381)**

The Government became involved in this case upon the discovery of Reyes' status as an illegal alien. It brought a three-count Grand Jury Indictment for distributing marijuana (under 21 U.S.C. § 841(a)(1)), distributing cocaine (also under 21 U.S.C. § 841(a)(1)), and for illegal reentry (under 8 U.S.C. § 1326). Reyes filed a trial memorandum waiving his right to a jury trial and requesting that the court order a bench trial over the Government's objection. The court denied the request and the jury found Reyes guilty on all three counts. *According to the presentence report, Reyes has been arrested and sentenced for six other offenses:* (1) in 1984 in California for use of opiates; (2) in 1987 in California for possessing for sale of six "baggies" of marijuana; (3) in 1987 in Washington for attempted theft from a department store; (4) in 1987 in Washington for obstructing a public officer; (5) in 1989 in Oregon for possession of drugs (including .45 grams of cocaine and .10 grams of heroin); and (6) in 1989 in Oregon for possessing and delivering $20-worth of cocaine. [FN1] The probation officer computed Reyes' criminal history and offense level points without reference to the career offender provisions of the guidelines. He assigned Reyes a base offense level of twelve, adjusting it to fourteen for multiple counts, and calculated criminal history points of twelve, placing Reyes in criminal history category V. The resulting guideline range was 33-41 months.

> FN1. The presentence report also reflects that upon his various arrests Reyes has identified himself by at least four other names, three of which share a common surname.

**\*1382** In its objections to the report, the Government pointed out that the previous drug-related offenses triggered the application of the career offender provisions, U.S.S.G. § 4B1.1. [FN2] Under these provisions, because the offense of conviction [FN3] was subject to a maximum statutory penalty of twenty years, 21 U.S.C. § 841(b)(1)(C), Reyes qualified for a base offense level of thirty-two. As a career offender, he automatically fell within criminal history category VI. The career offender sentencing range is 210-262 months, producing a choice of sentences almost seven times as long as those applicable under non-career offender guidelines.

> FN2. It cited the 1987 California "Possession for Sale of Marijuana" offense and the 1989 Oregon "Possession and Delivery of Cocaine" offense (related to the other 1989 Oregon "Possession of Cocaine and Heroin" offense) as the first and second prior felony convictions, respectively.

> FN3. Count II (for sale of .14 grams of cocaine) carries the 20-year maximum penalty upon which the career offender provisions are computed. 21 U.S.C. § 841(b)(1)(C). Count I (related to the marijuana transaction) carries a 5-year maximum. 21 U.S.C. § 841(b)(1)(D).

The probation officer did not modify his prior report and recommendation. The report recommended that if the career offender provisions were found to apply, a downward departure be made from the applicable range. The sentencing judge agreed with the Government that the career offender provisions applied to Reyes,

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

8 F.3d 1379
**(Cite as: 8 F.3d 1379, *1382)**

but, on the recommendation of the probation officer and defense counsel, departed from the career offender range and fixed a sentence of thirty-three months. He also ordered a three-year term of supervised release and participation in a substance abuse treatment program.

STANDARDS OF REVIEW

[1] Under the three-part standard of review set forth for downward departures from the Sentencing Guidelines by United States v. Lira-Barraza, 941 F.2d 745, 746-47 (9th Cir.1991) (en banc); United States v. Valdez- Gonzalez, 957 F.2d 643 (9th Cir.1992); United States v. Floyd, 945 F.2d 1096, 1098-99 (9th Cir.1991), the panel must (1) review de novo whether the district court was authorized to depart downward from the career offender section of the guidelines; (2) review for clear error factual findings supporting the existence of circumstances which justify downward departure; (3) review for abuse of discretion the reasonableness of the extent of departure within the meaning of 18 U.S.C. §§ 3742(e)(3) and (f)(2). United States v. Martinez-Gonzalez, 962 F.2d 874 (9th Cir.1992).

[2] Whether the district court should have allowed the defendant to waive trial by jury over the objection of the Government is a question of law and subject to de novo review. United States v. McConney, 728 F.2d 1195, 1200- 1201 (9th Cir.), cert. denied 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

DISCUSSION

I. DOWNWARD DEPARTURE FROM CAREER OFFENDER CATEGORY

[3] In accordance with its mandate from Congress, [FN4] the Sentencing Guidelines Commission set forth provisions to enhance substantially the sentences received by career offenders, including "repeat drug offenders" and "repeat drug traffickers." [FN5]  Under the guidelines:

FN4. 28 U.S.C. § 994(h) requires the Commission to "specify a sentence to a term of imprisonment at or near the maximum term authorized" by statute for certain offenders.

FN5. S.Rep. No. 225, 98th Cong., 2d Sess. 37 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3220, 3358.

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1. Although the career offender guidelines do not set out particular grounds upon which a court may depart downward from recommended sentencing ranges, the Ninth Circuit and other circuits **1383** have held that the sentencing judge may "rely on 'any ... policy statement[ ] or commentary in the guidelines that might warrant consideration in imposing sentence.' " United States v. Lawrence, 916 F.2d 553, 554 (9th Cir.1990) (citing U.S.S.G. § 1B1.1); see also United States v. Bowser, 941 F.2d 1019, 1023 (10th Cir.1991); United States v. Pinckney, 938 F.2d 519, 521 (4th Cir.1991); United States v. Adkins, 937 F.2d 947, 951 (4th Cir.1991); United States v. Senior, 935 F.2d 149, 151

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

8 F.3d 1379
**(Cite as: 8 F.3d 1379, \*1383)**

(8th Cir.1991);   United States v. Brown, 903 F.2d 540, 545 (8th Cir.1990).
Since it is well established that a downward departure from career offender
status is permissible, Lawrence, 916 F.2d at 554, we look only to the
circumstances of this case to determine whether the district court's stated
basis for departure is appropriate.
   In sentencing Reyes, the district court found the career offender guidelines
applied.   However, he explained:
   I am going to depart downward to the level 14 and the range of 33 to 41
   months.   I think in this case it's clear that the previous criminal history
   seriously overrepresents the history from the standpoint of the Guidelines.   I
   can't conceive that the Guidelines didn't intend to give a judicial officer
   authority to depart downward under circumstances such as this.   That being the
   case, I will depart.
   Immediately before imposing this sentence the court noted that Reyes was guilty
of very "minor offense[s]," and reasoned against sentencing "comparatively minor
offenders ... to prison as long as the Guidelines would indicate."   (ER 20).
Adopting the recommendation of the probation officer, the court relied on
Sections 4A1.3 and 5K2.0 which authorize departure in "limited circumstances."
See United States v. Cruz-Ventura, 979 F.2d 146, 150 (9th Cir.1992) (citing
United States v. Streit, 962 F.2d 894, 903 (9th Cir.1992)).
   A. Appropriate Basis
   [4] Downward departure is not permitted unless the district court has
identified a "mitigating circumstance of a kind or to a degree" the Sentencing
Commission did not adequately take into account when formulating the guidelines.
18 U.S.C. § 3553(b);   U.S.S.G. § 5K2.0.   A reviewing court "must consider the
reasons for departure actually articulated by the sentencing court."   United
States v. Montenegro-Rojo, 908 F.2d 425, 427 (9th Cir.1990).   [FN6]   "There is,
however, no requirement that the sentencing judge recite the specific language
of 18 U.S.C. § 3553(b)," the same language incorporated in Section 5K2.0.
United States v. Sanchez, 933 F.2d 742, 745 (9th Cir.1991);   United States v.
Ramirez Acosta, 895 F.2d 597, 601 (9th Cir.1990).

   FN6. The Government speculates that the court departed for the unstated
   reason of Reyes' status as an untreated drug addict, a basis urged upon it
   at the sentencing hearing by defendant.   Cf. United States v. Sanchez, 933
   F.2d 742, 747 (9th Cir.1991) (nonviolent offense committed as a result of
   involuntary drug use may be subject to downward departure).   Because the
   record before us does not indicate that the court did depart for this
   reason, we do not consider it.

   Section 4A1.3 indicates that
   [t]here may be cases where the court concludes that a defendant's criminal
   history category significantly over-represents the seriousness of a
   defendant's criminal history....   The court may conclude that the defendant's
   criminal history was significantly less serious than that of most defendants
   in the same criminal history category ... and therefore consider a downward
   departure from the guidelines.
   In the district court's view, Reyes' criminal history suggested he was a

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

8 F.3d 1379
**(Cite as: 8 F.3d 1379, \*1383)**

"comparatively minor offender." His conduct was not at all of the magnitude of
seriousness of most career offenders. Reyes' offenses involved considerably
smaller amounts of drugs than those which would trigger the same sentence under
the career offender provisions. Convicted for selling .14 grams of cocaine, he
was subject to the same base offense level and sentencing range as if he had
sold almost 4000 times that much. 21 U.S.C. § 841(b)(1)(C). Under the career
offender guidelines a defendant convicted for a fraction of one gram of cocaine
is accorded the harshest punishment due an offender trafficking in up to 500
grams. 21 U.S.C. **\*1384** § 841(b)(1)(C). Were he sentenced without reference to
the career offender provisions, he would be subject to the same offense level
and sentencing range as an offender associated with only up to twenty five grams
of cocaine. See U.S.S.G. § 2D1.1(16). In Reyes' case that would mean he and
another offender of equivalent criminal history would be sentenced to the same
punishment range for offenses involving only 200 times (rather than 4000) times
as much cocaine. [FN7]

> FN7. Based on the amount of marijuana he attempted to distribute (2.8
> grams), Reyes was subject to the same offense level and sentencing range as
> someone distributing 18,000 times that much. 21 U.S.C. § 841(b)(1)(D). A
> defendant distributing less than three grams of marijuana could receive the
> same punishment as one peddling fifty kilograms. Id.

 The Government formulates the stated basis for departure incorrectly. It
focuses on the "small quantity" or "miniscule" amounts of drugs involved in
Reyes' offenses, choosing to state the court's reason for departure as if it
were a simple quantity-based argument fixing only upon the absolute amount of
drugs at stake in the various offenses. The sentencing judge undertook a more
nuanced approach based on comparison. Instead of emphasizing the absolute
quantities of drugs involved, he cast the issue of quantity in comparative
terms. Reyes' criminal history was "comparatively minor." His offenses were
"minor" as compared to others (not small on some absolute scale). This approach
focuses on quantity only as a means to analyze the comparative treatment of
offenders. Quantity serves merely as the means to compare the similar treatment
of defendants whose offenses differ by exceptional orders of magnitude.
 Not crediting the court's reason for departure, the Government argues that
departure on the basis of the minuteness of the quantities is not permitted. It
contends that the quantity of drugs involved cannot serve as a basis for
departure because quantity already has been taken into consideration in the
career offender provisions. Section 4B1.1 links base offense levels with the
maximum statutory penalty available for the offense of conviction. If the
defendant is convicted of an offense which subjects him to a minimum of five
(but maximum of ten) year term, the career offender provisions assign him a base
offense level of seventeen. If the defendant is subject to a minimum of ten
(but maximum of fifteen) year term, he has a base offense level of twenty four.
If he is subject to a minimum of fifteen (but maximum of twenty) year term, he
is assigned an offense level of thirty-two. The chart is graduated in
increments of five years of statutorily permitted penalties. Thus, while the
guidelines themselves indicate no graduation based on quantities, the statutes

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

8 F.3d 1379
**(Cite as: 8 F.3d 1379, \*1384)**

they incorporate do.  See e.g., 21 U.S.C. § 841(a).  In the statutory context
relevant here a penalty of five years attaches to drug convictions for anything
less than fifty kilograms of marijuana; [FN8]  a penalty of twenty years for
50-100 kilograms of marijuana; [FN9]  a penalty of forty years for 100 to 1000
kilograms of marijuana. [FN10]  Thus the Government argues, "[i]n drug cases,
maximum penalties vary because [the penalty provision of the statute they depend
upon] keys the maximum penalty to the quantity of drugs sold.  Consequently, as
drug quantities vary, so does the career offender's offense level."  Appellant's
Opening Brief at 13.  In its view this linked system for assigning one of the
two elements [FN11] necessary to determine a guideline sentencing range
evidences adequate consideration of the quantities of drugs involved in offenses
subject to the career offender provisions.  It cites Second and Sixth Circuit
precedent directly supporting its formulation and analysis of the "small-
quantities" basis for departure.  United States v. Richardson, 923 F.2d 13, 17
(2d Cir.1991) (Commission adequately took small quantities into account,
downward departures for career offenders convicted for small amounts of drugs
are not justified on these grounds);  United States v. Hays, 899 F.2d 515,
518-520 (6th Cir.1990), cert. denied, 498 **\*1385** U.S. 958, 111 S.Ct. 385, 112
L.Ed.2d 396 (1990) (same).

      FN8. 21 U.S.C. § 841(b)(1)(D).

      FN9. 21 U.S.C. § 841(b)(1)(C).

      FN10. 21 U.S.C. § 841(b)(1)(B).

      FN11. The second element, criminal history, is assigned automatically to
      every defendant who qualifies as a career offender.  U.S.S.G. § 4B1.1.

 Because we conclude that the sentencing judge relied on a different basis for
departure than the one described by the Government (and evaluated by Richardson
and Hays ), our analysis is different.  The question we address is not whether
the career offender guidelines took into consideration small amounts of drugs,
but whether it adequately considered the disproportionate treatment of drug
offenders sentenced to the same penalty range for offenses involving drug
quantities of exceptionally different orders of magnitude. [FN12]

      FN12. This is an issue of first impression in the Ninth Circuit, but not in
      the sense framed by the Government.  It appears that no other circuit has
      squarely considered it.  See United States v. Nichols, 740 F.Supp. 1332,
      1336-1338 (N.D.Ill.1990), aff'd on other grounds, 937 F.2d 1257 (7th
      Cir.1991) (district court relies on comparative reasoning, but circuit
      affirms on other grounds);  United States v. Moore, 968 F.2d 216, 226 n. 4
      (2nd Cir.1992) (citing Richardson, 923 F.2d at 17) (district court relies
      on a comparison of sentences and amounts, but circuit court rejects for
      reasons focussed on amounts only).

 [5] A sentencing judge is "entitled to rely on 'any ... policy statement [ ] or

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

8 F.3d 1379
**(Cite as: 8 F.3d 1379, \*1385)**

commentary in the guidelines that might warrant consideration in imposing
sentence.' " Lawrence, 916 F.2d at 554 (citing U.S.S.G. § 1B1.1); Adkins, 937
F.2d at 951-52. One of the three principles upon which the Sentencing
Guidelines is founded is "proportionality in sentencing through a system that
imposes appropriately different sentences for criminal conduct of differing
severity." U.S.S.G. Ch. 1, Pt. A(3), intro. comment. This commitment to
proportionality is reflected in the guideline provisions supporting the district
court's decision to depart. It undergirds Congress's mandate that a court
depart from the guidelines, not only if a "kind" of mitigating circumstance was
not taken into account but if it was not taken into account to a sufficient
"degree." 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0. It is the reason for Section
4A1.3's elaboration of the concept of over-representation in terms of recidivism
and seriousness. [FN13] Seriousness, in this context, is only defined
comparatively. Finally, the introductory chapter to the guidelines announces a
"heartland" approach to sentencing. Despite the fact that in certain
circumstances "a particular guideline linguistically applies," the guidelines
specifically contemplate that "conduct significantly differ[ing] from the norm"
may warrant departure. U.S.S.G. Ch. 1, Pt. A intro. § 4(b); see also United
States v. Bowser, 941 F.2d 1019, 1023 (10th Cir.1991).

  FN13. In rejecting a "small quantities" basis for departure, the Second and
  Sixth Circuits focused on the career offender provisions to the exclusion
  of both these elements of Section 4A1.3. The Richardson court reasoned:
  The legislative history to the Guidelines and the language of the career
  offender proviso do not differentiate among types of dealers and do not in
  any way advocate treating street dealing career offenders differently from
  other career offenders. On the contrary, consistent treatment of all
  offenders is encouraged ... The structure of section 4B1.1 is consistent
  with the legislative discussions advocating harsh treatment for all
  recidivists. The rule focuses on the recurrence of offenses rather than on
  the specifics of the most recent offense.
  923 F.2d at 16. Its analysis rejects placing any importance on the
  relative seriousness of the conduct making up a defendant's criminal
  history and emphasizes recidivism alone. Under Section 4A1.3, a district
  court is expressly entitled to consider the seriousness of a defendant's
  criminal history even if he is a recidivist.

 In declaring that "comparatively minor offenders" should not receive the same
"career offender status," Transcript of Sentencing Proceedings at 25, the
district court found the Commission's consideration of the relationship between
drug quantity and penalty among differently-situated career offenders
inadequate. The "adequacy" enquiry goes to the comparative treatment of
offenders with the same career offender base offense level, all of whom receive
the same penalty range for very different amounts of drugs. On this view, the
problem is not that the Commission did not take into consideration the
relationship between quantity and penalty, but that it did not adequately do so
because it did not focus sufficiently on the resulting disproportionate
punishment accorded career offenders in the same category. [FN14] Implicit in

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

8 F.3d 1379
**(Cite as: 8 F.3d 1379, \*1386)**

this **\*1386** position is the conclusion that the penalty range is not sufficient
to differentiate between two offenders with the same base offense level.   The
range afforded simply does not reflect the degree of differential in the
seriousness of underlying criminal histories or offenses. [FN15]

FN14. A similar argument has been made in support of Eighth Amendment
challenges to the application of the career offender provisions.   See,
e.g., United States v. Frazier, 981 F.2d 92, 95-96 (3rd Cir.1992)
(comparing punishments for cocaine and cocaine-base);   United States v.
Gordon, 953 F.2d 1106, 1107, 1108 (8th Cir.1992) (in light of Supreme Court
precedent, no Eighth Amendment violation);   id.   (Heaney, Arnold JJ.,
concurring) ("any drug or violent felony conviction is a serious matter,
but to treat all prior convictions the same is to ignore the fact that some
are more serious than others");   United States v. McLean, 951 F.2d 1300,
1303-04 (D.C.Cir.1991) (career offender's sentence not "so grossly
disproportionate to his crime that it violated the Eighth Amendment.");
see also Allyn G. Heald, Note, United States v. Gonzales: In Search of a
Meaningful Proportionality Principle, Brooklyn L.Rev. 455, 464-65 & n. 35
(1992) (quoting N.H. Const. of 1784, art. XVII, § 1 criticizing
"undistinguishing severity [of punishment] ... exacted against all
offenses");   Thomas E. Baker & Fletcher N. Baldwin, Jr., Eighth Amendment
Challenges to the Length of a Criminal Sentence:   Following the Supreme
Court "From Precedent to Precedent", 27 Ariz.L.Rev. 25, 50 (1985)
(advocating an "as applied" theory of proportionality that would look to
the context of each sentence challenged under the Eighth Amendment, context
to include "the breadth of conduct included in the offense"). While these
courts have found the argument without merit as a reason to invalidate the
career offender provisions, under the guidelines it is an appropriate
concern to be considered when deciding to depart.   See U.S.S.G. Ch. 1, Pt.
A(3);   see also Albert W. Alschuler, The Failure of Sentencing Guidelines:
A Plea for Less Aggregation, 58 U.Chi.L.Rev. 901, 950-51 (1991) ("[t]he
aggregative style seems so ingrained however, that sentencing commissioners
have apparently assumed that their task was to consider categories, not
cases, and to allocate punishment wholesale");   Baker & Baldwin, supra, at
69 ("[p]roportionality analysis is similar to the analysis the sentencing
court must make").

FN15. Facing the different question of whether a court may depart for small
quantities of drugs, the Second Circuit viewed this position differently.
The court concluded that the career offender provisions did adequately take
into consideration the small quantities of drugs because a sentencing judge
would be able to choose an individualized sentence from a career offender
sentencing range.   Richardson, 923 F.2d at 16.

We have noted that the Sentencing Act " 'creates a sentencing guidelines system
that is intended to treat all classes of offenses committed by all categories of
offenders consistently.' "   (emphasis in original).   Lira- Barraza, 941 F.2d at
748 (citing S.Rep. No. 225, 98th Cong., 1st Sess. 51, reprinted in 1984

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

8 F.3d 1379
**(Cite as: 8 F.3d 1379, *1386)**

U.S.C.C.A.N. 3234).  In the context of the career offender provisions the Fourth
Circuit has concluded that:
  The test for "career offender" status is certainly ... fraught with potential
  imprecision ... [The] definition encompasses an enormous variety of crimes ...
  [and] there is clearly a potential for wide discrepancy in the gravity of past
  antisocial conduct among "career offenders."
  Adkins, 937 F.2d at 952 (emphasis added).
  The Nichols district court mathematically evaluated the extent of potential
imprecision flowing from certain applications of the career offender guidelines.
United States v. Nichols, 740 F.Supp. 1332, 1337-38 (N.D.Ill.1990), aff'd 937
F.2d 1257 (7th Cir.1991), cert. denied, 502 U.S. 1080, 112 S.Ct. 989, 117
L.Ed.2d 151 (1992).  Defendant Nichols "face[d] a minimum sentence of 35 years
for possessing a gun while also possessing less than a gram of cocaine that he
intended to distribute."  Nichols, 740 F.Supp. at 1334.  His prior offenses
consisted of an assortment of residential burglaries, robbery, and auto theft.
The court probed the relationship between the quantity of cocaine possessed by
Nichols and quantities which could be possessed by another offender while still
in the same base offense level and sentencing range.  It concluded that although
Congress had directed the Commission to sentence offenders at or near the
maximum penalty authorized, it "would not have intended that somebody found
guilty of intending to distribute less than one gram of diluted cocaine be
sentenced at or near the maximum for intending to distribute nearly 500 grams of
cocaine."  Nichols, 740 F.Supp. at 1337.  On facts much less extreme than those
presented by Reyes, the court found that a downward departure was warranted, in
effect, because of the lack of proportionality. [FN16]

    FN16. The different types of crimes committed by Nichols and Reyes and the
    extent of each defendant's criminal history counsel against broadly
    comparing the case before us and the one decided by the Nichols district
    court.  However, on the narrow point that defendants do share in common--an
    offense of conviction involving less than a gram of cocaine--the court's
    examination of the orders of magnitude of drug quantities and penalties
    illustrates the disproportionality concern which we review here.  The court
    noted that, sentenced outside the career offender provisions, Nichols and
    another offender having sold thirty times as much cocaine would be subject
    to the same penalty range.  See Nichols, 740 F.Supp. at 1337 n. 5.  By
    extension, within the career offender guidelines, he and an offender
    trafficking in 600 times as much cocaine would be sentenced in the same
    range.  Id. at 1337.  In the view of these two district courts, ratios of
    30:1 (Nichols) and 200:1 (Reyes) did not grossly violate the
    disproportionality principle, whereas 600:1 (Nichols) and 4000:1 (Reyes)
    did.  See supra at 1384.

  **\*1387** We have approved departure based on disproportionality in other contexts.
Where a district court found that the conduct of drug "mules" "significantly
differ[ed] from the norm," it departed on the ground that the mules' relative
blamelessness warranted commensurate treatment.  Valdez- Gonzalez, 957 F.2d at
649-50;  U.S.S.G. Ch. 1, Pt. A intro. § 4(b);  see also Alschuler, supra note

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

8 F.3d 1379
**(Cite as: 8 F.3d 1379, \*1387)**

15, 917, 926-927 (guidelines not "as successful in treating offenders of
comparable culpability alike").   These drug offenders were not subject to the
career offender guidelines and the court departed in part on the strength of the
analogy between its stated reason and the "minimal role" adjustment allowed in
other circumstances not obtaining in that case, e.g., U.S.S.G. § 3B1.2.   Id. at
647-48.   The sentencing judge here relied instead on the over-representativeness
of Reyes' career offender sentence range and the relative lack of seriousness of
the offenses and history that put him into career offender status.
Significantly, all these stated bases share a common thread--comparative
evaluation and concern for proportionate treatment of offenders.
 Nor is it the case that every offender caught with small quantities of drugs
will benefit from this evaluation.   In the court's estimation, Reyes' criminal
history differed from most other career offenders because it uniformly involved
"minor" offenses.   The facts of his case made application of a career offender
sentence unusually over-representative.   Other judges evaluating different
criminal histories have found otherwise.   The Whyte court reviewed the sentence
of a defendant caught with forty-one grams of crack and ten grams of cocaine
whose past offenses included the sale of $10 of marijuana and possession of
"1500 doses" and "200 plastic packages" of marijuana.   United States v. Whyte,
892 F.2d 1170, 1171-72 (3rd Cir.1989).   Because the defendant had drawn a loaded
gun on the police officer attempting to arrest him, his record suggested "he
would carry a weapon as part of whatever needs arise from dealing drugs on the
street."   Id. at 1173 & n. 9.   The district court concluded "I cannot
conscientiously say that the defendant's criminal history was significantly less
than that of most defendants in the same criminal history category."   Id.
 [6] The court found that penalizing Reyes with the maximum term permitted for
trafficking ordinarily reserved for drug quantities far in excess of the amounts
for which he had been convicted (both in the instant and prior offenses) grossly
over-represented the seriousness of his criminal history. [FN17]   While we agree
that the Commission did take into account varying penalties linked to different
drug quantities (through the assignment scheme described supra at 1385), we
conclude that the sentencing ranges resulting in exceptional discrepancies were
not adequately considered.   See United States v. Ward, 914 F.2d 1340, 1348 (9th
Cir.1990) (departure for reasons already considered by the guidelines based on
the conclusion that circumstances "significantly more egregious than the
ordinary cases" warranting adjustment).   Thus the district court was authorized
to depart in this case because the degree **\*1388** of the discrepancies had not
been adequately considered.

   FN17. The Government posits that "street dealers of narcotics make up in
   volume what they lack in quantity on each individual sale.   Thus, the
   overall impact of their criminal activity is identical to someone who sells
   a larger amount on a single occasion."   Appellant's Opening Brief at 16.
   The fact that Reyes would have to make 3752 sales to compete with the
   larger drug trafficker who suffers the same penalty as he, and that he
   would have to do this 3752 times to equal that dealer's one-time sale,
   makes the two defendants categorically different, especially in the context
   of the career offender provisions where the number of acts matters.   The

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

8 F.3d 1379
**(Cite as: 8 F.3d 1379, *1388)**

> guidelines govern individual defendants and their acts, not the "overall"
> quantities of drugs in the economy.

B. Factual Findings
  In accordance with Lira-Barraza 's three-part analysis we review the record for
factual findings supporting departure.    941 F.2d at 746-47.    "The district court
may build the appropriate factual record by adopting a presentence report that
has made specific findings of fact that support the decision to depart."    United
States v. Singleton, 917 F.2d 411, 412-13 (9th Cir.1990).    The district court
deemed Reyes a "comparatively minor offender" based on the "minor" nature of
both his past and current offenses.    The Government has not challenged the
quantity-based descriptions of the underlying offenses as clearly erroneous
factual findings.    Therefore, "[t]he court's finding that these facts existed
obviously met the clearly erroneous standard."    Lira-Barraza, 941 F.2d at 747;
see also Valdez-Gonzalez, 957 F.2d at 650 n. 5.
  C. Extent
  [7] A district court must "give adequate reasons for departure and for the
extent of departure."    United States v. Faulkner, 934 F.2d 190, 191 (9th
Cir.1991).    The same reason may justify both decisions.    See Ramirez Acosta, 895
F.2d at 601-02 (both the reason to depart and extent of departure explained in
terms of under-representation of the seriousness of defendant's criminal
history).    In explaining the extent of departure, the court may draw analogies
to other parts of the guidelines or other offenses.    See Lira-Barraza, 941 F.2d
at 750-51 & n. 13.    " 'Reversal is required only if the choice [of a departure
sentence] is "unreasonable" in light of the standards and policies incorporated
in the Act and the Guidelines.' "    Martinez-Gonzalez, 962 F.2d at 876 (citing
Lira-Barraza, 941 F.2d at 751);    see also 18 U.S.C. § 3742(e)(4) (reviewing
court must consider whether sentence is "plainly unreasonable.")
  The Government argues that a wholesale departure from the career offender
provisions, one that departs from both the criminal history category and the
base offense level, constitutes an "unreasonable" departure.    It suggests that
in the context of Section 4A1.3 a downward departure from the career offender
provisions may reasonably consist only of a departure from the criminal history
category of a career offender, and not from the base offense level also assigned
under these provisions to the career offender.    These the Government argues must
be retained.    Otherwise a sentencing judge can, in the name of downward
departure, "completely ignore" the career offender guideline provisions.
  [8] When a court determines that the career offender guidelines apply it must
take two steps:    (1) automatically assign the defendant a criminal history
category of VI, and (2) recalculate the base offense level according to the
length of the penalty for the conviction.    U.S.S.G. 4B1.1.    Unlike any other
section of the guidelines, the career offender provisions set both sentencing
parameters at once.    A defendant sentenced under the career offender provisions
is subjected to a significant "jump" in penalty precisely because both "steps"--
a boost in the criminal history category and a boost in the base offense level--
are taken at once.
  The Government essentially suggests that the "one-jump-two-steps" application
of the career offender guidelines in which both steps are inseparable at the

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

8 F.3d 1379
**(Cite as: 8 F.3d 1379, \*1388)**

time of application, becomes, for the purposes of departure, a "one-step"
modification where one step (criminal history point reduction) is separable from
the other (base offense level reduction).   It thus advocates understanding
career offender departures as consisting only of the criminal history "step."
 The Government's support for its "one-step" analysis of career offender
departures is very limited.   It argues that the district court unreasonably
departed because it failed to follow the text of Section 4A1.3.   Section 4A1.3
has no particularized application to career offender departures.   Nowhere does
it specify or imply that career offender departures may consist only of
downwards adjustments of criminal history categories.   Under it "the Court may
conclude that the defendant's criminal history was significantly less serious
than that of most defendants in **\*1389** the same criminal history category" (when
deciding whether to depart), "and therefore consider a downward departure from
the guidelines," (how much and for what reason not predetermined).  U.S.S.G. §
4A1.3.   The provision does suggest that "the court use, as a reference, the
guideline range for a defendant with a higher or lower criminal history
category," but does not confine the court to this method of analogizing alone.
Id.   In the context of a departure from career offender guidelines, it cannot be
read to preclude consideration of other analogies or departures from base
offense levels.
 [9] The district court did not disregard the terms of Section 4A1.3 or go
against precedent on departure [FN18] in viewing a departure from the career
offender provisions as permissible even though it reduced the sentence more than
a modification of only the criminal history category would warrant. Other courts
have reasoned:

    FN18. The Government cites United States v. Rodriguez-Castro, 908 F.2d 438
    (9th Cir.1990), for the proposition that § 4A1.3 departures can only
    involve departures from the assigned criminal history level and not the
    base offense level.   This case does not involve a departure from the career
    offender guidelines and therefore provides no guide for or limitations upon
    such departures.   In any event, it does not confine departures to
    reductions in the criminal history category, but simply requires that under
    § 4A1.3 at least this step be taken.   See also United States v. Ward, 914
    F.2d 1340, 1348 (9th Cir.1990) (departure outside the context of career
    offender guidelines based on § 4A1.3 must, at a minimum, provide analogy to
    different criminal history categories).

 The jump into the career offender category was made in one [overall increase]
 under U.S.S.G. § 4B1.1.   The district court reversed that single [overall
 increase] when it reasonably determined ... that placing defendant in the
 career offender criminal history category significantly over-represented the
 seriousness of his criminal history.
 Bowser, 941 F.2d 1019, 1026 (10th Cir.1991) (district court departed downward
to original offense level and criminal history category computed prior to
application of career offender provisions).   See also, U.S. v. Senior, 935 F.2d
149, 151 (8th Cir.1991) (same).   However, in sentencing Reyes to the same
punishment he would have received without reference to the career offender

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

8 F.3d 1379
**(Cite as: 8 F.3d 1379, \*1389)**

guidelines, the court did not provide an explanatory analogy. In different
circumstances, we have analogized the career offender provisions to an "on/off
switch." United States v. Faulkner, 934 F.2d 190, 196, as amended, 952 F.2d
1066, 1073 (9th Cir.1991). It may be that like the Bowser and Senior courts and
other district courts in the Ninth and Seventh Circuits, the district court, to
give proper weight to proportionality, found it necessary in effect to "switch
off" the career offender provisions. [FN19] Because the court failed to
articulate its reasons for the degree of its departure, we must remand. Since
recidivism is the hallmark of a career offender, the district court may well
need to consider the recidivist tendencies of the defendant. An analogy that
results in a reduction of both history and base offense level would not be
unreasonable.

> FN19. In Lawrence the district court apparently departed in the same
> manner. It imposed a sentence that would have been recommended if
> "calculated without using the career offender enhancement." 916 F.2d 553,
> 554. Nevertheless, in affirming the district court's decision to depart we
> specifically noted that the Government did not challenge the application of
> the decision to depart from the guidelines. Lawrence, 916 F.2d at 555 n.
> 5. We note that in other jurisdictions the Government itself has endorsed
> departure in part on the basis of the very "minor nature of [a defendant's]
> previous convictions" and in the same manner as applied to Lawrence and
> Reyes. United States v. Dean, 908 F.2d 215, 216 (7th Cir.1990). The
> district court sentenced Dean, a "three time convicted drug offender,
> plead[ing] guilty to delivering 1.09 grams of LSD" and also subject to the
> career offender provisions to a six-year term, a sentence falling within
> the guideline range of 63-78 months applicable if sentenced without
> reference to the career offender provisions.

## II. REFUSAL TO CONSENT TO WAIVER

On cross appeal defendant argues that the Court impermissibly allowed the
Government to refuse to consent to the defendant's waiver of jury trial. He
contends that the court was obligated to require an explanation from the
Government for its refusal so to consent and to assure that the explanation was
not tinged by racial discrimination.
**\*1390** Although defendant had waived his right to a jury trial, the Government
refused to consent to the waiver, and the jury trial commenced. Neither before
nor during trial did Reyes argue that the court was obligated to require an
explanation for the Government's refusal to consent to a bench trial. [FN20]
Thus, he did not raise this particular issue before the district court.

> FN20. He did allege that the decision to prosecute was initiated due to
> bias against Hispanics and the district court specifically found no such
> prosecutorial abuse. (CR 39, 5-7)

[10][11][12] Ordinarily, an issue raised for the first time on appeal is not
considered by this court. United States v. Reyes-Alvarado, 963 F.2d 1184, 1187
(9th Cir.1992); United States v. Carlson, 900 F.2d 1346, 1349 (9th Cir.1990);

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

8 F.3d 1379
**(Cite as: 8 F.3d 1379, \*1390)**

Jovanovich v. United States, 813 F.2d 1035, 1037 (9th Cir.1987);   Bolker v.
C.I.R., 760 F.2d 1039, 1042 (9th Cir.1985).   However:
  We have permitted only narrow and discretionary exceptions to the general rule
  against considering issues for the first time on appeal.   They are (1) when
  review is necessary to prevent a miscarriage of justice or to preserve the
  integrity of the judicial process, (2) when a change in law raises a new issue
  while an appeal is pending, and (3) when the issue is purely one of law.
  Jovanovich, 813 F.2d at 1037.   Defendant raises an issue which challenges the
integrity of the judicial process.   We have previously stated that "because a
claim that a district court violated a party's due process rights questions the
integrity of the federal judicial system, we review [the defendant's] claim
despite his failure to raise it below."   Prantil v. State of California, 843
F.2d 314, 319 n. 5 (9th Cir.1988).   Since this appeal raises primarily a
question of law, failure to preserve the legal issue below should not foreclose
consideration.
  [13] Rule 23(a) of the Federal Rules of Criminal Procedure states that:
  [c]ases required to be tried by jury shall be so tried unless the defendant
  waives a jury trial in writing with the approval of the court and the consent
  of the government.
  Fed.R.Crim.P. 23(a) (emphasis added).   Though the Government does not have the
constitutional right to insist on a jury trial, neither does a defendant have a
Sixth Amendment right to waiver.   Singer v. United States, 380 U.S. 24, 36-37,
85 S.Ct. 783, 790-91, 13 L.Ed.2d 630 (1965).   The Supreme Court has upheld the
constitutionality of Rule 23 and specifically considered whether the Government
should be forced to provide reasons in exercising its power under it.
  Because of [our] confidence in the integrity of the federal prosecutor, Rule
  23(a) does not require that the Government articulate its reasons for
  demanding a jury trial at the time it refuses to consent to a defendant's
  proffered waiver.   Nor should we assume that federal prosecutors would demand
  a trial for an ignoble purpose.   We need not determine in this case whether
  there might be circumstances where a defendant's reasons for wanting to be
  tried by a judge alone are so compelling that the Government's insistence on
  trial by jury would result in the denial to a defendant of an impartial trial.
  Singer, 380 U.S. at 37, 85 S.Ct. at 791.
  [14] Defendant's assertion that the requisite "circumstances" were present in
his case has no merit.   The "passion, prejudice ... and public feeling"
defendant feared would jeopardize his right to an impartial trial, Singer at 38,
85 S.Ct. at 791, were specifically addressed and guarded against by the trial
judge during voir dire. [FN21]

  FN21. *Defendant's reliance on Batson v. Kentucky, 476 U.S. 79, 106 S.Ct.
  1712, 90 L.Ed.2d 69 (1986), is wholly misplaced.   Batson guaranteed the
  rights of potential jury members not to be peremptorily struck on the basis
  of constitutionally impermissible reasons.   476 U.S. at 87, 106 S.Ct. at
  1718.   See also Powers v. Ohio, 499 U.S. 400, 409- 10, 111 S.Ct. 1364,
  1370, 113 L.Ed.2d 411 (1991).   It has no application to a defendant's
  waiver of a jury trial.*

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

8 F.3d 1379
**(Cite as: 8 F.3d 1379, *1390)**

### CONCLUSION

We uphold the conviction and hold that the district court may depart from the career offender guidelines for the reason stated. **\*1391** However, we remand for an explanation of the extent of its departure in light of the considerations set forth in this opinion.
**REMANDED.**
DISSENTING OPINION

BRUNETTI, Circuit Judge, dissenting:

I concur with the majority's rejection of Reyes' challenge to the Government's refusal to consent to the waiver of a jury trial. However, I dissent from the majority's holding that the district court's grounds for departure from the career offender guidelines were authorized, because the majority both misstates the district court's rationale for departure and mischaracterizes the state of the law.

I

In reviewing the district court's downward departure, we "must consider the reasons for departure actually articulated by the sentencing court." United States v. Montenegro-Rojo, 908 F.2d 425, 427 (9th Cir.1990). During the sentencing hearing, the district court made several statements relevant to his decision to depart downward. The first occurred while the court was questioning the prosecutor about the Government's position on classifying Reyes as a career offender:

Well, let me ask you this, Mr. Gorder. If we convict every drug addict of minor sales that they make in order to sustain their habit, as this indicates to me is the fact, and we put them all in prison as career offenders, what's going to happen? I mean, these drug addicts are going to sell to get enough money to pay. Don't we have to do something different than that on this drug thing? It's really very difficult[ ] for me to conceive that we're going to put comparatively minor offenders compared to the rest of the world into a career offender status and sentence them to prison as long as the Guidelines would indicate. I'm very concerned about that.

After the district court and the prosecutor discussed the Government's efforts to eradicate drug dealing in Portland, the district court stated

Well, let me say this. I commend the United States Attorney for his efforts and your staff for their efforts to help with this drug problem.

And I think an appropriate sentence should be meted out in this case. There's no question of defendant's guilt. I've found that he's not entitled to acceptance of responsibility. And I'm also satisfied that the conviction in paragraph 34 [for possession for sale of marijuana] is certainly an appropriate conviction under the Guidelines for the purpose of career offender status.

I can't justify saying that the sale of marijuana is different than the distribution. But it certainly was a rather minor offense, as counsel points out, perhaps wouldn't have even been an offense here in Oregon. Also, the two offenses in paragraphs 37 and 38 were sentenced as part of the same sentence. [ ...] Sounds to me like maybe the defendant can appeal my inclusion of the sentence in paragraph 38, and the government can appeal my departure downward

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

8 F.3d 1379
**(Cite as: 8 F.3d 1379, \*1391)**

DISSENTING OPINION
  based on the overrepresentation of the criminal history by those offenses.
  I am going to depart downward to the level 14 and the range of 33 to 41
  months. I think in this case it's clear that the previous criminal history
  seriously overrepresents the history from the standpoint of the Guidelines. I
  can't conceive that the Guidelines didn't intend to give a judicial officer
  authority to depart downward under circumstances such as this. That being the
  case, I will depart.
  (Emphasis added). In its written "Findings of Fact Order," filed three days
after the sentencing hearing, the district court stated that it
  finds downward departure is appropriate because sentencing defendant as a
  career offender seriously over-represents defendant's criminal history.
  The district court provided no further explanation for its decision to depart.

               II

 A district court's explanation of its reason(s) for departing downward must
meet the following standard:
 **\*1392** The Sentencing Reform Act expressly provides that the sentencing court
 must state "the specified reason for imposition of a sentence different from
 that described [in the Guidelines]." This requirement is not satisfied by a
 general recitation that the defendant's criminal history category or offense
 level underrepresents, in the sentencing court's opinion, the defendant's
 criminal record or the seriousness of the charged offense. The district court
 must set forth the specific aspects of the defendant's criminal history or of
 the charged offense that the district court believes have not been adequately
 represented in the recommended sentence.
 United States v. Wells, 878 F.2d 1232, 1233 (9th Cir.1989) (emphasis added).
"[C]onclusory statement[s] by the district court" do not "permit meaningful
appellate review of the district court's departure from the Guidelines." Id. at
1233. One problem with such cursory explanations for departure is that they may
"amount[ ] to little more than an expression of personal disagreement with the
Guidelines." United States v. Thomas, 961 F.2d 1110, 1118 (3d Cir.1992).
 The district court's comments during its questioning of the prosecution at the
sentencing hearing about the Government's drug-fighting efforts do not meet our
standard because they do not explain why the district court found that
sentencing Reyes as a career offender seriously overrepresented his criminal
history. At best they amount only to "expressions of personal disagreement with
the Guidelines." The district court seems to believe that long prison terms are
not the best way to fight the war on drugs, as evinced by the statement "Don't
we have to do something different than that on this drug thing?"
 The district judge also seems to disagree with classifying "comparatively minor
offenders" as career offenders. None of these statements satisfies the standard
established in Wells: an explanation of the specific aspects of Reyes' criminal
history that are overrepresented by career offender status. The only place where
the district court seems to point to such aspects is immediately prior to
announcing the departure down to level 14. The district court gives two reasons
for its departure: the February 1987 conviction for possession for sale of
marijuana was a "minor offense" [FN1] and the two 1989 convictions were
consolidated for sentencing. [FN2] It is not entirely clear that the district

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

8 F.3d 1379
**(Cite as: 8 F.3d 1379, \*1392)**

DISSENTING OPINION
judge based his finding of overrepresentation on these factors.

> FN1. Contrary to the majority's assertion, the district court never stated
> that "Reyes was guilty of very 'minor offense[s] ' " (emphasis added).

> FN2. Reyes argued to the district court that because the second 1989
> conviction (Delivery of Controlled Substance II) was consolidated for
> sentencing with the first 1989 conviction (Possession of Controlled
> Substance I), it could not be used to establish Reyes' career offender
> status.    The district court rejected this argument, but apparently used the
> fact of consolidation to support his decision to depart downward.

 Even if reaching the merits of the case based on this record is warranted, we
must consider the reasons actually advanced by the district court: consolidation
of two of the prior offenses for sentencing and the fact that one of the prior
offenses was "minor."   It is these reasons that we must evaluate to determine if
they permit the district court to depart downward because they are mitigating
circumstances not adequately taken into account by the Sentencing Commission.
18 U.S.C. § 3553(b) (1988);  U.S.S.G. § 5K2.0. See United States v. Sanchez, 933
F.2d 742, 745 (9th Cir.1991).
 The consolidation for sentencing of the two separate and unrelated 1989
convictions does not render the criminal history any more "overrepresentative"
than it would be otherwise;  if anything, it makes it more under representative.
As to the second circumstance, the district court's conclusion that the prior
marijuana offense was "minor" probably related to the fact that it involved a
small quantity of marijuana--only six baggies.   Thus, the Government correctly
states that "the record below suggests [that] the district court based its
decision to depart downward on the relatively small amounts of cocaine and
marijuana sold by the defendant."   (Emphasis added).
 **\*1393** The majority, rather than simply considering "the reasons for departure
actually articulated by the sentencing court," Montenegro-Rojo, 908 F.2d at 427,
puts words into the district court's mouth.   The majority first attributes its
quantity disproportionality analysis [FN3] to the district court, when the
district court undertook no such analysis. [FN4]   The majority then concludes
that

> FN3. The part of the opinion stating that "[u]nder the career offender
> guidelines a defendant convicted for [selling] a fraction of one gram of
> cocaine is accorded the harshest punishment due an offender trafficking in
> up to 500 grams."

> FN4. The majority similarly states that the district court used this
> imaginary comparative quantity analysis "as the means to compare the
> similar treatment of defendants whose offenses differ by exceptional orders
> of magnitude," when no such comparison was ever undertaken by the district
> court.

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

8 F.3d 1379
**(Cite as: 8 F.3d 1379, \*1393)**

DISSENTING OPINION

[t]he question we address is not whether the [Sentencing Commission] took into consideration small amounts of drugs, but whether it adequately considered the disproportionate treatment of drug offenders sentenced to the same penalty range for offenses involving drug quantities of exceptionally different orders of magnitude. [...]

In declaring that "comparatively minor offenders" should not receive the same "career offender status," the district court found the Commission's consideration of the relationship between drug quantity and penalty among differently-situated career offenders inadequate.

The problem with these statements is that the district court never made any such findings or gave anything close to this asserted rationale as a reason for downward departure. The majority opinion simply invents a justification out of whole cloth. It may well be that this is precisely the reason the district court had in mind but never articulated; however, it is our job to look at what the district court actually said, not to hypothesize what we would have said had we been in his shoes.

Even assuming arguendo that the district court's rationale for downward departure was the relatively small quantities of drugs involved in Reyes' prior offenses, we should vacate the judgment and remand for resentencing because this rationale is not a valid ground upon which to base a downward departure. The majority opinion correctly notes that both the Second and Sixth Circuits have held that the Sentencing Commission adequately took small quantities of drugs into account and have therefore rejected this rationale as a valid basis for downward departure. See United States v. Richardson, 923 F.2d 13, 17 (2d Cir.1991); United States v. Hays, 899 F.2d 515, 518-20 (6th Cir.), cert. denied, 498 U.S. 958, 111 S.Ct. 385, 112 L.Ed.2d 396 (1990). The majority opinion appears to agree with the rationale behind these holdings: [FN5]

> FN5. The majority states that "we agree that the Commission did take into account varying penalties linked to different drug quantities."

[U.S.S.G. § 4B1.1] is designed to increase significantly the term of incarceration for career offenders. Quantity is implicitly and, in our view, adequately considered in the computation of the base offense level. Furthermore, a sentencing court has discretion to give additional consideration to drug quantity when determining where in the applicable range a violator should be sentenced.

Richardson, 923 F.2d at 16. [FN6] I agree with that rationale.

> FN6. In fact, the holding of Richardson probably extends to prohibit downward departures based on a disproportionality analysis similar to the one conducted by the majority. See United States v. Moore, 968 F.2d 216, 226 n. 4 (2d Cir.) (applying Richardson to a district court's downward departure based in part on the district court's view that he "had heard of cases involving tens of thousands of pounds of marijuana where the sentences were not so severe as thirty years and that 'this case is of no comparison with them.' "), cert. denied, 506 U.S. 980, 113 S.Ct. 480, 121

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

8 F.3d 1379
**(Cite as: 8 F.3d 1379, \*1393)**

DISSENTING OPINION
L.Ed.2d 385 (1992).  See also, Richardson, 923 F.2d at 17 (Restani, J., concurring) ("application of the career offender provision of the Guidelines in certain cases may be overly harsh").

This case was never argued as an Eighth Amendment challenge to the Sentencing Guidelines career offender provision nor was it ever argued as a sentence proportionality **\*1394** case [FN7], however, the majority identifies a question of first impression never addressed or considered by the parties or the district court and converts this case from a classic "small quantity" drug sentencing case controlled by the rationale of Richardson and Hays to a proportionality case.  With no support in the record, the majority states that "a downward departure was warranted, in effect, because of the lack of proportionality"; and makes a proportionality argument for the district court which was never suggested by counsel or considered by the judge.  The majority further converts the district judge's simple "addict minor drug sales" stated basis for departure into a complex proportionate treatment analysis complete with a volume and quantity analysis found no where in the record.  The opinion then makes a conclusion never considered or anticipated by the district court, namely, that the court was authorized to depart because while the Sentencing Commission did take into accord varying penalties linked to different drug quantities, the sentencing ranges resulting in exceptional discrepancies were not adequately considered.

FN7. Reyes' counsel argued that "the career offender guidelines seriously overrepresent both [Reyes] criminal history and the actions in this case and that the combination of the factors in this case would constitute grounds for departure."  She supported that assertion with the arguments that "Mr. Reyes's criminal history shows always very small amounts of controlled substances," that the predicate marijuana conviction was a "simple possession case," that Reyes was an addict and has received no treatment, and that his prior and current convictions "involve extremely small amounts of controlled substances."  She finally states "and it's that combination of all those factors which we believe gives the court grounds for departing from the career offender guidelines."  (See ER pp. 17-18).

III
The majority has caused another problem by creating a basis for departure to support the district court's lack of explanation for the extent of its downward departure.  The majority correctly notes that a district court must "give adequate reasons for ... the extent of departure," *United States v. Faulkner,* 934 F.2d 190, 196, as amended, 952 F.2d 1066, 1073 (9th Cir.1991), and that in doing so the court may draw analogies to other parts of the guidelines or other offenses.  See *United States v. Lira-Barraza,* 941 F.2d 745, 746-47 (9th Cir.1991).  The district provided no explanation, by analogy or otherwise, and therefore, as the majority correctly holds, we must remand for such an explanation.  However, the majority does not stop there;  it discusses at length why "[a]n analogy that results in reduction of both {criminal} history and base

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

8 F.3d 1379
**(Cite as: 8 F.3d 1379, \*1394)**

DISSENTING OPINION
offense level would not be unreasonable."  This dictum is unnecessary to the
central holding that we need to remand, and preemptively decides an issue not
yet before us.  Until the district court puts the issue squarely before us, we
should not reach out and decide it.
 I would vacate the judgment and remand for resentencing within the applicable
career offender guidelines range in accordance with the rationale of
Richardson.
END OF DOCUMENT

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works